1  JOHN W. CAMPBELL, ESQ. (WSB 13798)
   ESPOSITO, GEORGE & CAMPBELL, PLLC
2  960 Paulson Building
   421 West Riverside Avenue
3  Spokane, Washington 99201
   Telephone: (509) 624-9219
4  Facsimile: (509) 624-9231

5  JAMES I. STANG, ESQ. (CA BAR 94435)
   HAMID R. RAFATJOO, ESQ. (CA BAR 181564)
6  GILLIAN N. BROWN, ESQ. (CA BAR 205132)
   PACHULSKI, STANG, ZIEHL, YOUNG,
7    JONES & WEINTRAUB P.C.
   10100 Santa Monica Boulevard, 11th Floor
8  Los Angeles, California 90067
   Telephone: (310) 277-6910
9  Facsimile: (310) 201-0760

10 Counsel for COMMITTEE OF TORT LITIGANTS

11

12             UNITED STATES BANKRUPTCY COURT

13             EASTERN DISTRICT OF WASHINGTON

14 In re:                              Case No.: 04-08822-PCW11

15 THE CATHOLIC BISHOP OF              Chapter 11
   SPOKANE a/k/a THE CATHOLIC
16 DIOCESE OF SPOKANE

17            Debtor.

18 ─────────────────────────────
   COMMITTEE OF TORT LITIGANTS,       Adv. Case No. 05-80038
19
                 Plaintiff,           COMMITTEE OF TORT
20                                    LITIGANTS' MEMORANDUM
       v.                             OF POINTS AND
21                                    AUTHORITIES IN SUPPORT OF
   THE CATHOLIC BISHOP OF             MOTION FOR PARTIAL
22 SPOKANE, et al.,                   SUMMARY JUDGMENT

23            Defendants.

24

25

26

27

28

18477-002\DOCS_LA:138319.1

COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 1

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 1 of 38

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................. 1

II. FACTUAL BACKGROUND ................................................ 4

III. PARTIAL SUMMARY JUDGMENT IS WARRANTED AS TO THE PARISHES BECAUSE NO GENUINE ISSUES OF MATERIAL FACT EXIST AS TO THE FIRST CAUSE OF ACTION IN THE COMPLAINT, AND BECAUSE DEFENDANTS CANNOT SATISFY THEIR BURDEN OF PROVING THEIR AFFIRMATIVE DEFENSES ............................ 6

    A. The Standard On Summary Judgment ................................... 6

    B. There Exist No Genuine Issues of Material Fact As To The First Cause of Action That the Diocese Has Legal Title To The Disputed Real Property ............................................................ 8

        1. The Diocese Holds Legal And Equitable/Beneficial Title To The Disputed Real Property. .......................................... 8

        2. The Disputed Real Property Is Not Subject To Any Trust ........... 10

            a. The Corporation Sole Statute Does Not Create A Trust. .... 10

            b. The Disputed Real Property Is Not In An Express Trust. ... 13

            c. The Disputed Real Property Is Not In A Constructive Or Resulting Trust. ................................................ 17

        3. The Parishes Do Not Have A Legal Existence Separate From The Diocese. ....................................................... 18

        4. The Diocese Is Judicially Estopped From Arguing That Disputed Real Property Is Not Property Of The Diocese ..................... 20

        5. Assuming, But Not Admitting That The Parishes Are Legally Separate From The Diocese, They Should Be Treated As Alter Egos. ....................................................... 22

    C. The Diocese Cannot Prove Any Of Its Affirmative Defenses ................ 25

        1. No Entanglement With Religion ................................... 26

            a. The Court's Application Of Neutral Principles Of Law Is Required. ...................................................... 26

            b. The Establishment Clause Requires The Court To Determine Property Of The Estate. ........................................ 28

            c. The Free Exercise Clause ...................................... 29

            d. The Religious Freedom Restoration Act Is Not Implicated 30

18477-002\DOCS_LA:138319.1

COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - i

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 2 of 38

1           2.      The Disputed Real Property Is Not Subject To Any Trust ............31

2           3.      No Restriction On Use By Donors ..................................................34

3    IV.    CONCLUSION .......................................................................................35

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - **ii**

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219  Fax: (509) 624-9231

# TABLE OF AUTHORITIES

**Page**

## Cases

Akoury v. Roman Catholic Archbishop of Boston
2004 WL 2341333, 18 Mass.L.Rptr. 271 (Mass. Super. 2004)......17

Alby v. Banc One Financial
119 Wash.App. 513 (2003)......13

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986)......7

Bd. of Educ. of Kiryas Joel Village School Dist. v. Grumet
512 U.S. 687 (1994)......25

Celotex Corp. v. Catrett
477 U.S. 317 (1986)......22

Central Catholic Educ. Ass'n v. Archdiocese of Portland
323 Or. 238, 916 P.2d 303 (1996)......16

Chemical Bank v. Washington Public Power Supply System
102 Wash.2d 874 (1984)......30

Church of the Lukumi Babalu Aye v. City of Hialeah
508 U.S. 520 (1993)......26

Continental Casualty Co. v. Wendt
205 F.3d 1258 (11th Cir. 2000)......7

County of San Luis Obispo v. Ashurst
146 Cal.App.3d 380, 194 Cal.Rptr. 5 (1983)......10, 12

Dowgialla v. Knevage
48 Wash.2d 326, 294 P.2d 393 (1956)......12

Eberle v. Benedictine Sisters of Mt. Angel and Archdiocese of Portland in Oregon
385 P.2d 765 (Or. 1983)......16

EEOC v. St. Francis Xavier Parochial School
77 F.Supp.2d 71 (D.D.C. 1999)......16

Employment Div. v. Archdiocese of Portland 600 P.2d 926 (Or. App. 1979)......16

Employment Div. v. Smith
494 U.S. 872 (1990)......26

Engel v. Breske
37 Wash.App. 526 (1984)......15

Estate of Spadoni v. Schweinler (In re Spadoni's Estate)
71 Wash.2d 820, 430 P.2d 965 (1967)......15

Everson v. Bd. of Educ.
330 U.S. 1 (1947)......25

F.E.L. Publications, Ltd. v. The Catholic Bishop of Chicago
754 F.2d 216 (7th Cir. 1985)......16

Friend v. Cove Methodist Church, Inc.
65 Wash.2d 174 (1964)......12

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT – iii

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 4 of 38

Gen. Council on Fin. and Admin. of the United Methodist Church v. Superior Court
    439 U.S. 1355 (1978) ............................................................................................. 24

Grove v. Payne
    47 Wash.2d 461 (1955) ...................................................................................... 8, 13

Guam v. Guerrero
    290 F.3d 1210, 1222 (2002) ..................................................................................... 27

High Tech Gays v. Defense Indus. Sec. Clearance Office
    895 F.2d 563 (9th Cir. 1990) ..................................................................................... 7

In re Belcher
    287 B.R. 839 (Bankr. N.D. Ga. 2001).................................................................... 26

In re Canter
    299 F.3d 1150 (9th Cir. 2002) .................................................................................. 27

In re Cardelucci
    285 F.3d 1231 (9th Cir. 2002) .................................................................................. 27

IPEC Planar v. Mach 1 Svcs., Inc.
    129 F.Supp.2d 1265 (D. Ariz. 2000)................................................................... 7, 22

Jespersen v. Harrah's Operating Co., Inc.
    392 F.3d 1076 (9th Cir. 2004) ................................................................................... 7

Jones v. Wolf
    443 U.S. 595 (1979) ................................................................................................ 25

Lemon v. Kurtzman
    403 U.S. 602 (1971) ................................................................................................ 25

McCarthy v. Bierbower (In re Crossroad Health Ministry, Inc.)
    319 B.R. 778 (Bankr. D.D.C. 2005)....................................................................... 14

Miller v. Catholic Bishop of Spokane
    2004 WL 2074328 (Wash.App. 2004) ................................................................... 19

Munns v. Martin
    131 Wash.2d 192 (1997) ...................................................................................18, 29

Niemann v. Vaughn Community Church
    118 Wash.App. 824 (2003)...................................................................................... 30

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.
    210 F.3d 1099 (9th Cir. 2000) ............................................................................... 6, 7

Ray v. King County
    120 Wash.App. 564 (2004)........................................................................................ 8

Rollins v. TechSouth, Inc.
    833 F.2d 1525 (11th Cir. 1987) ................................................................................. 7

Southside Tabernacle v. Pentecostal Church of God
    32 Wash.App. 814 (1982) ...................................................................... 1, 16, 23, 24

The Standard Fire Ins. Co. v. Blakeslee
    54 Wash.App. 1 (1989) ........................................................................................... 19

Town of Ruston v. City of Tacoma
    90 Wash.App. 75 (1998) ......................................................................................... 30

