1　JOHN D. MUNDING
　　CRUMB & MUNDING, P.S.
2　601 W. Riverside, Suite 1950
　　Spokane, WA 99201
3　Telephone: (509) 624-6464
　　Fax: (509) 624-6155
4　Email: munding@crumb-munding.com

5

6

7　　　　UNITED STATES BANKRUPTCY COURT

8　　　　EASTERN DISTRICT OF WASHINGTON

9

THE CATHOLIC BISHOP OF　　　　　)
10　SPOKANE a/k/a THE CATHOLIC　　)　　NO. 04-08822-PCW11
　　DIOCESE OF SPOKANE,　　　　　　)　　　　Chapter 11
11　　　　　　　　　　　　　　　　　　　)
　　　　　Debtor.　　　　　　　　　　　)
12　_____)
　　　　　　　　　　　　　　　　　　　)
13　COMMITTEE OF TORT LITIGANTS,　)　　Adversary No. 05-80038-PCW
　　　　　　　　　　　　　　　　　　　)
14　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　ST. MARY PRESENTATION
15　Vs.　　　　　　　　　　　　　　　　)　　PARISH – DEER PARK'S
　　　　　　　　　　　　　　　　　　　)　　OPPOSITION TO
16　THE CATHOLIC DIOCESE OF　　　)　　SUMMARY JUDGMENT
　　SPOKANE, et al.,　　　　　　　　　)
17　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　)
18　_____)

19　　　　St. Mary Presentation Parish – Deer Park and its Parishioners ("St. Mary

20　Presentation"), in opposition to the Tort Litigant Committee's (the "Committee") Motion for

21　Summary Judgment (Docket Nos. 63-67, 72), submits the following memorandum of law.

22　This memorandum incorporates and is supported by the Affidavit of Fr. Albert Grasher,

　　Declaration of Margaret McLean, Parishioner, and Defendants' Omnibus Statement of

23　Facts (LR 7056). St. Mary Presentation also adopts and incorporates those Affidavits filed

24　by other Defendants opposing Plaintiff's Motion.

25

26

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 1

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

# I.

## RELIEF REQUESTED

The Committee's attempt to deny St. Mary Presentation its ownership interest in real property that St. Mary Presentation paid for, improved, and uses in fulfillment of its religious tenets must be rejected. The undisputed evidence demonstrates that:

1.     Neither the Committee, its members, nor the Debtor have any beneficial interest in the real property belonging to St. Mary Presentation;

2.     Neither the Committee, its members, nor the Debtor have a legal basis to justify the taking of real property from St. Mary Presentation, a non-debtor; <u>and</u>

3.     St. Mary Presentation's equitable and beneficial ownership interest in the real property is clearly established by non-bankruptcy law.

As a matter of both law and fact, the Committee's Motion for Summary Judgment/Declaratory Relief seeking to deprive St. Mary Presentation of fundamental property rights and religious freedoms must be denied.

# II.

## PROCEDURAL HISTORY

### A.     <u>The Bankruptcy</u>

A voluntary petition under Chapter 11 of the Bankruptcy Code was filed by the Catholic Diocese of Spokane, a corporation sole ("Debtor"), on December 6, 2004 (Petition Date).   The Bankruptcy Court entered the Order for Relief, adjudicating the Diocese a Chapter 11 Debtor.   Since that date, the Debtor has acted as the Debtor-in-Possession pursuant to 11 USC 1108.  The Debtor duly filed and subsequently amended its Schedules and Statement of Financial Affairs. (See Main Case Docket Nos. 19, 41-42)

Within its Statement of Financial Affairs, the Debtor describes certain real property to which it holds "bare legal title." The Statement of Affairs explains that equitable/beneficial title to such real property is held by other entities, including St. Mary Presentation.   This description is accurate concerning the true ownership of the real property and supported by both facts and applicable law. Neither the Debtor nor St. Mary Presentation disputes this particular trust relationship.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT  - 2

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

**B.**    **Appointment of Creditors Committee**

On February 2, 2005, the Court entered an Order duly approving the appointment of the Committee. (Main Case Docket No. 206)  The Committee consists of individuals who filed complaints against the Diocese in the Superior Court of the County of Spokane, State of Washington.   Neither the Committee nor its members have asserted a claim in State Court against St. Mary Presentation or identified any legal relationship with St. Mary Presentation.

The legal standing of the Committee to seek declaratory relief against non-debtors in this manner is disputed and the subject of a pending motion to dismiss.  (See Section II.F.)

**C.**    **The Adversary**

On February 4, 2005, the Committee filed a three count Complaint ("Complaint") in this adversary proceeding ("Adversary Proceeding"), specifically:

- FIRST CAUSE OF ACTION

    (Declaratory Relief: The Disputed Real Property)

- SECOND CAUSE OF ACTION

    (Declaratory Relief: the Disputed Personal Property)

- THIRD CAUSE OF ACTION

    (Declaratory relief: Substantive Consolidation)

    (Docket No. 1, Complaint)

Although property is allegedly "disputed," the Committee does not have or assert a legal claim to or legal interest in the real or personal property.  (See Complaint, pp. 13-15.)

The relief sought by the Committee is drafted as equitable, although it is clearly of the nature and effect of relief determining property rights of non-debtors. Specifically,

1.    Declaring that the Disputed Real Property is property of the estate under 11 U.S.C. § 541(a)(1) as of December 6, 2004;

2.    Declaring that the Disputed Personal Property is property of the estate under 11 U.S.C. § 541(a)(1) as of December 6, 2004;

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT  - 3

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA  99201
(509) 624-6464
FAX (509) 624-6155

05-80038-PCW    Doc 135    Filed 05/26/05    Entered 05/26/05 15:42:35    Pg 3 of 33

3. Ordering the Debtor to amend its Amended Statement of Financial Affairs and its Amended Schedules of Assets and Liabilities to reflect that the Disputed Real Property and the Disputed Personal Property are all property of the estate;

4. Ordering substantive consolidation, nunc pro tunc, of the Debtor's bankruptcy estate with the [Diocese-Related Entities] effective as of December 6, 2004.

(Adv Complaint, p. 15)

By way of the Complaint, the Committee seeks to determine the property rights and interests of not only St. Mary Presentation, but of 82 non-debtors. The Complaint seeks to deprive those non-debtors of their instrumentalities used in religious worship, faithful exercise of its mission, activities, and ministries.

**D.    Motion for Avoidance Powers**

On February 7, 2004, the Committee filed a motion in the main case seeking avoidance powers. (Main Case Docket Nos. 223-224)  The motion was heard on May 2, 2005.  The court continued hearing on this matter for an indefinite period (approximately 5 to 6 months) with any counsel being able to renote this matter on 20 days notice. (Main Case Docket No. 393)

**E.    Motion for Summary Judgment**

The Committee filed the present motion for summary judgment ("Motion") on April 17, 2005.  (Adv. Docket No. 63)

The Motion seeks specific relief defining title and ownership of at least 22 separate parcels of real property which belong to at least 22 different and distinct Defendants. Although the Committee's Motion indicates that they have restricted summary judgment to their first cause of action, the Memorandum aggressively seeks a ruling on their third cause of action by way of an "alter ego" argument.

The Committee's Motion attempts to "lump" St. Mary Presentation's real property with other Defendants' real property interests, dealing with all parcels of property collectively, including all improvements and fixtures.  However, each parcel of real property is a separate parcel of property, with separate and distinct ownership interest, and separate

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 4

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

factual circumstances surrounding each parcel's acquisition, improvement, maintenance, and use. The committee's standardized factual scenario is inapplicable and not an appropriate basis for declaratory relief against St. Mary Presentation.