Town of Twisp, Wash. v. Methow Valley Irr. Dist.
    32 Wash.App. 132 (1982) ....................................................................................... 15

Wagner v. Prof. Engineers in California Gov't 354 F.3d 1036 (9th Cir. 2004)................. 18

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

Watson v. Jones
    80 U.S. (13 Wall.) 679 (1872) ........................................................16, 23

Wilkeson v. Rector, Wardens and Vestry of St. Luke's Parish of Tacoma
    176 Wash. 377 (1934) ........................................................11, 29

Zands v. Nelson
    797 F.Supp. 805 (S.D. Cal. 1992) ........................................................ 6

**Statutes**

11 U.S.C. §101 ........................................................ 4, 27

11 U.S.C. §541 ........................................................23, 25, 26

11 U.S.C. §541(a) ........................................................ 4

42 U.S.C. §2000bb ........................................................22, 23, 27

42 U.S.C. §2000bb-1(a)-(b) ........................................................ 27

D.C. Code §29-301.56 ........................................................ 14

RCW 23B.14.050 ........................................................ 15

RCW 23B.14.060 ........................................................ 15

RCW 23B.14.203 ........................................................ 14

RCW 23B.14.210 ........................................................ 15

RCW 24.03 ........................................................ 13

RCW 24.03.225 ........................................................ 14

RCW 24.04.225 ........................................................ 14

RCW 24.12 ........................................................ 24

RCW 24.12.010 ........................................................ 24

RCW 24.12.030 ........................................................ 10

RCW 24.12.060 ........................................................ 13

RCW 24.14.060 ........................................................ 14

RCW 49.60.224 ........................................................ 31

RCW 64.04.010 ........................................................ 12

RCW 64.04.020 ........................................................ 12

RCW Chapter 24.12 ........................................................22, 23

**Other Authorities**

1B Wash. Prac., Methods of Prac. §66.91 (4th ed.) ........................................................ 21

Gerstenblith, Associational Structures of Religious Organizations
    1995 B.Y.U. L. Rev. 439 (1995) ........................................................10, 12

**Rules**

Fed. R. Civ. P. 56(c) ........................................................ 6

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219  Fax: (509) 624-9231

# I.
## INTRODUCTION

Fundamental to the reorganization of the Catholic Bishop of Spokane (the "Diocese"), is resolution of the following question: What is property of the Diocese's bankruptcy estate?

The Diocese disclaims an equitable/beneficial interest in potentially millions of dollars worth of real and personal property that it asserts belongs solely to approximately 179 Diocese-related entities (collectively, the "Diocese-Related Entities").[1] The Diocese asserts under penalty of perjury in its Statement of Financial Affairs and its Schedules of Assets and Liabilities that such property is not property of the Diocese's bankruptcy estate because it holds only bare legal title. However, the evidence adduced even at this early stage of the litigation demonstrates otherwise with regard to particular properties as to which certain Diocese-Related Entities allegedly own the beneficial/equitable title.

The Catholic Church is a hierarchical organization. See Southside Tabernacle v. Pentecostal Church of God, 32 Wash.App. 814, 818 (1982). At the bottom of the hierarchy are bishops, which function as intermediary heads of the Church within a diocese, which typically is a given geographical area. Within the Catholic community in Spokane, the Church hierarchy is borne out in the primacy of the Diocese over its subdivisions, the parishes, with regard to assets and operational matters.

The Bishop of Spokane heads the Diocese. As the Bishop himself explained at the 341(a) meeting held in this case on January 5, 2005, one of his functions is to exercise "governance and oversight and pastoral ministry to the 81 faith communities", or parishes, that comprise the Diocese. See Committee of Tort

---

[1] The Committee references "equitable/beneficial" title because that is the property interest indicated by the Diocese on the Statement of Financial Affairs Line 14 and the Amended Statement of Financial Affairs Line 14.

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 1

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219  Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 7 of 38

Litigants' Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SS"), filed concurrently herewith, ¶3. In that way, the Bishop is, in his own words, the "final decision maker" for all of the faith communities constituting the Diocese. See SS, ¶4. Among the Bishop's many responsibilities are his authority, ownership, and control of real property in the Diocese.

Property deeds that the Diocese's counsel provided to Committee counsel confirm that partial summary judgment is appropriate in this case. These deeds establish that the Diocese is the sole owner of certain real estate that the Diocese wrongly scheduled as "Property held for another person." See Statement of Financial Affairs, Form 7, Line 14, as amended. The Diocese asserts that it is holding that real property for the alleged "beneficial/equitable owners", who are the Diocese-Related Entities. However, no evidence substantiates that claim.

In violation of the Diocese's fiduciary duty to creditors to maximize the estate, the Diocese attempts to hide its financial resources – the real property at issue in this Motion – behind myriad constitutional arguments and other defenses, none of which are availing. These efforts negatively impact the Court's ability to approve a plan of reorganization and jeopardize the ability of sexual abuse victims from collecting on their tort claims arising from abuse perpetrated by members of the Diocese's clergy, its workers, teachers, volunteers, or other persons associated with the Diocese and Diocese-Related Entities.

Because no genuine issue of material fact exists as to the Diocese's ownership of all interests in certain real property (the "Disputed Real Property"),[2] summary

---

[2] In the Complaint, the Committee used the term "Disputed Real Property" in reference to all real property listed in the Statement of Financial Affairs as held for another party. In this Motion, the term references only those properties listed in Exhibit 2 to the Affidavit of James I. Stang, Esq. in Support of Committee of Tort Claimants' Motion for Summary Judgment ("Stang Affidavit"), filed concurrently

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - **2**

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW     Doc 64     Filed 04/07/05     Entered 04/07/05 16:54:25     Pg 8 of 38

judgment is appropriate as to the First Cause of Action (Declaratory Relief – Disputed Real Property) to the Committee's Complaint as to the Diocese and as to the following parishes (collectively, the "Parishes"):[3]

1.  Assumption Church; Spokane, WA
2.  Mary Queen of Heaven Parish; Spokane, WA
3.  Our Lady of Fatima; Spokane, WA
4.  Our Lady of Fatima Church; Spokane, WA
5.  Our Lady of Fatima Parish; Spokane, WA
6.  Our Lady of Lourdes Cathedral; Spokane, WA
7.  St. Aloysius Church; Spokane, WA
8.  St. Aloysius School; Spokane, WA
9.  St. Ann Church; Medical Lake, WA
10. St. Anne Church; Spokane, WA
11. St. Anthony Church; Spokane, WA
12. St. Augustine Church; Spokane, WA
13. St. Charles; Spokane, WA
14. St. Charles Church; Spokane, WA
15. St. Francis Assisi Church; Spokane, WA
16. St. Francis Xavier; Spokane, WA
17. St. Francis Xavier Church; Spokane, WA
18. St. John Vianney; Spokane Valley, WA
19. St. John Vianney Church; Spokane Valley, WA
20. St. Joseph – Colbert; Colbert, WA
21. St. Joseph Church; Colbert, WA
22. St. Joseph Church; Otis Orchards, WA
23. St. Joseph Church; Spokane, WA
24. St. Mary Church; Spokane Valley, WA
25. St. Mary's Parish; Spokane Valley, WA
26. St. Mary Presentation; Deer Park, WA
27. St. Mary Presentation Church; Deer Park, WA

herewith.

[3] See Request for Judicial Notice, ¶2, filed concurrently herewith (providing that the Parishes have acknowledged that any named church, school, or property is represented by the Parishes and that the Parishes appear for such named defendants without amendment of the Complaint to specifically and separately name such Defendants).

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 3

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW     Doc 64     Filed 04/07/05     Entered 04/07/05 16:54:25     Pg 9 of 38

| 1 | 28. | St. Peter Church; Spokane, WA |
| 2 | 29. | St. Rose of Lima – Cheney; Cheney, WA |
| | 30. | St. Rose of Lima Church; Cheney, WA |
| 3 | 31. | St. Thomas More Church; Spokane, WA |
| 4 | 32. | Sacred Heart Church; Spokane, WA |

Moreover, because the defendants in the above-captioned adversary proceeding (the "Defendants") will be unable to prove any of the affirmative defenses raised by the Diocese, summary judgment is appropriate in favor of the Committee. Resolution of these issues on this Motion will erase from the Statement of Financial Affairs and Schedule F the listings of some, but not all, of the real property that should have properly been scheduled as property of the Diocese's bankruptcy estate on Schedule A. In turn, the Diocese's reorganization and the satisfaction of debts owing victims of sexual abuse can be accomplished quickly.

## II.
## FACTUAL BACKGROUND

1. The Catholic Diocese of Spokane (the "Diocese") is a Washington corporation sole, formed under Washington state law. See SS, ¶ 1. The Diocese is also a nonprofit corporation under Washington law. See SS, ¶80.