F.  **Motion to Dismiss Adversary Proceeding**

On May 2, 2005, the Parish Defendants filed a motion under FRBP 7012 seeking to dismiss this Adversary Proceeding on the following grounds:

> The Committee's Complaint should be dismissed on either of two (2) separate grounds.
>
> 1.  Nothing contained within the express language of Section 521(1) or 541(a) clearly, explicitly, or unambiguously confers standing to a creditors committee to file suit against non-debtors to define a non-debtor's property rights.
>
> 2.  The Bankruptcy Court and Federal District Court lack subject matter jurisdiction over the claims alleged in the Committee's Complaint because there is no case or controversy between the Committee and the Parishes within the meaning of the Declaratory Judgment Act and Article III of the U.S. Constitution.

(Docket Nos. 99-100)

This motion is set to be heard on June 27, 2005.

## III.

## NON-CORE PROCEEDING

The Committee asserts in its Complaint that this is a "core proceeding" under 28 USC § 157(b) and 1334(b). The Parishes, based upon the declaratory nature of the relief sought in the Complaint, deny that this is a core proceeding. This action exclusively seeks declaratory relief against over 80 non-debtor defendants to determine the property rights of separate legal entities. The Complaint does not present a federal question nor is there diversity between the litigants.

The present adversary action has the effect of a defacto quiet title action as to non-debtor defendants. As such, it could have easily been brought in state Superior Court pursuant to RCW 7.28.010 et seq., regardless of whether the Debtor was in bankruptcy.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 5

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

1    For purposes of this Adversary Proceeding, St. Mary Presentation does not consent
2    to entry of Findings of Fact and Conclusions of Law and does not waive defenses related to
3    Plaintiff's standing and failure to state a claim. (See Docket Nos. 88, 99-100.)

## IV.

## STATEMENT OF FACTS

St. Mary Presentation is a separate and distinct legal entity under Canon Law known as a juridic person. [Canons §113-115, §515] Under Civil Law, St. Mary Presentation is an unincorporated association. (Committee's Statement of Undisputed Fact, No. 23)

The Committee has questioned St. Mary Presentation's ownership of real property. Specifically, that real property which was acquired by St. Mary Presentation on March 3, 1962, December 8, 1981, April 18, 2003 (Stang Aff. Ex. 1 – St. Mary Presentation) Contrary to the Committee's assertion, St. Mary Presentation has been an owner of real property since 1911, prior to the existence of the Debtor.

The present site of the church, parish hall, and parish offices (the church "campus") encompasses the west half of a small block in a residential area of the City of Deer Park, Washington. The campus runs approximately 300 feet north to south, and 150 feet east to west, and is bounded by Main Street on the west, 4th Street on the north, and 3rd Street on the south. The existing campus is made up of four separate parcels, which were acquired over a period of 70 years. (Aff. A. Grasher, ¶ 10)

Historical records indicate that a portion of this property described as " The Northwest quarter (N.W.1/4) of Block four (4) seventy five (75) feet by one hundred and forty five (145) feet in the Original Townsite of Deer Park Washington" was given by statutory warranty deed to "The Corporation of the Catholic Bishop of Nisqually in the Territory of Washington" on November 8, 1911, by Joseph Reuthinger, Sr. This parcel, which appears to refer to the northernmost quarter of the current church campus, does not appear to have been included as one of the exhibits in support of the pending motion for summary judgment. (Aff. A. Grasher, ¶ 11)

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 6

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

From the historical records maintained by the parish, including retrospective newspaper articles and historical summaries, Mass was celebrated for the first time in the newly-completed concrete block church on Easter Sunday, April 7, 1912. Jesuit priests from Gonzaga University served the church until 1916. (Aff. A. Grasher, ¶ 12)

In 1916, the Franciscans established the Presentation of the Blessed Virgin Mary Parish of Deer Park, which initially included portions of Spokane, Pend Oreille and Stevens Counties. The Franciscan friars served the parish and its mission churches until 1968, and during the early years of that period, the priests traveled to Deer Park each weekend from the Franciscan Residence in Spokane.

In 1936, the executor of Joseph Reuthinger's estate deeded to the "Catholic Bishop of Spokane" a parcel described as the "South half (S1/2) of Northwest quarter (NW1/4) of Block 4, Original Townsite of Deer Park". With the acquisition of this parcel, the church property now extended over the entire northern one-half of the present-day church campus.

In the early 1950's, a separate Franciscan parish was established that included the town of Deer Park, and in 1952, a Rectory was constructed on the church property, just south of the original church, utilizing a building fund raised by parishioners and $1,177.00 of borrowed money, of which $500.00 was paid in 1953.

In the late 1950's, the parishioners began saving money for the construction of a new church and parish hall to replace the concrete block church that had been built in 1912. The first "St. Mary's Building Fund" Report from April of 1966 indicates that $15,323.82 had been deposited in the Chancery as of that date. Newspaper articles from the 1960's include photographs of the old church and rectory and plans for the new structure, and detail the process by which the money was raised and the new church was built. (Aff. A. Grasher, ¶¶ 16-18)

On March 23, 1962, Gertrude J. King deeded to "The Catholic Bishop of Spokane, a Corporation Sole," a parcel described as "The North Half (N1/2) of the Southwest quarter (SW1/4) of Block Four (4) of Deer Park." This extended the church property – which was still under the administration of the Franciscans – over the northernmost three-quarters of the present-day campus. A November, 1962 newspaper article dedicated to the "Jubilee" 50th anniversary of the parish indicates that the elderly four-room house was being

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

repaired to serve as a residence for the Sisters who were to come the following summer to conduct a vacation bible school.

In February, 1968, at the request of the Franciscans (due to a shortage of Franciscan friars) and with the approval of Rome, the Diocese of Spokane assumed administrative responsibility for St. Mary's parish, and Msgr. John P. Donnelly was appointed as pastor. (Aff. A. Grasher, ¶¶ 17-18)

The church and parish hall that are now being utilized by St. Mary's parishioners were built in 1968, with the parish council or administrative board (composed of five laymen, a member of the Altar Society, and a teen-ager elected by other parishioners between the ages of 16 and 20) controlling the entire construction process. Construction of the new church and parish hall was completed in late November of 1968, and the buildings were formally dedicated at a Mass that was celebrated on December 8, 1968. (Aff. A. Grasher, ¶ 19; Dec. M. McLean, ¶¶ 2-4)

According to a "Financial Summary" prepared in April of 1969, the total cost of construction, including pews and furnishings, amounted to just over $75,000. Approximately $31,000 of the funding for the project came from savings that had accumulated prior to July of 1968. $15,000 came from a grant from the Catholic Church Extension Society of America in Chicago, and the balance of the construction cost was financed through loans from the Diocese totaling approximately $29,000. These loans were to be repaid to the Diocese by the parishioners of St. Mary's Presentation Parish over the succeeding years. (Aff. A. Grasher, ¶ 20; Dec. M. McLean, ¶ 4)

On December 8, 1981, St. Mary's acquired the southernmost quarter of the present-day church campus (legally described as "The South 75 feet of the West 150 feet of Block 4, Deer Park,") from Mr. Edward Painter, in consideration for payment of $27,500.00. The money utilized to purchase this parcel of property was loaned to St. Mary's Presentation Parish (at 8.5% interest) by the Diocese, as demonstrated by the Financial Statement dated December 14, 1981. This loan was fully repaid by the parishioners of St. Mary's over the next 40 months. In 1983, the house on this lot was leased by the parish administrative board, acting for "St. Mary's Catholic Church" as Lessor, to Keith and Michelle Peterson. (Aff. A. Grasher, ¶ 21)

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 8

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Subsequently, portions of the house acquired from Mr. Painter were used as classrooms on Sundays. However, in the Spring of 2003, at the recommendation of the lay members of the parish finance council, the lay members of the parish pastoral council decided to demolish this house, which was no longer fit for habitation. St. Mary's hired Larson's Demolition, Inc. to accomplish this task on August 22, 2003, at a cost of $3,681.37. The demolition contractor's bill was paid by a check issued on St. Mary's Bank of America checking account. The lot has since been covered with gravel, and is now being utilized for much-needed additional parking.