2. On or about December 6, 2004 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §101 et seq. The Diocese filed for bankruptcy protection for a number of reasons, notably to reorganize its financial affairs under a plan that will, among other things, compensate victims of sexual abuse by clergy and others associated with the Diocese. See SS, ¶2.

3. The Diocese's commencement of the instant bankruptcy case as of the Petition Date created an "estate", as that term is defined in 11 U.S.C. §541(a).

4. On or about the Petition Date, the Diocese filed under penalty of perjury its Statement of Financial Affairs ("Statement") and Schedules of Assets and Liabilities (the "Schedules") [Docket No. 1]. The Diocese subsequently amended

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 4

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 10 of 38

1    these filings on or about January 14, 2005.

2        5.      At the Statement, Form 7, line 14 ("Statement Line 14"), as amended (the

3    "Amended Statement Line 14") [Docket No. 131], the Diocese designated "property

4    held for another person." By virtue of being listed on Statement Line 14 and

5    Amended Statement Line 14, such property was not identified as property of the

6    Diocese's bankruptcy estate on Schedule A.

7        6.      Schedule F, as amended ("Amended Schedule F") [Docket No. 130],

8    reflects the Diocese's identification of, among other things, real property that the

9    Diocese asserts belongs to creditors holding unsecured non-priority claims. This real

10   property is not scheduled as property of the Diocese's bankruptcy estate on Schedule

11   A.

12       7.      Pages from the Diocese's website at http://dioceseofspokane.org (the

13   "Diocese Website") list parishes and schools within the Diocese. These parishes and

14   schools were not scheduled as property of the Debtor's bankruptcy estate on Schedule

15   A.

16       8.      On or about February 4, 2005, the Committee filed its Complaint for

17   Declaratory Relief and Substantive Consolidation (the "Complaint"). The Complaint

18   names the Diocese and approximately 179 Diocese-Related Entities as Defendants,

19   including the Parishes. These Diocese-Related Entities were identified from the

20   Statement Line 14, Amended Statement Line 14, Schedule F, Amended Schedule F,

21   and the Diocese Website. By the Complaint, the Committee seeks adjudication that

22   the real property owned by the Diocese upon which the Parishes function is property

23   of the Diocese's bankruptcy estate. The Committee brings three causes of action in

24   that regard: the First Cause of Action seeks a declaration that the Disputed Real

25   Property is property of the Diocese's bankruptcy estate; the Second Cause of Action

26   seeks a declaration that the Disputed Personal Property is property of the Diocese's

27   bankruptcy estate; and the Third Cause of Action seeks an order of this Court ordering

28   substantive consolidation, nunc pro tunc, of the Diocese's bankruptcy estate with the

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA  99201-0407
Phone: (509) 624-9219  Fax: (509) 624-9231

Diocese-Related Entities, effective as of December 6, 2004. This motion seeks adjudication only as to those Defendants listed on pages 3-4, <u>supra</u>, for the properties specially referenced in footnote 1, <u>supra</u>.

9.      To date, only the Diocese has filed an Answer to the Complaint. The Diocese asserts several affirmative defenses. <u>See</u> Defendant Catholic Diocese of Spokane's Answer and Affirmative Defenses (the "Answer" and the "Affirmative Defenses").

### III.
### <u>PARTIAL SUMMARY JUDGMENT IS WARRANTED AS TO THE PARISHES BECAUSE NO GENUINE ISSUES OF MATERIAL FACT EXIST AS TO THE FIRST CAUSE OF ACTION IN THE COMPLAINT, AND BECAUSE DEFENDANTS CANNOT SATISFY THEIR BURDEN OF PROVING THEIR AFFIRMATIVE DEFENSES</u>

### A.      <u>The Standard On Summary Judgment</u>

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) ("Rule 56") (made applicable to the instant adversary proceeding by Fed. R. Bankr. P. 7056). Either a plaintiff or a defendant may file a motion for summary judgment under Rule 56. <u>See id.</u>; <u>see also</u> <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.</u>, 210 F.3d 1099 (9th Cir. 2000). Where the moving party is a plaintiff, it must provide admissible evidence on summary judgment "on all matters as to which [it] bears the burden of proof." <u>Zands v. Nelson</u>, 797 F.Supp. 805, 808 (S.D. Cal. 1992) (citation omitted). Here, the Committee as the moving party on partial summary judgment is to provide admissible evidence on the First Cause of Action to the Complaint.

Where the party moving for summary judgment does <u>not</u> carry the ultimate burden of persuasion at trial, that moving party "can meet its initial burden simply by 'identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 6

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW      Doc 64      Filed 04/07/05      Entered 04/07/05 16:54:25      Pg 12 of 38

1   demonstrate the absence of a genuine issue of material fact.'" <u>Jespersen v. Harrah's</u>
2   <u>Operating Co., Inc.</u>, 392 F.3d 1076, 1079 (9th Cir. 2004). Then the non-moving party
3   must produce evidence to support its defenses. <u>See Nissan Fire & Marine Ins. Co.</u>,
4   210 F.3d at 1103 (citing <u>High Tech Gays v. Defense Indus. Sec. Clearance Office</u>, 895
5   F.2d 563, 574 (9th Cir. 1990)). In order to satisfy its burden, the non-moving party
6   must show "sufficient evidence of each and every element that he or she must prove."
7   <u>Continental Casualty Co. v. Wendt</u>, 205 F.3d 1258, 1261 (11th Cir. 2000) (citing
8   <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1528 (11th Cir. 1987)).

9       Material facts are those relating to the substantive law of a cause of action. <u>See</u>
10  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "'Only disputes over
11  facts that might affect the outcome of the suit under the governing law will properly
12  preclude the entry of summary judgment.'" <u>IPEC Planar v. Mach 1 Svcs., Inc.</u>, 129
13  F.Supp.2d 1265, 1268-69 (D. Ariz. 2000) (quoting <u>Anderson</u>, 477 U.S. at 249). A
14  "genuine" issue is one about which a reasonable fact finder could find for the
15  nonmoving party. <u>See</u> <u>Jespersen</u>, 392 F.3d at 1079.

16      Here, partial summary judgment is appropriate in favor of the Committee
17  against the Diocese and the 32 Parishes (as set forth <u>supra</u>), as to the First Cause of
18  Action relating to the Disputed Real Property, because the law relating to property of
19  the estate is clear and there exist no material disputed facts.

20  **B.    There Exist No Genuine Issues of Material Fact As To The
        First Cause of Action That the Diocese Has Legal Title To
21      The Disputed Real Property**

22          **1.    The Diocese Holds Legal And Equitable/Beneficial Title To The
                Disputed Real Property.**
23

24      The Statement Line 14, Amended Statement Line 14, Schedule A, Schedule F,
25  Amended Schedule F, and the Diocese Website posit that the Disputed Real Property
26  does not belong to the Diocese. The Diocese further claims, under penalty of perjury,
27  that it holds that property for others. As a matter of law and of fact, those positions
28  are groundless.

18477-002\DOCS_LA:138319.1

COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 7

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 13 of 38

The title records that the Diocese's legal counsel provided to Committee counsel (see Affidavit of James I. Stang, Esq. in Support of Committee of Tort Claimants' Motion for Summary Judgment ("Stang Affidavit"), at Exhibit "1"), demonstrate that the Diocese alone holds legal and equitable/beneficial title to certain real property that the Diocese scheduled as belonging to the Parishes.[4] See Exhibit 2 to Stang Affidavit (listing legal description of Disputed Real Property). All Disputed Real Property is titled in the name of the Diocese. See SS, ¶¶47, 76, 78.

The real property deeds obviate any question as to the ownership of the Disputed Real Property -- legal, beneficial, equitable or otherwise. These deeds convey the Disputed Real Property to the Bishop of Spokane, a corporation sole. See SS, ¶78. Not a single deed of the Disputed Real Property to the Bishop indicates that anything other than legal and equitable/beneficial title was transferred to him. See Exhibit "1" to Stang Affidavit; see also See Ray v. King County, 120 Wash.App. 564, 577 (2004) ("Conversely, where there is no language relating to the purpose of the grant or limiting the estate conveyed, and the deed conveys a strip of land, courts will construe the deed to convey fee simple title."); Grove v. Payne, 47 Wash.2d 461, 465 (1955) ("It is the general rule that, in order to place a limitation upon an estate or to make it conditional, the language used in the deed must clearly indicate such an intent, either by express terms or by necessary implication from the language used.").

Moreover, none of the title information indicates that anyone other than the Diocese has an interest in the Disputed Real Property. See Exhibit 1 to Stang Affidavit; see also SS, ¶28 (noting that no documents exist in any county recorder's office in Washington State evidencing any parish's alleged interest in real property listed in the Schedules and in the Statement of Financial Affairs). Because property in the Diocese is owned by the Diocese as a corporation sole, Parishes "cannot legally

---

[4] By providing this Title Information to Committee counsel, the Diocese has waived any affirmative defense of "disclosure of information". See Affirmative Defenses, ¶3.