In early 2003, St. Mary's parish pastoral council decided to purchase from Mr. Toby Roper (a builder) a house several blocks away from the main church campus. This house was intended to serve as a Rectory or residence for the parish priest, thereby freeing up additional space on the main church campus for offices and classrooms. The total cost of this property was $123,316.79, and both the $5,000.00 down payment and the $118,316.79 that was paid at closing were paid from moneys that had been donated by St. Mary's parishioners, and were being kept in St. Mary's account at the Deposit & Loan. (Aff. A. Grasher, ¶¶ 22-23)

At the present time, St. Mary's Christian faithful ("Parishioners") consist of a voluntary association of approximately 230 households residing within the geographical boundaries of the parish, which have been adjusted from time to time as new churches have been constructed, and new parishes have been carved out. These individuals and their temporal goods belong to and make up St. Mary's Presentation Parish. A variety of ministries and services typically found in a Roman Catholic parish are associated with St. Mary's.

The financial strength or weakness of a parish is dependent almost entirely upon its Christian faithful. Offerings, gifts, and tithes are made by Parishioners of St. Mary's Presentation Parish, for the financial well being of the Parish. St. Mary's, since its inception, has raised money through weekly collections, tithes, gifts, and capital campaigns. In recognition of the donations by Parishioners, St. Mary's issues a statement at the end of each year to each specific donor in accordance with federal income tax regulations.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 9

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

When St. Joseph's church in the town of Clayton was sold in May of 2003, in recognition of the fact that this church was also located within the boundaries of St. Mary's Presentation Parish, the net proceeds from the sale of that real property ($44,450.30) were placed in St. Mary's savings account at Bank of America, even though the settlement check was made out to The Catholic Bishop of Spokane, which was the legal title holder of the property.    (Aff. A. Grasher, ¶ ¶ 24-27)

With the exception of a $15,000.00 grant from the Catholic Extension Society in Chicago, all improvements to this real property, including the demolition and removal of outmoded buildings, have been accomplished with money raised by St. Mary's through its Parishioners, loans repaid by its Parishioners, and/or contributions in kind of labor and materials from St. Mary's Parishioners. (Aff. A. Grasher, ¶ 29; Dec. M. McLean, ¶¶ 4-7)

All insurance premiums relating to parish operations and parish real property are paid by St. Mary's. Although exempt from real property taxes, St. Mary's completes all real property tax exemption forms and pays all fees associated therewith.    (Aff. A. Grasher, ¶¶ 30-31)

St. Mary's maintains its own bank accounts, but also participates in a Diocesan Deposit & Loan Fund. The money deposited in the "Deposit & Loan" is traceable to donations from Parishioners. Commercial bank accounts for St. Mary's and its ministries are maintained at Bank of America. St. Mary's account is referenced by St. Mary's federal tax ID # 47-088891. The only signatures to these accounts throughout the history of the Parish are the Parish Pastor, and at times designated Parishioners.    (Aff. A. Grasher, ¶¶ 32-33)

St. Mary's maintains its own financial records using Quickbooks Basic for small businesses. Financial reports are produced on a monthly basis. All income of St. Mary's is derived from donations, tithes, and gifts of Parishioners. The Parish has other employees whom are hired and fired by me. All employees of the Parish are paid by St. Mary's, which submits federal income tax, social security and medicare withholding under its own federal tax ID # of 47-088891. In addition, St. Mary's pays taxes to the Washington Department of Labor & Industries for its employees, under state tax ID # 601-155-740. In addition, St. Mary's directly contracts with numerous businesses for goods and services. Those

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 10

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

05-80038-PCW    Doc 135    Filed 05/26/05    Entered 05/26/05 15:42:35    Pg 10 of 33

vendors contract with, invoice, and bill St. Mary's directly. St. Mary's pays the invoices directly from its checking account. (Aff. A. Grasher, ¶ 36)

From time to time, parish money (which is traceable back to St. Mary's bank accounts and further to donations from Parishioners) has been placed on deposit in the Diocese's Deposit & Loan Fund with the clear expectation of its eventual return to St. Mary's for use by the parish. The purpose of the Deposit & Loan Fund is to provide a source of money held in trust by the Diocese from which loans can be made to parishes throughout the Diocese without going through commercial lending institutions. It is my understanding that St. Mary's Presentation Parish does not have any outstanding loans with the Diocese, and that St. Mary's is in fact a net creditor of the Diocese. (Dec. M. McLean, ¶¶ 3-5)

In that regard, as of December 6, 2004, St. Mary's Presentation Parish had $979,795.94 on deposit in the Deposit & Loan Fund. This large sum of money represented the net accumulated donations from St. Mary's Parishioners (after payment of Parish operating expenses) over approximately the past 20 years. To the extent that these donations were not needed for Parish operating expenses, they were being retained and accumulated for the ultimate purpose of new construction. (Aff. A. Grasher, ¶ 37-38)

In the Spring and Summer of 2004, St. Mary's conducted a capital campaign for the intended purpose of raising sufficient additional monies to supplement the funds on deposit at the Deposit & Loan, in order to completely replace the existing facilities, and fund the construction of a new church, parish hall, classrooms and offices in Deer Park. Thus far, St. Mary's has received more than $560,000 in pledges toward that hoped-for construction project. As a part of the overall budget for the project, it was anticipated to use the Deposit & Loan Fund to borrow up to 25% of the expected cost of construction. (Aff. A. Grasher, ¶ 39)

Contrary to the Committee's conclusions, the facts demonstrate St. Mary Presentation is its own legal entity and is the true owner of all equitable and beneficial interest of the real property identified as "St. Mary Presentation" by the Committee.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 11

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

# V.

## STANDARDS OF REVIEW

**A.    Declaratory Judgment Standard.**

The Committee glosses over the fact that the relief it seeks is entirely declaratory in nature.    A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. <u>Orix Credit Alliance, Inc. v. Wolfe</u>, 212 F.3d 891, 896 (5th Cir. 2000). "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and realty [exists] between parties having adverse legal interests.'" <u>Id.</u>, citing <u>Middle South Energy, Inc. v. City of New Orleans</u>, 800 F.2d 488, 490 (5th Cir. 1986).

Although some Bankruptcy Courts have entertained declaratory judgment actions filed by trustees when the ownership interest of an asset was in dispute which the trustee asserted was property of the estate on the petition date, the present case is not advanced by a trustee or Debtor-in-Possession. <u>See</u> <u>In re Challenge Air Int'l. Inc.</u>, 952 F.2d 384 (11th Cir. 1992); <u>In re Taylor & Campaigne, Inc.</u>, 157 B.R. 493 (Bankr. M.D. Fla. 1993); <u>Bottom v. Bottom</u>, 176 B.R. 950 (Bankr. N.D. Fla. 1994); <u>In re Ocean Beach Club, Inc.</u>, 79 B.R. 505 (Bankr. S.D. Fla. 1987).

There is no legal relationship between St. Mary Presentation, the Committee, or any Committee members.    Furthermore, there is no legal dispute between St. Mary Presentation and the Debtor regarding the ownership interests in real property or trust relationship between the Debtor and St. Mary Presentation.   It is correctly described and defined in the Debtor's Statement of Affairs in accordance with the relationship between the parties as established by Canon Law and Civil Law.   As such, no actual controversy between parties with adverse legal interests exists.

**B.    Summary Judgment Standard.**

The party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden, he is not entitled to judgment. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 156, 26, L.Ed.2d 142, 90 S. Ct. 1598 (1970).

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

In determining whether there are any genuine issues of material fact, the Court must view the evidence in the light most favorable to the nonmoving party. Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997). The party opposing summary judgment to survive the motion need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial. Id. at 1039, citing Anderson v. Liberty Lobby, Inc.