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 8

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 14 of 38

own property in their own name." SS, ¶¶56-57. The Diocese is not even aware of real estate title insurance being issued in any parish's name rather than in the Diocese's name. See SS, ¶29. The Diocese, not the parish, has the absolute right to make the ultimate decision to sell real estate listed on Statement Line 14 and Amended Statement Line 14. See SS, ¶¶36-37.

Thus, the Diocese holds legal and equitable/beneficial title to the Disputed Real Property. The Diocese should have scheduled the Disputed Real Property as property of the estate on Schedule A, without any reservation as to title.

### 2.     The Disputed Real Property Is Not Subject To Any Trust.

Moreover, any argument that the Disputed Real Property is held in trust must fail. The Disputed Real Property is not subject to any trust -- whether express, resulting, constructive, or otherwise.[5] To the extent that the Defendants assert an express, resulting or constructive trust, that trust theory fails because of a misapplication of the Washington corporation sole statute, non-compliance with the Statute of Frauds, or the absence of a scintilla of evidence that the requisites for such trusts exist. Furthermore, the Diocese itself admits that, "Civilly the Diocese is a single corporation, a corporation sole. The **assets of every entity and of the totality are at risk in the activities, contracts, liabilities and decision of any entity**." SS, ¶72 (emphasis added). Parishes and schools are "diocesan entities." See SS, ¶55; see also ¶¶64, 75. The Diocese's trust argument contradicts applicable law and the Diocese's own interpretation of creditor rights against the Disputed Real Property.

---

[5]  That the Disputed Real Property is not subject to any trust also defeats two of the Diocese's interrelated affirmative defenses: (1) that the Disputed Real Property is subject to some type of trust; and (2) that the Committee has failed to name all parties necessary to a just disposition of this controversy. The Committee references these arguments again in Section III.C.2, infra.

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 9

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW     Doc 64     Filed 04/07/05     Entered 04/07/05 16:54:25     Pg 15 of 38

### a. The Corporation Sole Statute Does Not Create A Trust.

One alleged form of express trust is the trust arising from the Washington corporation sole statute. However, the corporation sole statute under which the Diocese was formed does not support the Defendants' trust theory, as set forth generally in the Diocese's Affirmative Defenses. The purpose of the corporation sole statute is a restriction on the Bishop's personal interest in the Disputed Real Property. See RCW 24.12.030 ("[A]ll property held in such official capacity by such bishop, overseer or presiding elder, as the case may be, shall be in trust for the use, purpose, benefit and behoof of his religious denomination, society or church.").

The corporation sole is a statutory solution to the problem created by the religious doctrine that ecclesiastical property in a diocese is entitled in the mortal bishop but that such property is not his private property. See Gerstenblith, Associational Structures of Religious Organizations, 1995 B.Y.U. L. Rev. 439, 455 (1995) ("In the religious context, a corporation sole is the incorporation of the bishop or other presiding officers of the church for the purposes of administering and managing the affairs, property and temporalities of the church. The principal purpose of a corporation sole is to insure the continuation of ownership of a religious organization's property."). Thus, when a bishop dies, the ecclesiastical property does not pass to his heirs. Id.; see also County of San Luis Obispo v. Ashurst, 146 Cal.App.3d 380, 194 Cal.Rptr. 5 (1983) ("Title will not then be divested or passed to that person's heirs upon his death but will be retained for the benefit of the religious group and passed to the successors to his office."). Clearly, the corporation sole statute's trust terminology is simply a succinct statement of the underlying purpose of the corporation sole: the Disputed Real Property does not belong to Bishop Skylstad in his individual capacity.

Even if the Diocese's statutory trust theory is correct, the Washington Supreme Court long ago ruled that similar trusts for the benefit of a religion do not restrict the trustee's right to sell the subject property. See Wilkeson v. Rector, Wardens and

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

Vestry of St. Luke's Parish of Tacoma, 176 Wash. 377 (1934). In Wilkeson, the court rejected a challenge to the sale of real property which had been deeded to the grantor for the purpose of it being occupied by a church or a religious society solely for religious purposes.[6] The grantor sold the real property to an individual who intended to demolish the church building and apparently intended to use the real property for a non-religious purpose. The appellant, a member of the vestry of the parish,[7] challenged that the grantor did not have the right to sell the real property. The Washington Supreme Court, rejecting the challenge, held "[I]t was proper for the court to decree that such right exists [the right to sell the property], for in a trust of the character here involved, where no restraint is imposed on the right to alienate, the courts will not interfere…."). Id. at 386. The corporation sole statute's "trust" for the Church is no different than the trust in Wilkeson, and is equally of no import to the ownership of the Disputed Real Property.

The Diocese's apparent invocation of this statutory trust (and its charitable trust/donor restriction theories) is a transparent, yet ultimately unsuccessful, ruse to deny tort creditors access to the value of the Disputed Real Property. If the Diocese's trust theory is correct, the Diocese can injure people and damage property, and simply walk away claiming that it is judgment proof because its property is held in trust for the Catholic Church. The Committee cannot find a single, modern case in Washington or in any other state that even suggests that the corporation sole structure (or the nonprofit corporation structure) protects a corporation sole from its just debts. In fact, the contrary is true.

The Bishop's gross misinterpretation of the statute flies in the face of the Washington Supreme Court's complete abrogation of the charitable immunity doctrine. See Friend v. Cove Methodist Church, Inc., 65 Wash.2d 174, 178-79 (1964)

---

[6] The case also considered which religious authority had title to the real property.

[7] A vestry is the governing body of an Episcopal church.

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 11

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 17 of 38

1  (court abandons doctrine of charitable immunity and specifically rejects application of

2  the doctrine to churches).  As the Washington Supreme Court has made clear, the

3  Diocese is no more above the law of tort liability than any other entity in the State of

4  Washington.  See id.; see also County of San Luis Obispo v. Ashurst, 194 Cal.Rptr. 5,

5  8 (1983) (assets of California corporation sole are liable for debts of the corporation

6  sole).  The Diocese does not get a free pass simply because the state legislature has

7  tried to accommodate its hierarchical religious structure.  See Gerstenblith, 1995

8  B.Y.U. L.Rev. at 455 ("The corporation sole is a particularly useful organizational

9  form for hierarchical religions because the organization's legal structure is able to

10  mirror its internal theological structure.").

### b.    The Disputed Real Property Is Not In An Express Trust.

12      The Diocese raises vague affirmative defenses under the rubric of "Washington

13  Trust Law" and also refers to charitable trusts expressly and in the context of implying

14  that unnamed third parties (i.e. donors) have rights in the gifted property that are

15  senior to the rights of creditors.  Many of these arguments may confusingly overlap

16  one another but the response to each of them essentially is the same: Washington law

17  requires the Diocese to pay its creditors.

18      Under Washington law, there are express, constructive and resulting trusts.

19  Any claim of a beneficial/equitable interest in the Disputed Real Property by third

20  parties under an express trust is unenforceable because the acquisition of such interest

21  violated Washington's Statute of Frauds.  See RCW 64.04.010 ("Every conveyance of

22  real estate or any interest therein, and every contract creating or evidencing any

23  encumbrance upon real estate, shall be by deed….").  Any claim of an express trust in

24  the Disputed Real Property must satisfy the requirements of the Statute of Frauds.

25  Dowgialla v. Knevage, 48 Wash.2d 326, 333, 294 P.2d 393, 397 (1956) ("Because of

26  these statutes [RCW 64.04.010 and 64.04.020], an express trust in land cannot be

27  established by parol.").

28

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 12

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 18 of 38

1    The deeds clearly provide that the Diocese is the sole and exclusive grantee of

2    the Disputed Real Property. Not a single deed of the Disputed Real Property indicates

3    that anything other than a full fee simple title was transferred to the Diocese. See Ray,

4    120 Wash.App. at 577 ("Conversely, where there is no language relating to the

5    purpose of the grant or limiting the estate conveyed, and the deed conveys a strip of

6    land, courts will construe the deed to convey fee simple title."); Grove v. Payne, 47

7    Wash.2d 461, 465 (1955) ("It is the general rule that, in order to place a limitation

8    upon an estate or to make it conditional, the language used in the deed must clearly

9    indicate such an intent, either by express terms or by necessary implication from the

10   language used.").

11       Likewise, any assertion that the Disputed Real Property may be forfeited back

12   to the donor absent a written reservation by the donor is equally unenforceable. See

13   Alby v. Banc One Financial, 119 Wash.App. 513, 523 (2003) ("The general rule in

14   Washington is that conditions on conveyances that may result in forfeiture are highly

15   disfavored."). Just as the donors did not create any express trusts for these

16   unidentified parishioners and donors, the donors' deeds did not reserve any right to

17   recover the property from the Diocese after they conveyed it.