The Committee has failed to produce any evidence to support its contention that the beneficial and equitable ownership of the real property does not belong to St. Mary Presentation.

However, St. Mary Presentation has not only produced reasonable evidence as to a material issue of fact as to its ownership interest in the real property, it has also produced overwhelming evidence that St. Mary Presentation is the true owner of the real property in question.

## VI.

## LEGAL ANALYSIS PREVENTING DECLARATORY RELIEF CONCERNING REAL PROPERTY OWNERSHIP

**A.    Whether Applying Civil Law Or Canon Law, St. Mary Presentation Parish Is A Separate And Distinct Legal Entity.**

The Committee has conceded that Parishes are unincorporated associations. (See, Committee Statement of Undisputed Fact No. 23)    The Committee's acknowledgment of St. Mary Presentation's status as a separate legal entity from the Debtor is consistent with both Civil and Canon Law.

**1.    Washington Law Recognizes St. Mary Presentation As A Legal Entity.**

The Parish, as an unincorporated association, is a separate legal entity under Washington law. A Parish consists of its Christian faithful. (Canon 515(1)) The Christian faithful ("Parishioners") of each Parish are the residents of their local community. They are residents of cities, towns, and counties within Eastern Washington, in some cases they are

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 13

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

05-80038-PCW    Doc 135    Filed 05/26/05    Entered 05/26/05 15:42:35    Pg 13 of 33

members of sovereign Indian tribes. The Parishioners are the epitome of a voluntary group pursuing a common purpose. In the case of each parish, the common purpose is the fulfillment of their religious tenets.

An "unincorporated association" is defined as "[a] [v]oluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting common enterprise or prosecuting common objective. An organization composed of a body of persons united with a charter for the prosecution of a common enterprise." *Black's Law Dictionary*, 1531 (6th 1991). This is a broad definition, and Washington has recognized that "associations vary in their nature." Riss v. Angel, 131 Wn.2d 612, 635 (1997). Washington's case law recognizes a variety of forms of unincorporated associations, including groups of individuals of a particular religion or creed. See Bacon v. Gardner, 38 Wn.2d 299 (1951), Church of Christ v. Carder, 105 Wn.2d 204 (1986).

Unincorporated associations clearly have the ability to hold the equitable interests of a trust and defend that interest in court. Leslie v. Midgate Center, Inc., 72 Wn.2d 977 (1967). Washington has repeatedly acknowledged the legal capacity of unincorporated associations to be parties to lawsuits. Bacon v. Gardner, 38 Wn.2d 299, 304 (1951), State v. Bothell, 89 Wn.2d 862, 866 (1978); see also Church of Christ v. Carder, 105 Wn.2d 204, 206 (1986); Riss, 131 Wn.2d 612 (1997). By statute, unincorporated associations have the capacity to appear and represent their interests in declaratory judgment actions. RCW §§ 7.24.110 - .130 (West 2005). It is well settled law that unincorporated associations have the ability to represent the interests of their members in legal actions. See, State v. Bothell, 89 Wn.2d at 866.

It is important to note that not a single case quoted by the Committee in support of its assertion that each Parish is not a legal entity is from the state of Washington. Bankruptcy Rule 7017 incorporates Rule 17(b), Fed. R. Civ. P., as follows:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held . . . .

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 14

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

05-80038-PCW    Doc 135    Filed 05/26/05    Entered 05/26/05 15:42:35    Pg 14 of 33

As a matter of law, unincorporated associations can be sued under Washington law. The various cases cited by the Committee have no precedential value here in Washington. The Committee's argument that St. Mary Presentation does not have a legal existence separate from the Diocese fails as a matter of law. It is also inconsistent with Committee's Statement of Undisputed Fact No. 23.

## 2.    St. Mary Presentation Is A Separate Legal Entity Under Canon Law.

The Law of the Roman Catholic Church ("Church") has been in existence since the first century. Presently, the Church is governed by the 1983 Code of Canon Law. To the extent the resolution of this matter requires a determination of the relationship between the Debtor and St. Mary Presentation in their methods of governance, interaction or management, compulsory deference is required to the provisions of the Code of the Canon Law which govern these religious organizations under applicable law. The Supreme Court, when faced with issues involving the Roman Catholic Church, has stated:

> In the absence of fraud, collusion or arbitrariness, the decisions of proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive, because the parties in interest made them so by contract or otherwise. Under like circumstances, effect is given in the courts to the determination of the judiciary bodies established by clubs and civil associations.

Gonzalez v. Roman Catholic Archbishop, 280 U.S. 1, 16-17, ___ S.Ct. ___, 74 L.Ed.131, 137 (1929) (citing Watson v. Jones, 13 WALL 676, 20 L.Ed. 666 (___).

This legal principle has been clearly adopted by the Washington State Supreme Court, when addressing real property interests involving a hierarchal church. See, Wilkerson v. Rector, etc., St. Luke Parish, 176 Wash. 377 (1934); See also, Church of Christ v. Carder, 105 Wn.2d 204 (1986), Southside Tabernacle v. Church of God, 32 Wash. App. 814 (1982) (All applying the compulsory deference rule established in Watson to disputes involving church property.)

In this case, the identity of the Parish, the Parishioners, the Debtor, and their relationship to their property rights are defined within Canon Law. These relationships, are "purely ecclesiastical, though affecting civil rights, [and] are [to be] accepted in litigation

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 15

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-0455

05-80038-PCW    Doc 135    Filed 05/26/05    Entered 05/26/05 15:42:35    Pg 15 of 33

before secular courts as conclusive[ ]" <u>Gonzalez</u>, 280 U.S. at 16, ___ S.Ct. at ___, 74 L.Ed. at 137.

Within the Church, besides physical persons, there are also juridic persons, that is, subjects in Canon Law of obligations and rights which correspond to their nature. (Canon 113(2)) A juridic person is an artificial person distinct from all natural persons or material goods. Like a civil law corporation, it is a legal entity which can and must be conceived apart from the natural persons who constitute it, administer it, or for whose benefit it exists. See L. Chiappetta, Il Codice d: Diritto Cononico: Comento Giuridco-Pastorale, 2nd ed. (Rome: Dehoniane, 1996) 1:169, Robert Kennedy, New Commentary on the Code of Canon Law (Paulist Press 2000).

Canon Law provides that:

A parish is a certain community of the Christian faithful stably constituted in a particular church, whose pastoral care is entrusted to a pastor as its proper pastor under the authority of a diocesan bishop. (Canon 515(1))

Canon 515(3) states:

A legitimately erected parish possesses juridic personality by the law itself. (Canon 515(3))

In this case, there is no dispute that St. Mary Presentation is a legitimately erected Parish and a juridic person under Canon Law.

Canon Law is clear that property acquired by a Parish belongs to the Parish. Specifically, Canon 1256 states:

Under the supreme authority of the Roman Pontiff, ownership of goods belongs to that juridic person which has acquired them legitimately. (Canon § 1256)

Since its inception, the Christian faithful themselves, which constitute the Parish, have acquired both real and personal property which is used by the Christian faithful in their fulfillment of their religious tenets. Under Canon Law, the property was acquired by, used by, improved, maintained, and owned by each Parish independently. (Canons 1257-1272)

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 16

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

The juridic person (Parish) may not be deprived of its property without consent and approval. (See Canons 1281–1288 and 1291-1295)

### 3. Committee Waived Argument on Individual Parish Standing.

The Committee's decision to name and sue St. Mary Presentation and 81 other Parishes individually is evidence of the separate legal identity of each parish. Furthermore, the Committee admits that St. Mary Presentation is a separate unincorporated association in its Statement of undisputed Facts. (CSF No. 23) The doctrine of judicial estoppel prevents a party from taking divergent positions in different legal proceedings. Wagner v. Proff Engineers in California Court, 354 F.3d 1036, 1044 (9th Cir. 2004).