18       The Washington law corporate dissolution provisions also belie the Diocese's

19   apparent contention that the corporation sole statute exempts diocesan property from

20   claims under some nebulously asserted trust or donor restriction defenses.

21   Washington law establishes that creditors' rights are senior to donors/trustors

22   notwithstanding express transfer restrictions. A corporation sole can be dissolved

23   under two statutory schemes: the provisions of the Washington Nonprofit Corporation

24   Act (RCW 24.03 et seq.) ("Act") and the corporation sole statute (RCW 24.12.060).

25   Both schemes clearly illustrate that diocesan creditors have first priority rights in the

26   Diocese's property.

27       The Act provides a dissolution scheme for nonprofit corporations. The Act is

28   applicable to the Diocese. See Answer, ¶4 ("[T]his defendant alleges that it is a not-

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 13

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 19 of 38

for-profit religious entity...."); SS, ¶80 (the Diocese is a Washington State nonprofit corporation). Under the Act's provisions, the assets of a dissolved nonprofit corporation are distributed to creditors before any other interested party. See RCW 24.03.225.

This distribution scheme, although not controlling in the bankruptcy case, nonetheless defines the Diocese's interest in the Disputed Real Property. In McCarthy v. Bierbower (In re Crossroad Health Ministry, Inc.), 319 B.R. 778 (Bankr. D.D.C. 2005) ("Crossroad"), the bankruptcy court held that a donor restricted gift of property was, for the purpose of resolving the competing claims of creditors and the donor, unrestricted property of the bankruptcy estate. The court applied D.C. Code §29-301.56, which applies to the dissolution of nonprofit corporations. The Crossroad court, holding that the enumerated distribution scheme established a distribution priority, found that the D.C. statute "reflects a legislative determination that funds subject to such restrictions are a legitimate source of payment to creditors and of liquidation expenses, thus constituting to at least that extent property of the estate. . . ." Crossroad, 319 B.R. at 781-82. The court explicitly rejected an argument, analogous to the Diocese's trust argument, holding that, "as a matter of law, funds subject to a charitable use limitation are considered assets of the estate, and not funds held in trust, to the extent necessary to satisfy claims against the estate." Id. at 782 (emphasis added). Because RCW 24.04.225 is identical in every important way to the statute applied in Crossroads, the holding in that case is directly on point. Thus, the Disputed Real Property is property of the estate regardless of any express or implied restriction imposed by the donors of such property.

The corporation sole statute also provides for the dissolution of the corporation under certain special circumstances. While the statutory path is somewhat circuitous, the ultimate conclusion is that the corporation's assets are subject to creditor claims. RCW 24.14.060 provides for the administrative dissolution of the corporation sole and refers to RCW 23B.14.203. RCW 23B.14.203, a dissolution statute of more general

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 14

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 20 of 38

1 applicability, states that the secretary of state may dissolve a subject corporation under

2 the procedures of RCW 23B.14.210 which itself directs the dissolution pursuant to

3 RCW 23B.14.050 and 23B.14.060. See RCW 23B.14.210 ("A corporation

4 administratively dissolved continues its corporate existence but may not carry on any

5 business except that necessary to wind up and liquidate its business and affairs under

6 RCW 23B.14.050 and notify claimants under RCW 23B.14.060."). RCW 23B.14.050

7 provides that the property of a dissolved corporation must be used to pay corporate

8 liabilities before any other distributions. In conclusion, the Disputed Real Property is

9 not held in an express trust.

10       **c.      The Disputed Real Property Is Not In A Constructive Or Resulting Trust.**

11

12      The Committee recognizes constructive and resulting trusts are exceptions to

13 the Statute of Frauds. However, there is no assertion or evidence of any misconduct

14 by the Diocese that would give rise to a constructive trust and there is no evidence that

15 any third party can satisfy the requirements for a resulting trust. See Engel v. Breske,

16 37 Wash.App. 526, 528-29 (1984) ("A resulting trust arises where a person makes or

17 causes to be made a disposition of property under circumstances which raise an

18 inference that he does not intend that the person taking or holding the property should

19 have the beneficial interest in the property."). Any person claiming an interest in the

20 Disputed Real Property bears the burden of proof to establish that interest. Id. at 528-

21 29 ("In such [resulting trust cases], the person asserting the trust has the burden of

22 proving its existence by clear, cogent and convincing evidence. Estate of Spadoni v.

23 Schweinler (In re Spadoni's Estate), 71 Wash.2d 820, 823, 430 P.2d 965 (1967)");

24 Town of Twisp, Wash. v. Methow Valley Irr. Dist., 32 Wash.App. 132, 135 (1982)

25 ("The one challenging the validity of a deed bears the burden of proof.").

26

27

28

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 15

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 21 of 38

### 3. The Parishes Do Not Have A Legal Existence Separate From The Diocese.

The evidence is undisputed that the Parishes are **not** legal entities separate from, or independent of, the Diocese. Rather, the Parishes are merely operating divisions and/or real or personal property in which the Diocese has legal ownership. As such, the Parishes cannot hold the beneficial/equitable property interests set forth in the Statement.

"Civilly the Diocese is a single corporation, a corporation sole. The assets of every entity and of the totality are at risk in the activities, contracts, liabilities and decision of any entity." SS, ¶72. Parishes and schools are "diocesan entities." See SS, ¶55; see also ¶¶64, 75. Unincorporated parishes have no legal existence separate from the diocese where they are located. See e.g., F.E.L. Publications, Ltd. v. The Catholic Bishop of Chicago, 754 F.2d 216 (7th Cir. 1985); EEOC v. St. Francis Xavier Parochial School, 77 F.Supp.2d 71 (D.D.C. 1999); Central Catholic Educ. Ass'n v. Archdiocese of Portland, 323 Or. 238, 916 P.2d 303 (1996); Eberle v. Benedictine Sisters of Mt. Angel and Archdiocese of Portland in Oregon, 385 P.2d 765 (Or. 1983); Employment Div. v. Archdiocese of Portland, 600 P.2d 926 (Or. App. 1979).[8] In a

---

[8] These authorities definitively establish that the Parishes have no legal existence apart from the Diocese. This result is steeped in the long-established judicial recognition of the Roman Catholic Church as "hierarchical." Southside Tabernacle v. Pentecostal Church of God, 32 Wash.App. 814, 818 (1982). As early as 1872, the United States Supreme Court distinguished between congregational and hierarchical church structures. See Watson v. Jones, 80 U.S. (13 Wall.) 679, 722-32 (1872). That distinction remains salient today. A hierarchical church is defined as a "'general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization.'" Southside Tabernacle, 32 Wash.App. at 818 (quoting Watson v. Jones, 80 U.S. (13 Wall.) at 722). In contrast, a

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

recent case, the Massachusetts state court found that the St. Albert the Great Parish in the Archdiocese of Boston was only an unincorporated subdivision of the Archdiocese. See Akoury v. Roman Catholic Archbishop of Boston, 2004 WL 2341333, 18 Mass.L.Rptr. 271 (Mass. Super. 2004) (attached as Exhibit "6" to the Stang Affidavit). On this basis, the state court refused to enjoin the archbishop from selling parish assets, holding that the parish priest merely held those assets as an agent for the Archdiocese. See id.

In fact, the Diocese expressly concedes that a parish is not a "legal entity" entitled, for instance, to hold legal ownership of real property in its own name. See SS, ¶57. As just one example, St. Patrick's Parish has acknowledged that it cannot own bequeathed property, and that such property must be bequeathed to the Catholic Bishop of Spokane, a corporation sole. See SS, ¶79. Nor are parishes able to enter into binding contracts. See SS, ¶69. Parishes are unable to get funding or credit outside of the Church hierarchy. See SS, ¶24. Parishes "don't have statutes and bylaws". SS, ¶41. Simply stated, parishes "are governed according to the rules and regulations of the diocese". SS, ¶42.

In all of these ways, the Parishes do not enjoy legally cognizable existences separate from that of the Diocese. Any real or personal property which Statement Line 14, Amended Statement Line 14, Schedule F, Amended Schedule F, and/or the Diocese Website indicate as belonging to the Parishes cannot be correct as a matter of law and as a matter of fact. Rather, any such property must belong to the Diocese. Therefore, such real property is properly designated as property of the estate on Schedule A.[9]

---

congregational church structure is a religious congregation that is "'strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority.'" Id.