In addition, the request for relief in the Complaint seeks substantive consolidation of St. Mary Presentation with the Debtor. Substantive consolidation in bankruptcy terms is the consolidation of a non-debtor entity with a separate debtor entity. (See Alexander, 229 F.3d 750 (9th Cir. 2000)) As such, the Committee has already recognized the legal identity of St. Mary Presentation is separate and apart from the Debtor. The Committee should be estopped from taking a contrary position for purposes of its Motion.

### 4. Judicial Estoppel Does Not Apply to St. Mary Presentation.

St. Mary Presentation does not dispute the definition of judicial estoppel submitted by the Committee which is designed to prevent a party from taking divergent positions in different legal proceedings. See the Committee's Memorandum at p. 18, citing Wagner v. Prof. Engineers in California Gov't, 354 F.3d 1036, 1044 (9th Cir. 2004). However, the Committee fails to present a full recitation of the elements required for a finding of judicial estoppel, and it is in those elements that the Committee's position is revealed to be flawed.

> The United States Supreme Court recently listed three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel:
>
> . . .
>
> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 17

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

05-80038-PCW    Doc 135    Filed 05/26/05    Entered 05/26/05 15:42:35    Pg 17 of 33

judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.]" Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus no threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782-783 (9th Cir. 2001), citing New Hampshire v. Maine, 121 S. Ct. 1808, 1815 (2001) (internal citations omitted). The application of judicial estoppel is appropriate to bar litigants from making incompatible statements in two different cases. Risetto v. Plumbers & Steamers Local 343, 94 F.3d 597, 605 (9th Cir. 1996).

The position taken by St. Mary Presentation is not inconsistent with the holding of the cases cited by the Committee. In Munns v. Martin, 131 Wn. 2d 192, 196 (1977) (en banc), the case was actually filed by the individual members of St. Patrick's Parishioners and Friends of Historic Preservation. Of the seven members, six were members of the Parish. Id. at 196. The issue arose when the "St. Patrick Building Committee," a parish committee, applied for a demolition permit related to St. Patrick School. This was a case of historic preservation interests vs. parish building committee interests, Parishioner v. Parishioner. Id. at 194-199. The case holding invalidated a statute that was being used by a non-parishioner in an attempt to stop a building project advanced by a parish building committee for the furtherance of the Church's fundamental right to exercise religion. The ordinance was found to have a coercive effect on the practice of religion.

The second case, Miller v. Catholic Bishop of Spokane, 2004 WL 2074328 (Wash. App. 2004), is an unpublished decision. As a matter of law, this opinion should not have been cited. "[U]npublished opinions of the Court of Appeals will not be considered in the Court of Appeals and should not be considered in the trial courts. They do not become a part of the common law of Washington." State v. Fitzpatrick, 5 Wn. App. 661, 668 (1971)(emphasis added).

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

Regardless, in <u>Miller</u>, the Catholic Bishop of Spokane was sued for damages based upon the plaintiff's fall from a loft opening. The Bishop defended the action based on its ownership of the property, which was the Parish Hall of Sacred Heart Catholic Church in Springdale, Washington. However, this is not a position that is "clearly inconsistent" with the current position taken by the Diocese and the Parishes. There is no assertion or indication as to the <u>nature</u> of the Bishop's ownership interest. In this bankruptcy case, the Diocese and the Parishes assert that the Diocese holds an ownership interest in the property, but holds that interest in trust for the Parishes. This is not an inconsistent position. Rather, the ownership status of the Bishop in <u>Miller</u> was never addressed or litigated. Further, the Bishop did not "succeed in persuading a court to accept that party's earlier position" because the **nature** of the Bishop's ownership interest was never at issue. Therefore the current position, which is consistent with the prior position, introduces no risk of inconsistent court determinations.

   5.   **The Committee's Reliance Upon <u>F.E.L. Publication, Ltd. v. The Catholic Bishop of Chicago</u> and Oregon Case Law is Misplaced.**

First, both Oregon and Illinois apply a neutral principle of law approach to church property issues. When examining church property disputes, Washington applies the more stringent approach of compulsory deference. Furthermore, the legislative histories and governing statutes concerning corporate soles is much different than that of Washington.

<u>F.E.L. Publications</u> was a seventh circuit case which decided the issue on the legal relationship between the Diocese and the Parishes within it in order to resolve a claim against the diocese for tortious interference with a business relationship. There the Court held that it was impossible for the cause of action to be based on the Diocese's directives to the Parishes as those Parishes had no independent status, and were in fact "subsumed under the Catholic Church." <u>F.E.L.</u>, 754 F.2d at 221. In concluding this, the court relied primarily upon Illinois case law, and in particular <u>Haymes v. Catholic Bishop of Chicago</u>, 41 Ill.2d 336 (1968), <u>Catholic Bishop of Chicago v. Village of Palos Park</u>, 286 Ill. 400 (1919) and <u>Galich v. Catholic Bishop of Chicago</u> 75 Ill.App.3d 538 (1979). The case primarily relied upon was <u>Galich</u>, however, that issue was not before the court in <u>Galich</u>.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 19

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

05-80038-PCW   Doc 135   Filed 05/26/05   Entered 05/26/05 15:42:35   Pg 19 of 33

In <u>Galich,</u> the Court held that the statute under which the Bishop of Chicago incorporated did not create a statutory trust for the benefit of the Parishioners bringing the case. Further, the Court held that any determination of the ability or inability of the Bishop to demolish a church would violate the First Amendment.

The statute under which the case was decided was subsequently amended. As amended, it includes a great deal of language indicating a legislative intent to create a trust for the benefit of the religious congregation for whom the corporation is formed.

The other cases relied upon by the <u>F.E.L.</u> Court only support its conclusion by inference. In <u>Haymes,</u> the Catholic Bishop of Chicago was named the defendant in a slip and fall case at a Catholic school. While the issue was not addressed by the Court in <u>Haymes</u>, the implication is that the Catholic school could not have been the proper defendant. In <u>Village of Palos Park</u>, the Catholic Bishop of Chicago essentially challenged the validity of a local zoning ordinance precluding the creation of a cemetery in the space the Catholic Bishop wished to make one. Again, only by the inference that the Catholic Bishop was the only party which could have brought the action does this case support the conclusion reached by the <u>F.E.L.</u> Court.

## B. The Bankruptcy Estate Of The Diocese Does Not Have An Interest In The Real Property At Issue.

The Committee argues in its Complaint and subsequent Motion that by virtue of its interpretation of law and facts that St. Mary Presentation's real and personal property is property of the Debtor's bankruptcy estate. However, this argument is not substantiated. Section 541 of the Bankruptcy Code specifically excludes from the estate property to which the Debtor holds legal title, but has no equitable or beneficial interest. (See 11 U.S.C. § 541(b), (c), and (d))

The concept of trust relationships, bare legal title, and beneficial/equitable ownership of property is not new to bankruptcy courts. Courts have repeatedly held that when a debtor holds mere legal title to property and a non-debtor holds the beneficial or equitable ownership of that property, said property is not property of the estate. See <u>Matter of Torrez</u>, 63 BR 751, 754-55 (9th Cir. BAP 1986)(imposition of resulting trust appropriate

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 20

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

since title was only put in children's name to avoid certain restrictions in a government program); Sale of Guar. Corp, 220 BR 660, 664 (9th Cir. BAP 1998)(where the transferee of property does not pay the purchase price for the property, the transferee is presumed to hold the property in a resulting trust for the party who paid the consideration for its purchase).

The standard of inquiry under section of the Bankruptcy Code excluding from property of the estate trust interests that are subject to transfer restrictions enforceable under applicable non-bankruptcy law, normally has three parts:

    (1)    whether the debtor has a beneficial interest in a trust;

    (2)    whether there is a restriction on the transfer of that interest; and

    (3)    whether the restriction is enforceable under non-bankruptcy law.