[9] Furthermore, the evidence shows that Diocese-Related Entities other than Parishes

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

**4. The Diocese Is Judicially Estopped From Arguing That Disputed Real Property Is Not Property Of The Diocese.**

The doctrine of judicial estoppel prevents a party from taking divergent positions in different legal proceedings. See Wagner v. Prof. Engineers in California Gov't, 354 F.3d 1036, 1044 (9th Cir. 2004). In two recent cases, Washington appellate courts have held that the Bishop is the owner of properties located in parishes. In the case of Munns v. Martin, 131 Wash.2d 192 (1997) (en banc), the Diocese asserted its ownership of the property used by St. Patrick's School in Walla Walla, Washington, and sought to demolish and replace it with a new pastoral center. See id., at 196. Part and parcel of the Diocese's legal position was that the Diocese had legal control and ownership over the school. Bishop Skylstad, the current Bishop of the Diocese, was the bishop at all times relevant to the Munns case. See SS, ¶26.

Among the Defendants in the instant case are St. Patrick Church and St. Patrick Parish in Walla Walla. (Although this Motion is not brought against either of those Defendants due to insufficient evidence at this early stage of the proceedings before discovery has been propounded, the case of these Defendants is instructive as to the relationship between the Diocese and the Parishes that are subject to this Motion). In 1997, the St. Patrick School was part of the St. Patrick Parish in Walla Walla. In Munns, the Diocese took the position that the St. Patrick school belonged to the Diocese because the Diocese wanted to raze it in order to replace it with a new

---

also do not have a legal existence separate from that of the Diocese. All "institutions of the Diocese are entities of the Catholic Bishop of Spokane, a corporation sole." See, SS, ¶64. In that way, "legal title to all goods and real estate of the Diocese, parishes and Diocesan institutions is vested in the Bishop as a corporation sole." See, SS, ¶76 (emphasis added). In this way, all of the Diocese-Related Entities are part of the Diocese. The Committee anticipates filing a subsequent motion for summary judgment relating to these non-Parish Diocese-Related Entities.

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 18

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

1  pastoral center. <u>See</u> <u>Munns</u>, 131 Wash.2d at 196. Based on the holding that the

2  school was part of the Diocese's property, the Diocese was able to demolish it. <u>See</u>

3  Exhibit 4 to Stang Affidavit.

4        In <u>Miller v. Catholic Bishop of Spokane</u>, 2004 WL 2074328 (Wash.App. 2004),

5  the Bishop again asserted ownership of a building used as a parish facility. <u>See also</u>

6  SS, ¶26 (establishing that Bishop Skylstad, the Diocese's current Bishop, was the

7  Bishop at all times relevant to the <u>Miller</u> case). <u>Miller</u> involved a dispute regarding

8  the Diocese's liability, in its capacity as a landlord or licensor, for personal injuries

9  suffered by a childcare worker in the parish hall. <u>See</u> SS, ¶81 (establishing that the

10  Diocese, not the parish, was lessor of Parish Hall of Sacred Heart Catholic Church).

11  The Court of Appeals of Washington (Division Three, Panel One) stated in its factual

12  recital that the parish hall of Sacred Heart Catholic Church in Springdale, Washington

13  was owned by the Catholic Bishop of Spokane.[10] The Court recited the terms of the

14  lease of the parish hall to the childcare program operator, in which the Diocese

15  represented itself as the owner of the real property.[11] The Court determined that the

16  lease actually was a license agreement and noted that the Diocese, as licensor, was the

17  owner and <u>possessor</u> of the parish hall.

18        Now, when it behooves him to do so, the Bishop reverses course to argue that

19  the St. Patrick Parish's property and the Sacred Heart Church in Springdale

20  Washington do <u>not</u> belong to the Diocese. The Diocese cannot change its mind with

21  the winds depending on the advantage it seeks. Fairness requires that the Diocese be

22  held to abide by its prior position that properties constituting parish facilities are part

23  of the Diocese.

24        **5.     Assuming, But Not Admitting That The Parishes Are Legally
             Separate From The Diocese, They Should Be Treated As Alter Egos.**

25

26

---

27  [10]  <u>See</u> Exhibit 8 to the Stang Affidavit.

28  [11]  <u>See</u> Exhibit 9 to the Stang Affidavit.

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

Even were the Parishes to be considered legally separate from the Diocese, they are alter egos of the Diocese. See e.g., The Standard Fire Ins. Co. v. Blakeslee, 54 Wash.App. 1, 5 (1989) ("Washington long has recognized the 'alter ego' doctrine, which provides: 'Where a private person so dominates and controls a corporation that such corporation is his *alter ego,* a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same.'") (emphasis in original). There exists no genuine issue of material fact regarding the Diocese's complete control and domination over the Parishes.

Every material aspect of the relationship between the Diocese and the Parishes illustrates the Diocese's complete control and domination. Indeed, "[a]ll the parishes and institutions of the diocese are entities of the Catholic Bishop of Spokane. . . ." SS, ¶64. The bishop appoints parish priests. See SS, ¶6. "The diocesan priest is really closely – closely associated with his bishop." See SS, ¶43. In fact, parish priests act "as the agent of the bishop in the respective" parishes. See SS, ¶21; see also SS, ¶5 (stating that parish priests are "considered to be agents of the bishop"); SS, ¶50. The Diocese "grants to each pastor authority to carry out the ordinary financial management of the entity including signing checking accounts, yearly professional contracts, service agreements and other ordinary instruments of parish business". SS, ¶65. The Diocese also makes periodic retirement payments to retired parish priests and coordinates priests' medical benefits. See SS, ¶¶11, 13, 17, 48. The Diocese interacts "in an accounting way with parishes and schools." SS, ¶7. Parishes are required to provide the Diocese with annual financial reports on a standard form requested by the Diocese. See SS, ¶15.

The Diocese has domination over the Parishes in other ways, as well. The Diocese controls a "banking system" known as the Deposit and Loan Fund (the "DLF"). See SS, ¶9-10. "It has been the long standing policy of the Catholic Bishop of Spokane that parishes and institutions of the diocese **are required** to deposit excess funds (savings, building fund collections, etc.) with the diocese." See SS, ¶68

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 20

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 26 of 38

(emphasis added). These unrestricted funds in the DLF **are property of the Diocese's estate**." See SS, ¶16 (emphasis added).

To wit, the Diocese has used DLF funds to "defray" the costs of the sex abuse scandal that prompted the Diocese's bankruptcy filing. See SS, ¶33. The Diocese did not seek, nor did the Parishes provide, permission for the Diocese to use DLF funds for that purpose. See SS, ¶34. On the other hand, Parishes must receive the Bishop's approval to receive a loan from the DLF. See SS, ¶22. As a more general matter, the Bishop's consent "is required for the acquisition or alienation of Diocesan property or of the property of parishes and institutions subject to him." SS, ¶77.

The Diocese also exerts its domination and control over the Parishes in other ways. "The Bishop of the Diocese of Spokane sets forth the . . . norms regarding the establishment and function of finance counsels" at the diocesan level and at the parish level. SS, ¶61. The Bishop and the Bishop's Finance Council establish fiscal policies and procedures that Parish Finance Councils are required to carry out. See SS, ¶62. "The Parish Finance Council cannot be dissolved without permission of the Bishop." SS, ¶63. The Diocese controls the foundation investment account, which contains interest earnings on an endowment for retired priests, and monies to support the parish service office and the office of education. See SS, ¶14.

Even the physical assets in the Parishes are controlled by the Diocese. The Bishop's consent is "required for the acquisition or alienation of Diocesan property". SS, ¶77. "The Bishop alone retains the authority to sign capital construction contracts and property contracts." SS, ¶66. The Diocese controls the use of parish facilities, prohibiting, for instance, renting of facilities to political candidates or partisan groups, and requiring lease or rental or long term loan of use of parish facilities to be "cleared with the Diocesan Secretary for Business Affairs." SS, ¶67.

Disregard of the corporate entity is appropriate where, as here, the corporate separation is used to violate or evade a duty and the disregard is "'necessary and required to prevent unjustified loss to the injured party.'" 1B Wash. Prac., Methods of

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

Prac. §66.91 (4th ed.).  In the instant case, the Diocese attempts to disassociate itself from the Disputed Real Property in an effort to evade its duty to fully remedy the sexual abuse claims that the Diocese itself designates as the primary reason for its chapter 11 filing.  The Diocese, which has warned that administrative insolvency, threatens its reorganization, must raise cash to fund its case.  Memorandum in Support of Motion to Disband Tort Litigants' Committee and Reconstitute Committee of Tort Claimants, pp. 4-5 [Docket No. 265].  This can be accomplished by piercing the corporate veil if the Parishes are deemed separate from the Diocese.