In re Wilcox, 233 F.3d 899 (6th Cir. 2000)

The evaluation of each element is resolved in accordance with and through the application of state law. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136, 141-42 (1979).

Washington law clearly establishes that the Debtor holds only "bare legal title" to the property in question. St. Mary Presentation is the true beneficial and equitable ownership of the real property in dispute.

**1.** **St. Mary Presentation Parish Is The Beneficiary Of A Statutory Trust, Holding All Equitable And Beneficial Interest In The Real Property.**

The corporation sole statute in Washington clearly and explicitly creates a statutory trust comprised of the disputed property held for the benefit of the Church and its parishioners. RCW Ch. 24.12. The Debtor incorporated under this chapter in 1915.

The legislative history is absolutely clear that the statute was enacted to create a trust relationship. The bill, as introduced in the Senate by two Spokane Senators, was entitled:

> An Act providing for the organization of corporations sole, defining their powers, authorizing them to transact business and hold property in trust for religious denominations societies or churches.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 21

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

S.B. 188 (Journal of Senate, 1915, p. 283) (emphasis added). After its introduction, it was referred to the Senate Committee on Corporations other than Municipal. Id. After review by the Committee, recommended that the bill be passed the Senate on March 6, 1915.

The bill was subsequently passed by the house on March 10, 1915, and was approved by the Governor March 15, 1915.

The passed Senate Bill 188 became Session Law, Chapter 79. "Organizations and Powers of Corporations Sole."

Section 3 specifically states:

> . . . Provided, all property held in such official capacity by such bishop, overseer or presiding elder, as the case may be, shall be in trust for the use, purpose, benefit, and behoof of his religious denomination, society or church.

S.B. 188 (Session Laws, 1915, Chapter 79, p. 254)

As a corporation sole, the Debtor has the power to contract, sue, and be sued in court. R.C.W. § 24.12.020 (West 2005). A corporation sole also has the power to deal in real and personal property in the same manner as any natural person. Id. This grant of legal capacity is explicitly for the benefit of the trust created under this chapter. Id. The trust is comprised of all the property held by the Debtor in its official capacity. RCW § 24.12.030 (West 2005). Specifically the statutes state:

> ...All property held in such official capacity by such bishop, overseer or presiding elder as the case may be, shall be in trust for the use, purpose, benefit and behoof of his religious denomination, society or church.

RCW § 24.12.030 (West 2005).

> Every corporation sole shall, _for the purpose of the trust_, have the power to contract in the same manner and to the same extent as a natural person, and may sue and be sued, and may defend in all courts and places, in all matters and proceedings whatever, and shall have authority to borrow money and give promissory notes therefor, and to secure the payment of the same by mortgage or other lien upon property, real and personal; ...

RCW § 24.12.020 (West 2005)(emphasis added). This statute defines the legal relationship between the Debtor, St. Mary Presentation, and Parishioners as a relationship of trustee and beneficiary. _See_, RCW § 24.12.030 (West 2005). This is also consistent

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 22

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

05-80038-PCW    Doc 135    Filed 05/26/05    Entered 05/26/05 15:42:35    Pg 22 of 33

with the norms of Canon Law which provide that each parish is a Church capable of acquiring and owning real and personal property interests.

Despite this clear statute and governing principles of Canon Law, the Committee misconstrues Washington case law explicitly recognizing the restrictions existing on property impressed with a trust by dedication to religious organizations for the benefit of such organizations. In Wilkeson v. Rector, etc. St. Luke's Parish, 176 Wash. 377, 386 (1943), cited by the Committee, the Court explicitly notes that while the alienation of the property in that case was within the power of the trustee, the use of the proceeds from the sale could not be diverted from the benefit of the religious purposes for which the property was donated. Wilkeson, 176 Wash. at 385. ("In passing, it may be conceded that, if the purpose of respondents was to divert the funds to be received from the sale of the property to other than religious purposes of the Episcopal Church, the court could and would enjoin them. The trustee is merely the holder of the legal title.") Even the court's explicit holding, quoted only in part by the Committee, recognizes that courts will ensure that property of a trust which is held to benefit a religious society cannot lawfully be diverted from the purpose for which the trust is held. Id. at 386. Specifically, the court stated: "For in a trust of the character involved here, where no restraint is imposed on the right to alienate, the courts will not interfere <u>further than to see to it that the proceeds from the sale of the trust property are not diverted from the use for religious purposes of the faith or denomination to which the property was dedicated.</u>" Id. (emphasis added).

Despite the Committee's assertion that "[t]he corporation sole statute's 'trust' for the Church is no different than the trust in Wilkeson ..." (Committee's Memo, p. 11) the Committee disregards the court's explicit statements upholding restrictions on the use of the trust res and its proceeds, and identifying that "[t]he trustee is merely the holder of the legal title." Id. at 385. The Committee's memorandum repeatedly fails to distinguish between the rights and obligations of a trustee as the legal title holder of property, and the existence of an equitable interest in the property, attempting instead, to equate the holding of legal title by the Catholic Bishop of Spokane with the absence of the existence of a trust. This merely evidences a lack of recognition of the distinction between legal title and an equitable interest, and does not support the Committee's argument that no trust exists.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 23

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

The Catholic Bishop of Spokane is the trustee of the statutory trust created under RCW chapter 24.12. Whether or not, as trustee, the Catholic Bishop of Spokane has the power to alienate certain property of the trust, any such alienation must be for the "benefit and behoof of his religious denomination, society or church." RCW § 24.12.030 (West 2005). With regard to "proceeds from the sale of the trust property," they "are not to be diverted from the use for religious purposes of the faith or denomination." Wilkerson, 176 Wash. at 386. The statutory trust under which the property is held reserves the beneficial use of the property for St. Mary Presentation.

**2.    St. Mary Presentation Is The Beneficiary Of An Express Trust.**

The recognition and observance of the civil duties of a trustee have been impressed upon the Debtor since its incorporation. The Catholic Bishop of Spokane was incorporated as a corporation sole under the foregoing statute on July 3, 1915. With respect to St. Mary Presentation Parish, this trust relationship commenced with the formation of the Parish. The Washington Supreme Courts has noted that statements in articles of incorporation can be sufficient to create an express trust. Hoffman v. Tieton View Methodist Church, 33 Wn.2d at 727 (1949) ("There is no question in our minds but that all property acquired by Tieton View was, under article VIII of its articles of incorporation ... held in trust for the uses of the Methodist Church...").

The articles of incorporation clearly express the intent of creating and maintaining a trust for the benefit of the members of the Roman Catholic faith. Specifically, the articles expressly provide:

ARTICLE III
This corporation is formed for the purpose of transacting business and **holding property in trust** for that certain religious denomination or society known as the Roman Catholic Church; to do business and contract in the same manner and to the same extent as a natural person; to borrow money and give promissory notes therefor, and to secure the payment of the same by mortgage or other lien upon property real and personal; to buy, sell, lease, mortgage, and in every way use and deal in real and personal property and to receive bequests for its own use or upon trusts.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT  - 24

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

## ARTICLE IV

The incorporator of this corporation is Augustine F. Schinner, who is the duly appointed, qualified and acting Roman Catholic Bishop of the Diocese of Spokane, in the state of Washington, and who as such Bishop of the Roman Catholic Church has subscribed these Articles of Incorporation, in order to become a corporation sole, together with his successors in office by his official designation, in the manner prescribe in "An Act Providing for the Organization of Corporations Sole, Defining Their Powers, **Authorizing them to transact business and hold property in trust for religious denominations, societies or churches**." passed by the Legislature of the State of Washington and approved by the Governor, March 15th, 1915.