C.     **The Diocese Cannot Prove Any Of Its Affirmative Defenses**

        Because Defendants have the burden of proof at trial on their affirmative defenses, they have the burden of proof on summary judgment.  The Committee, as the moving party on this Motion, "need not disprove matters on which the opponent has the burden of proof at trial."  IPEC Planar v. Mach 1 Svcs. Inc., 129 F.Supp.2d 1265, 1269 (D.Ariz. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Rather, Defendants have the burden in opposing the Motion to establish the existence of all essential elements of their affirmative defenses.  See id.

        The Diocese assumes that burden on this Motion.  Among the affirmative defenses that the Diocese pled are the following: failure to state a claim for which relief can be granted;[12] rights under Canon Law, the First Amendment of the United States Constitution, the Constitution for the State of Washington, Washington Law on Corporation Sole under RCW Chapter 24.12, the Religious Freedom Restoration Act, 42 U.S.C. §2000bb, the Church Autonomy Doctrine, Charitable Trust law, Washington Trust Law, restriction on use by donors, and rights to object to disclosure

_____

[12] Under Federal Rule of Bankruptcy Procedure 12, Defendants' assertion that the Committee failed to state a claim is not properly designated as an affirmative defense. Rather, the assertion is more properly the basis of a Rule 12 motion to dismiss, which the Diocese did not file in the instant adversary proceeding.

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 22

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

of information.  <u>See</u> Affirmative Defenses.  The Diocese cannot satisfy its burden at trial or in opposition to this Motion with regard to these affirmative defenses.

## 1. No Entanglement With Religion

The Diocese presents myriad affirmative defenses asserting its alleged rights under Canon Law, the First Amendment of the United States Constitution, the Constitution for the State of Washington, Washington Law on Corporation Sole under RCW Chapter 24.12, the Religious Freedom Restoration Act, 42 U.S.C. §2000bb, and the Church Autonomy Doctrine.  Taken as a whole, these affirmative defenses share a common thread in attempting to characterize the inquiry into property of the Diocese's estate as an issue that will result in an impermissible entanglement with religion.  This argument is misguided.

### a. The Court's Application Of Neutral Principles Of Law Is Required.

The United States Supreme Court has recognized three methods for judicial resolution of church property disputes.  <u>See</u> <u>Southside Tabernacle v. Pentecostal Church of God</u>, 32 Wash.App. 814, 818 (1982).  One option is that set forth in <u>Watson v. Jones</u>, 80 U.S. (13 Wall.) 679 (1872).  This method applies where, as in <u>Southside Tabernacle, supra</u>, two factions of a church are embroiled in a property dispute.  This is the principle behind the Diocese's affirmative defense of deference to "Church Authority".  <u>See</u> Affirmative Defenses, ¶4.  However, because the property of the estate inquiry in the instant case does not involve a dispute between the Diocese and the Diocese-Related Entities, the <u>Watson</u> analysis is inapplicable and the so-called "Church Authority" affirmative defense has no application to the instant case.

A second means of resolving church property disputes involves application of legislation precluding state interference.  <u>See</u> <u>Southside Tabernacle</u>, 32 Wash.App. at 818.  The Diocese does not raise as an affirmative defense the position that any Washington state law precludes this Court's determination of the application of 11 U.S.C. §541.  To the extent that Defendants raise an affirmative defense that

18477-002\DOCS_LA:138319.1

COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 23

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 29 of 38

Washington statutes governing corporations sole precludes bankruptcy evaluation of the property of the estate, that argument is baseless. RCW 24.12 merely permits the Diocese, in the person of the Bishop, to become a corporation sole. See RCW 24.12.010. Corporations sole are not immune from the rights and obligations under civil law to the extent, as discussed above, that civil law does not encroach upon religion. Indeed, by filing for protection under the Bankruptcy Code, the Diocese availed itself of the civil law.

Thus, the third means of resolving church property disputes under the civil law is applicable here. This "neutral principles of law" approach "includes an examination of the deeds, the denomination's constitution, and general state corporation laws to determine ownership, without looking to the structure of the church." See Southside Tabernacle, 32 Wash.App. at 819. The neutral principles of the law approach is applicable in cases, such as the case at bar, in which property disputes involve a Debtor and its creditors. See Gen. Council on Fin. and Admin. of the United Methodist Church v. Superior Court, 439 U.S. 1355, 1372-73 (1978) ("there are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes [citation omitted]. But this Court never has suggested that those constraints similarly apply outside the context of such intraorganization disputes. . . . Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization") (emphasis added); Cf. Southside Tabernacle, supra (applying Watson rule, not neutral principles of law, where local church and district church, to which local church was affiliated, disputed ownership of church property).

Pursuant to the neutral principles of law approach, the First Amendment does not prohibit the application of "objective, well-established concepts of trust and property law familiar to lawyers and judges" in the resolution of church property disputes that do not involve any controversy of religious doctrine. See Jones v. Wolf,

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 24

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 30 of 38

443 U.S. 595, 604-05 (1979). That is precisely the situation at bar where Section 541 of the Bankruptcy Code and Washington state law of trusts and property will be applied to determine property of the estate.

### b. The Establishment Clause Requires The Court To Determine Property Of The Estate.

The fact that the Diocese and the Diocese-Related Entities are religious organizations has no bearing on the judicial determination of property of the estate under 11 U.S.C. §541. In fact, were the Court to defer to the Diocese's assessment of what is property of its estate, the Court would violate the First Amendment's Establishment Clause, which prohibits the government from enforcing any law that will "aid one religion, aid all religions, or prefer one religion over another." Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947).

In addition, the Establishment Clause has been found to bar the government from delegating its authority "to a group defined by its character as a religious community, in a legal and historical context that gives no assurance that governmental power has been or will be exercised neutrally." Bd. of Educ. of Kiryas Joel Village School Dist. v. Grumet, 512 U.S. 687, 696 (1994). In that way, were the Court to defer to the Diocese's intent to determine for itself the property of its bankruptcy estate, the Court would be in violation of the First Amendment.

A law complies with the Establishment Clause if it has satisfied the following tripartite test: First, the law "must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." Lemon v. Kurtzman, 403 U.S. 602, 610-13 (1971) (internal citations omitted).

Pursuant to the Lemon v. Kurtzman test, the property of the estate inquiry in the instant case does not violate the Establishment Clause of the First Amendment. First, the bankruptcy laws and Washington real property laws, which will be applied to

18477-002\DOCS_LA:138319.1

COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - **25**

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 31 of 38

determine property of the estate pursuant to 11 U.S.C. §541, are secular. Second, the application of these laws to determine property of the estate will not advance or inhibit religion. Third, this Court will not excessively entangle itself with religion by applying neutral principles of law in this case. This bankruptcy case does not involve any aspect of religious belief or ecclesiastical doctrine. Rather, the case involves a fundamental function of all chapter 11 reorganizations – the determination of the property of the estate, which is necessary for the approval of a plan of reorganization.

### c. The Free Exercise Clause

Furthermore, the Free Exercise Clause of the First Amendment does not prohibit the Court from determining what is property of the Diocese's bankruptcy estate. A neutral law of general applicability binds all persons and institutions, even where it may incidentally burden a particular religious practice. See Employment Div. v. Smith, 494 U.S. 872, 878-82 (1990). Laws are "neutral" if they do not, on their face, target religiously motivated conduct, and are not based on animus toward a religion or religious entity. See Church of the Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520, 531 (1993). A law is "generally applicable" unless it "burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated." Bankruptcy law "is facially neutral and applies to all applicants for the benefits involved." In re Belcher, 287 B.R. 839, 848 (Bankr. N.D. Ga. 2001).

As a corporation sole, organized under the civil laws of the State of Washington, the Diocese sought the protection of the bankruptcy laws. The application of 11 U.S.C. §541 is integral to the protection the Diocese sought by filing chapter 11. Not only does the property of the estate inquiry not violate the Diocese's First Amendment rights, but also it vindicates the Diocese's legal right to civil bankruptcy protections.

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 26

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 32 of 38

#### d. The Religious Freedom Restoration Act Is Not Implicated

The Diocese asserts an affirmative defense that the Religious Freedom Restoration Act, 42 U.S.C. §2000bb ("RFRA"), provides a defense from the application of Section 541. The Diocese's defense is misguided. In order for RFRA to apply, the governmental action at issue must substantially burden the exercise of religion. The burden is evidenced where a religious adherent receives "substantial pressure . . . to modify his behavior and to violate his beliefs". See Guam v. Guerrero, 290 F.3d 1210, 1222 (2002). The only governmental action in this case involves the Court's application of bankruptcy and Washington state laws required for the prosecution of the Diocese's bankruptcy case – a case, it should be noted, that the Diocese voluntarily filed. Thus, the Diocese cannot satisfy this first element of a RFRA claim.