## ARTICLE V.

This incorporation is a religious corporation, not organized for gain and is without capital stock, **all property held by it being in trust** for the use, purpose, benefit and behoof of the Roman Catholic Church of the Diocese of Spokane, in the State of Washington.

(Articles of Incorporation, 713115, Emphasis Added)

An express trust "arises because of the expressed intent and involves a fiduciary relationship in which the trustee holds property for the benefit of a third party." Goodman v. Goodman, 128 Wn.2d 366, 372 (1995). Ninety years ago, the Bishop of Spokane clearly expressed the intent to hold property in trust for the benefit of the Parishes of the Church of the Diocese of Spokane.

A trust will be found to exist if there is a clear manifestation of an intent to create a trust; and the entire instrument, as well as its general purpose and scope, should be considered, and the instrument should be construed in light of the circumstances surrounding its execution. See, Hoffman v. Tieton View Meth. Ch., 33 Wn.2d 717, 726 (1949).

In this case, the trust instrument consists of the deed, which contains explicit language referencing the fact title is held by a "Corporation Sole." The statute governing corporation soles, RCW 24.12 et seq., clearly puts others on notice that a trust relationship exists.

Just as use and occupancy of property is sufficient to place others on notice of the possessor's interest, (Miebach v. Colasurdo, 102 Wn.2d 170, 173, 177 (1984)) and the failure of a spouse to record an interest in community property does not preclude that spouse from defending that interest in court, (Campbell v. Sandy, 190 Wash. 528, 531

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT -- 25

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

(1937)), the use, improvement and maintenance by St. Mary Presentation of property recorded in the name of a corporation sole, places the world on notice of the statutory trust under which it is held, and identifies the true nature of the Debtor's interest in the property. Cf. In re Country Club Market, 175 B.R. 1005, 1009 (D. Minn. 1994) (finding a valid statutory trust, and noting that such a finding creates no burden on creditors "[a]s opposed to contractual or implied trusts, the stature is public. There is no secret agreement between" the parties.)

1. **Statute Of Frauds Does Not Make The Express Trust In This Case Defective.**

Generally, the statute of frauds will prevent parol evidence from enforcing the terms of an oral trust absent fraud or other circumstances. In re Marriage of Lutz, 74 Wn. App. 356, 365 (1994). An exception to the requirement for an express trust over real property is a situation where a beneficiary of the trust has partially performed in accordance with the trust. Diel v. Beekman, 7 Wn. App. 139, 144 (1972), overruled on other grounds, Choplin v. Sanders, 100 Wn.2d 853 (1984).

The standard for evaluating partial performance is whether the beneficiary, with the consent of the trustee:

a. Enters into possession of the land;

b. Makes improvements to the land; and

c. Changes position in reliance of the trust.

See, Diel at 144-145.

As demonstrated in the Statement of Facts in this Memorandum (Section IV), St. Mary Presentation and its parishioners have held possession of the property to the exclusion of all others. St. Mary Presentation has made all improvements to the land and maintained the structures thereon. All donations have been received with the understanding that St. Mary Presentation improved the real property to fulfill religious tenets of the Parish. Such actions were taken with the understanding the Church property was property belonging to St. Mary Presentation.

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

**C.  The Committee Ignores Statutory Restriction On Institutional Funds.**

The Committee's discussion of the administrative dissolution of nonprofit corporations is wholly irrelevant to the enforceability of the restrictions placed on property donated to St. Mary Presentation under Washington law. This is not an instance of an administrative dissolution by the state, but a reorganization under Title 11 of the United States Code. Further, St. Mary Presentation is subject to the Uniform Management of Institutional Funds Act, RCW Chapter 24.44, which provides only two methods for the release of a restriction placed on donations. RCW § 24.44.060.

Under Washington law, donations given with restrictions as to their use, to incorporated or **unincorporated organizations operated for religious**, educational, or other eleemosynary purposes, can only be used in accordance with the restrictions unless (1) the donor gives written consent releasing the restriction, or (2) an order is obtained in Superior Court upon a finding that the restriction is (i) obsolete, (ii) inappropriate, or (iii) impracticable. R.C.W. § 24.22.060. Further, the statute requires that the Attorney General be given notice and opportunity to be heard on any such matter before the Superior Court makes its findings, and expressly retains the application of the judicial doctrine of *cy pres*. *Id.* Contrary to the claim's of the Committee, Washington's Legislature and Judiciary have a long and well established tradition of honoring the intention of the donors and benefactors of religious organizations.

The facts of this case demonstrate that the real property at issue was paid for with donated funds, improved, and maintained with donated funds for the benefit of St. Mary Presentation.

**D.  If The Court Concludes That A Statutory Trust Or An Express Trust Does Not Exist, A Resulting Trust Should Be Found In Favor Of St. Mary Presentation.**

Even if the statutory and express trusts are found to be ineffective, the acquisition the property in dispute clearly gives rise to a resulting trust. "It is well settled that where property is taken in the name of a grantee other than the person advancing the consideration, the one in whose name title is taken is a resulting trustee for the person who paid the purchase price, in the absence of proof if a contrary intention." *Mading v.*

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 27

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

McPhaden, 50 Wn.2d 48, 53 (1957). "That grantee is presumed to hold legal title subject to the equitable ownership of the person advancing the consideration." Stocker v. Stocker, 74 Wn. App. 1, 6 (1994) (quoting, Thor v. McDearmid, 63 Wn. App. 193, 206 (1991)). "Similarly, where property is transferred to one person and the purchase price is advanced by him as a loan to another, a resulting trust arises in the latter's favor." Mading, 50 Wn.2d at 54. Resulting trusts are equitable in nature, and may be established by parole evidence of a clear, cogent and convincing nature. Stocker, 74 Wn. App. at 6. As evidenced at Section IV -- Statement of Facts -- all acquisitions of real and personal property, all improvements, and all maintenance of the property was paid for with money directly traceable to parishioners, for the benefit of Parishioners, with the clear understanding and intent that it was for the benefit of Parish property. Just as in the case of Matter v. Torrez, 63 BR 751, 754-755 (9th Cir. BAP 1986), the imposition of a resulting trust is appropriate since title was placed in the name of the corporation sole with the understanding it was held in trust for St. Mary Presentation. The Bishop never intended to actually own the property or assert control over the property or improvements as exclusive owner.

E.    **If The Diocese Is Forced To Breach Its Fiduciary Duty And Trust Relationship owed to St. Mary Presentation, A Constructive Trust Must Be Imposed.**

The facts surrounding the nature of the relationship between the Debtor, St. Mary Presentation, and the acquisition of the property establish a constructive trust for the benefit of St. Mary Presentation. "A constructive trust is an equitable remedy which arises when the person holding title to property has an equitable duty to convey it to another on the grounds that they would be unjustly enriched if permitted to retain it." Lakewood v. Pierce County, 144 Wn.2d 118, 126 (2001). A constructive trust will be "imposed when there is clear, cogent and convincing evidence of the basis for impressing the trust." Id. To establish a constructive trust, a "party must show the trust arose from the relationship of the parties involved, and that the property justly belongs to that party." Id. at 129. Here, the intent of the parties was to create valid statutory and express trusts, the beneficial use of the property was at all times held reserved by and for St. Mary Presentation. Not only is there clear, cogent and convincing evidence for the imposition of a trust, but for the Court to

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 28

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

hold that the property in dispute belongs to the Debtor would unjustly enrich the Debtor to the detriment of St. Mary Presentation who has relied on its ownership of the property since the parish was founded.

## F.     The Committee's Catch All Argument Of "Alter Ego" Fails As A Matter Of Law And Fact.

The "Alter Ego" theory advanced by the Committee is merely a disguised attempt to circumvent legal deficiencies in its third claim for relief of substantive consolidation. In this case, the Committee is asking the Court to rule that St. Mary Presentation is liable for the debts of the Debtor, a corporation sole, even though St. Mary Presentation is a separate legal entity and is clearly not a "shareholder" of the Debtor.