Even assuming, arguendo, that the Diocese succeeds in demonstrating that the application of bankruptcy law and Washington law substantially pressures the Diocese to violate its religious beliefs, the government can counter the application of RFRA by showing that such a burden is the least restrictive means of furthering a compelling state interest. See 42 U.S.C. §2000bb-1(a)-(b). The bankruptcy scheme set forth in the Bankruptcy Code, 11 U.S.C. §101, et seq., demands uniform application of its rules and laws to all debtors to ensure fairness, equity, and justice. See In re Canter, 299 F.3d 1150, 1154 (9th Cir. 2002) (recognizing "uniformity of bankruptcy administration" as factor in determining withdrawal of the reference); In re Cardelucci, 285 F.3d 1231, 1236 (9th Cir. 2002) (noting "legitimate interests in efficiency, fairness, predictability, and uniformity within the bankruptcy system"). The only way in which the Court can vindicate the uniform administration of justice under the bankruptcy laws is to deal with the Diocese as it would any other debtor. Furthermore, the Diocese's RFRA affirmative defense would violate the Establishment Clause, as discussed above, by treating a religious debtor more

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

deferentially than a non-religiously affiliated debtor. Thus, the Diocese will be unable to prove its RFRA affirmative defense.

## 2. The Disputed Real Property Is Not Subject To Any Trust

The Diocese raises two interrelated affirmative defenses: (1) that the Disputed Real Property is subject to some type of trust and (2) that the Committee has failed to name all parties necessary to a just disposition of the controversy.[13] The second affirmative defense is related to the first affirmative defense in that the Diocese disclaims all but the legal interest in the Disputed Real Properties. Since the Committee sued all of the entities identified on Statement Line 14 and Amended Statement Line 14, the Diocese now contends that unidentified parishioners and donors also have some unspecified interest in the Disputed Real Property. During the Rule 16(b) conference, the Committee asked the Diocese to explain this affirmative defense and identify such parties. See Stang Affidavit, ¶ 11. Counsel responded that the parties would include people who might have an interest in the properties, such as parishioners and donors. See id. Committee counsel asked if the Diocese intended to amend further Statement Line 14 and Amended Statement Line 14 to add these parties. See id. The Diocese counsel stated that the Diocese does not intend to do so. See id.

The Diocese is playing games with the Committee and ultimately with this Court. If other parties have an interest in the Disputed Real Property, the Diocese has an obligation to identify those parties in the Schedules and/or Statement. The Diocese should not be allowed to play "catch me if you can" when it coyly asserts unidentified interests in the Disputed Real Property and simultaneously refuses to fulfill its reporting obligations and correct sworn statements in the Schedules and Statement.

---

[13] Section III.B extensively addresses the contention that the Diocese is a trustee for the Disputed Real Property or that the property is held subject to a donor's restriction. That discussion is incorporated herein by reference.

18477-002\DOCS_LA:138319.1
COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 28

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 34 of 38

As the Diocese refuses to identify these parties either through the Rule 16(b) conference or the requirements of the Bankruptcy Code, the affirmative defense should be stricken.

The Diocese's assertion of these parishioner interests is especially surprising in light of Bishop Skylstad's litigation posture in a case before the Washington Supreme Court that he, rather than parishioners, owned the real property in the Diocese. In Munns v. Martin, 131 Wash.2d 192 (1997) (en banc), the Bishop litigated against six parishioners regarding his right to demolish a parish school. The Washington Supreme Court unequivocally held that the Bishop owned the real property.[14] During his examination at the Section 341(a) meeting, Bishop Skylstad said that the Munns case did not address the parish's interest in the subject property because only a few parishioners (and not the parish itself) opposed him. Seven years later, the Bishop inconsistently contends that the parishioners have an interest in the very same property.

Finally, the Diocese and the Parishes are more than able to adequately represent the interests of these intentionally unidentified parishioners and donors. The Diocese, without reservation, has stated that it holds the Disputed Real Property only as a trustee. See Statement Line 14 and Amended Statement Line 14. During the Rule 16(b) Conference, the Diocese stated that as trustee for the Disputed Real Property, it had an independent obligation to research any factual basis supporting the claims of beneficiaries. See Stang Affidavit, ¶11.

---

[14] Although the Munns Court did not consider the parishioners' standing, parishioners have no standing in a property dispute such as that before the Court in the instant case. In Wilkeson v. Rector, Wardens and Vestry of St. Luke's Parish of Tacoma, 176 Wash. 377, 387 (1934)(concurring, Geraghty, J.), Justice Geraghty stated, "I do not think appellant [a member of the vestry of the parish] is in a legal position to maintain the action."

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

The Diocese's position that it has a duty to protect the alleged trust is the underpinning for the general rule that the beneficiaries of a trust are not necessary parties to this kind of litigation. See 9 A.L.R.2d 10 ("In litigation with strangers concerning title to property claimed to belong to the trust, it is generally sufficient that the trustee alone be before the court, either as plaintiff or defendant, since ordinarily he represents the cestuis in such litigation."); Chemical Bank v. Washington Public Power Supply System, 102 Wash.2d 874, 888 (1984) (rejecting literal application of declaratory relief statute and holding that bondholders are bound by bond fund trustee's release of bondholders' claims.) The Diocese's position that its parishioners and donors have an interest in the litigation is not unlike the unsuccessful argument that the citizens of a municipality must be named as parties to boundary litigation affecting the city. See Town of Ruston v. City of Tacoma, 90 Wash.App. 75, 82, (1998) ("Tacoma's contention that it was necessary to join the people of Ruston and Tacoma is unpersuasive as both municipalities represent the interests of their citizens and were already parties.").

For these reasons, and for the reasons set forth in Section III.B.1, supra, neither of these affirmative defenses has any validity.

### 3.     No Restriction On Use By Donors

The Diocese also alleges the affirmative defense of "restriction on use by donors". See Affirmative Defenses, ¶3. The Diocese will likely argue that, to the extent donors granted to the Diocese the Disputed Real Property, such property may be used only for certain uses that the donor specified. Beside the fact that not a single deed to the Disputed Real Property contains such a restriction, that affirmative defense cannot be asserted in the instant case for all of the reasons stated above and because it would result in impermissible restraints on alienation of property.[15]

In Niemann v. Vaughn Community Church, 118 Wash.App. 824 (2003), the Washington Court of Appeals affirmed the lower court's ruling that discriminatory

---

[15] See Section III herein.

18477-002\DOCS_LA:138319.1

COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - 30

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW     Doc 64     Filed 04/07/05     Entered 04/07/05 16:54:25     Pg 36 of 38

restraints on alienation of church property are impermissible under Washington state law. The court found that RCW 49.60.224 invalidates restrictions in written instruments "'relating to real property which purport [] to forbid or restrict the conveyance . . . thereof to individuals of a specified . . . creed". <u>Id.</u> at 829-30 (quoting RCW 49.60.224). To the extent that the Diocese seeks to assert that alleged restrictions on use of real property belonging to the Diocese or the Parishes prevents sale to non-Catholics or for a non-Catholic use, such affirmative defense is impermissible as a matter of law.

## IV.
## <u>CONCLUSION</u>

Since this bankruptcy began, the Bishop has been playing a shell game with the bulk of the real property in the Diocese. He contends that the property is not owned by the Diocese but by the Parishes. If it is not owned by the Parishes, it is owned by the members of the Parishes. And if it is not owned by the members of the Parishes, it should go back to the people who donated it to the Diocese. Seemingly, any ownership would be better than using the properties to pay the victims of the sexual abuse perpetrated by his priests, employees and others in his Diocese. The Bishop's intention to keep those properties outside the bankruptcy estate, an estate that he voluntarily created, is not consistent with the law.

18477-002\DOCS_LA:138319.1

COMMITTEE'S MEMO OF P&A'S RE MOTION
FOR SUMMARY JUDGMENT - **31**

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 64    Filed 04/07/05    Entered 04/07/05 16:54:25    Pg 37 of 38

1      **WHEREFORE,** the Committee respectfully requests that the Court enter an

2 order granting the Motion; grant declaratory relief in favor of the Committee on the

3 First Cause of Action to the Committee's Complaint as to the Disputed Real Property

4 and the Defendants identified in the Motion; dismiss the Diocese's affirmative

5 defenses; and grant such other and further relief as this Court deems just and proper.

6

7 Dated: April 7, 2005            PACHULSKI, STANG, ZIEHL, YOUNG,
                              JONES & WEINTRAUB P.C.

8

9                           By   _____
                              JAMES I. STANG

10                               HAMID R. RAFATJOO
                              Counsel for the Committee of Tort

11                               Litigants

12                           -and-

13                           ESPOSITO, GEORGE & CAMPBELL,
                          P.L.L.C.

14

15                           By   _____
                              JOHN W. CAMPBELL

16                               Counsel for the Committee of Tort
                              Litigants

17

18

19

20

21

22

23

24

25

26

27

28

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231