When Washington Courts invoke "piercing the corporate veil", they have applied the "doctrine of corporate disregard" based upon two elements:

a.     "The corporate form must be intentionally used to violate or evade a duty," and

b.     "Disregard must be necessary and required to prevent unjustified loss to the injured party."

See, Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 410, 645 P.2d 689 (1982)

The first factor requires a showing of abuse of the corporate form, typically involving fraud, misrepresentation, or other action **by the corporation that harms the creditor and benefits the shareholder.** The second factor requires that the harm must actually occur. In this case, the Committee has neither plead nor demonstrated any facts to support both requirements of an "Alter Ego Claim."

The undisputed facts offered by St. Mary Presentation demonstrate a claim of "Alter Ego" is without merit. (See Statement of Facts, Section IV)

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 29

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

## 1. The Committee Attempts To Circumvent Statutory Prohibitions Against Substantive Consolidation Of A Not "Moneyed" Entity.

The Committee's Complaint, in its third cause of action, seeks a declaratory order for substantive consolidation "all Diocese Related Entities." The Committee's Motion for Summary Judgment now seeks a declaratory order under a theory of "Alter Ego." Such a legal theory is nothing more than a thinly veiled attempt to place St. Mary Presentation and other non-debtor/non-moneyed religious entities into an involuntary bankruptcy. Relief which is forbidden by the Code. See, 11 U.S.C. § 303(a) and corresponding legislative history. House Report No. 95-595, 95th Cong., 1st Sess 321 (1977).

The Bankruptcy Code clearly recognizes that not all debtors are the same. And while Chapter 11 and its provisions do not generally distinguish between for-profit, non-profit, and religious organizations for the purposes of reorganization, that is not to say that a distinction does not exist and should not or cannot be made. For example, under the Bankruptcy Code non-profit corporations are treated more favorably than for-profit organizations. See, e.g., 11 U.S.C. § 303(a) (excluding non-profit organizations from involuntary bankruptcy); 11 U.S.C. § 1112(c) (forbidding a court from converting a case filed by a non-profit from Chapter 11 to Chapter 7 without consent). Congress has recognized that religious organizations present unique bankruptcy issues because government regulation of religion implicates First Amendment rights. For example, the Bankruptcy Code has been modified by Congress to protect free exercise of religion to prevent a trustee from avoiding a debtor's donation given to a religious or charitable organization. See Religious Liberty and Charitable Donation Protection Act of 1998, Pub. L. No. 105-183, 112 Stat. 517 (1998).

Substantive consolidation has no express statutory basis, but rather, is a "product of judicial gloss." In re Augie/Restiro Bakery Co. Lt., 860 F.2d 515, 518 (2nd Cir. 1988). Substantive consolidation results in pooling the assets of, and claims against, the two entities, satisfying liabilities from the resultant common fund; eliminating inter company claims; and combining creditors of the two companies for purposes of voting on reorganization plans. In re Bonham, 229 F.3d 750, 764 (9th Cir. 2000).

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

In the present case, even if the Committee could get around the statutory prohibitions, the Committee would have to demonstrate 1) that the Committee or its members dealt with St. Mary Presentation Parish and the Debtor as a single economic unit and did not rely on the separate credit of each of the entities; or that the operations of the Debtor and St. Mary Presentation Parish were **excessively** entangled with the Debtor's affairs to the extent that consolidation will benefit all creditors. See In re Bonham, 229 F.3d 750, 766 (9th Cir.).

The newly surfaced "Alter Ego" theory is nothing more than a recognition that Committee's third cause of action has no application in this case.

## G.    Subjecting The Parish To Declaratory Relief of this Nature Violates First Amendment Rights Of Free Exercise And The Religious Freedom Restoration Act.

The exercise of religion includes the "right to believe and profess whatever religious doctrine one desires" and prevents the government from "lendi[ng] its power to one side or another in controversies over religious authority or dogma." See Smith, 494 U.S. at 877 (citations omitted). To protect the exercise of religion, the Supreme Court has held that if the government "substantially burdens" a person's exercise of religion, and the government does not demonstrate that it has a "compelling government interest" to justify the religious burden, then the government intrusion into a person's free exercise of religion has been violated. See Sherbert v. Verner, 374 U.S. 398, 406 (1963). However, this Court later limited Sherbert by holding that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability . . .'" See Smith, 494 U.S. at 879 (citations omitted). Public opposition to the Smith holding was immediate and forceful. Congress enacted the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 (1993)(hereinafter, RFRA), "to restore the compelling interest test as set forth in Sherbert," and "to guarantee its application in all cases where free exercise of religion is substantially burdened," including cases in which the law at issue was of "general applicability." See 42 U.S.C. § 2000bb(b)(1), (2). In Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court declared RFRA unconstitutional as applied to state actions

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

because Congress had exceeded the scope of its power under Section 5 of the Fourteenth Amendment in enacting the law. See Boerne, 521 U.S. at 527 (RFRA "intruded into an area reserved by the Constitution to the States"). However, RFRA continues to be constitutional as applied to federal law. See infra Part I.B.4.

Under RFRA, a neutral law of general applicability is an unconstitutional infringement of a person's free exercise rights if the following is true: (1) the law substantially burdens a person's exercise of religion; (2) the government cannot justify the law with a compelling government interest; and (3) there are no less restrictive means of furthering the government's compelling interest. 42 U.S.C. § 2000bb-1(a), (b).

Two unique circumstances arise would occur if the Court were to dictate the ownership and use of Parish property: (1) a religious leader will have been replaced by a government official as the head of a religious organization, resulting in comprehensive government surveillance of religion; and (2) a government official will be in an unprecedented position of decision making power over a church/Parish, a position traditionally given only to a spiritually mandated leader, the Pastor of the Parish, resulting in the appearance of government endorsement of religion for the benefit of a creditor's committee.

St. Mary Presentation's economic interests cannot be separated from its spiritual interest – any economic decision the Court makes regarding use or ownership of property inevitably has direct and significant religious consequences. Thus, the Court will become hopelessly entangled with religious policy of the Catholic Church. The effect of St. Mary Presentation's spiritual mission is that every financial decision it makes is driven by religious objectives toward religious ends in accordance with Canon Law. This creates an irreconcilable church versus state conflict between a non-debtor, a creditors committee, and the Court. By effectively forcing a Parish into bankruptcy by way of declaratory relief, the government is changing the essential structure of St. Mary Presentation under Canon Law. Since the Canon directs the religious vision and thus the financial objectives of St. Mary Presentation, such a change would essentially allow government to determine who benefits from St. Mary Presentation's mission.

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 32

CRUMB & MUNDING, P.S.
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155

## VII.

## CONCLUSION

As a matter of law, the Committee has not established a case in controversy with St. Mary Presentation that would permit the declaratory relief requested. Even if the Court were to consider the pending motion for summary judgment based upon the Committee's factual theory, the Committee's motion fails as the Committee has failed to eliminate material questions of fact as to St. Mary Presentation's ownership interest in the real property, including furnishing all consideration for purchase, improvements, and maintenance.

DATED this 25th day of May, 2005.

CRUMB & MUNDING, P.S.

JOHN D. MUNDING
WSBA #21734

ELSAESSER JARZABEK ANDERSON
MARKS ELLIOTT & MCHUGH

FORD ELSAESSER
BARRY McHUGH

Attorneys for Defendant Parishes

JDM\slc\p:files:assocparishes:summaryjudgment/25069

ST. MARY PRESENTATION PARISH'S OPPOSITION
TO SUMMARY JUDGMENT - 33

**CRUMB & MUNDING, P.S.**
SUITE 1950
601 W. RIVERSIDE AVENUE
SPOKANE, WA 99201
(509) 624-6464
FAX (509) 624-6155