SHAUN M. CROSS
GERALD KOBLUK
GREGORY J. ARPIN
PAINE, HAMBLEN, COFFIN,
 BROOKE & MILLER LLP
717 W. Sprague Avenue Suite 1200
Spokane, WA 99201-3505
(509) 455-6000
Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In Re: | ) | |
| THE CATHOLIC BISHOP OF SPOKANE a/k/a THE CATHOLIC DIOCESE OF SPOKANE, | ) ) ) ) | Case No. 04-08822-PCW-11 Chapter 11 |
| Debtor. | ) ) | Adv. Proc. No. 05-80038 |
| COMMITTEE OF TORT LITIGANTS, | ) ) ) | **CATHOLIC BISHOP OF SPOKANE'S MEMORANDUM OF AUTHORITIES IN OPPOSITION TO TORT LITIGANT COMMITTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiffs, vs. | ) ) ) | |
| THE CATHOLIC DIOCESE OF SPOKANE, ET AL. | ) ) ) | |
| Defendants. | ) ) ) | |

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................ 1

II.   UNDER §541 OF THE BANKRUPTCY CODE, PROPERTY
       WHICH THE DEBTOR HOLDS IN TRUST IS NOT PART OF THE
       DEBTOR'S ESTATE ................................................................ 2

      A.    The Equitable Interest of a Non-Debtor Cannot be Included in
            the Debtor's Estate ................................................................ 2

      B.    The Debtor's Property Rights are Determined by State Law. ..................... 4

III.  WASHINGTON TRUST AND PROPERTY LAW SUPPORT THE
       EXISTENCE OF A TRUST. ................................................................ 5

      A.    Under Washington Law, the Diocese Holds All Property in a
            Statutory Trust. ................................................................ 6

      B.    The Diocese Holds Property for the Benefit of Parishes
            Pursuant to  Express Trusts. ................................................................ 10

           1.    Part Performance Removes an Oral Trust From the
                 Statute of Frauds ................................................................ 11

           2.    There is No Legal Support for the Argument that Rights
                 of a Creditor are Superior to the Beneficiary of a Trust. ............... 15

      C.    A Constructive Trust Arises to Prevent an Inequitable Result. ............... 17

      D.    A Resulting Trust Arises Where the Grantor Did Not Intend the
            Person Holding Legal Title (the Diocese) to also have Equitable
            Title ................................................................ 18

      E.    Parish Property is Restricted, Even if Property of the Estate ................... 20

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - i

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 2 of 52

IV.   UNDER WASHINGTON LAW, THE PARISHES HAVE A LEGAL
      EXISTENCE THAT WHILE CLOSELY RELATED TO, IS
      LEGALLY SEPARATE AND DISTINCT FROM THE DIOCESE ................ 21

V.    THE DIOCESE IS NOT ESTOPPED FROM ASSERTING A TRUST
      CONSISTENT WITH ECCLESIASTICAL AND SECULAR LAW. .............. 26

VI.   THE LITIGANTS' ALTER EGO ANALYSIS WOULD DENY THE
      DIOCESE THE RIGHT TO GOVERN "IN CONFORMITY" WITH
      CANON LAW. ........................................................................................ 30

VII.  STATE AND FEDERAL LAW REQUIRE JUDICIAL DEFERENCE
      IN REVIEWING DISPUTES CONCERNING THE OWNERSHIP
      AND CONTROL OF CHURCH PROPERTY ...................................... 34

      A.   This Court Is Required to Apply Washington Law, Not
           "Neutral Principles." .............................................................. 36

      B.   The Tort Litigants Have Created a Church Property Dispute of
           the First Magnitude ................................................................ 39

           1.   The Essence of the Litigants' Complaint Pits the Diocese
                Against the Parishes. ...................................................... 40

           2.   The Litigants Attempt to Step in the Diocese's Shoes to
                Utilize §544 Against the Parishes .................................. 42

      C.   The Rule of Compulsory Deference to Church Authority Does
           Not  Violate the Establishment Clause ...................................... 44

      D.   The Diocese Has Not Waived Constitutional Rights by Filing a
           Bankruptcy Petition. ................................................................ 46

VIII. CONCLUSION .................................................................................... 49

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - ii

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW     Doc 203     Filed 05/27/05     Entered 05/27/05 13:15:55     Pg 3 of 52

# I. **INTRODUCTION**

In accordance with §541 of the Bankruptcy Code, the Catholic Bishop of Spokane ("Debtor" or "Diocese") reported in its filing unrestricted diocesan assets (which are free and clear) worth more than $10 million. These assets are clearly available to diocesan creditors. In addition, the Diocese, for almost three years, has sought to preserve the value of approximately $15 million in insurance coverage for the sole benefit of the creditors in this case, including the claimants represented by the plaintiff in this adversary proceeding.[1] The Diocese has identified and fully disclosed other property that it holds only in trust in accordance with secular and ecclesiastical law.

The Tort Litigants' memorandum of authorities is filled with rhetoric accusing the Diocese of playing a "shell game," trying to be "above the law," or claiming to be "judgment proof." These accusations and personal attacks are neither accurate nor helpful, and cannot hide two simple facts: (1) Washington's corporation sole statute, and its property and trust law support the existence of a trust as a matter of law; and (2) the Litigants misdirect the court to the wrong law for addressing constitutional concerns inherent when deciding whether parish properties are properties of the Diocese. When the court applies the proper legal principles under controlling Washington State and

---

[1] The $15 million number is based on claims currently in litigation and assumes the Debtor is successful in the declaratory relief action currently pending in Federal District Court in Spokane, Cause No. 05-CV-0075-EFS. The actual amount of coverage may exceed $15 million depending on the total number of claims filed against the Debtor (the Debtor has sought a September 28, 2005 Bar Date) and the validity of those claims.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 1

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

federal constitutional authority, it can reach but one conclusion: the property of the parishes, schools, and other separate Catholic entities (collectively referred to as "parishes") is not part of the Debtor's estate.

## II. UNDER §541 OF THE BANKRUPTCY CODE, PROPERTY WHICH THE DEBTOR HOLDS IN TRUST IS NOT PART OF THE DEBTOR'S ESTATE.

### A. The Equitable Interest of a Non-Debtor Cannot be Included in the Debtor's Estate.

Section 541 of the Bankruptcy Code governs what property is, and what property is not, property of the debtor's bankruptcy estate. 11 U.S.C. §541 provides in relevant part:

> (a) The commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case.
> > ***
>
> (d) Property in which the debtor holds, as of the commencement of the case, <u>only legal title and not an equitable interest</u> . . . becomes property of the estate . . . <u>only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold</u>. (Emphasis added)

The plain language, as well as the legislative history of §541, describes the limitations of what is, and what is not, property of the estate. "[O]nly the debtor's interest in such property becomes property of the estate. If the debtor holds bare legal title or

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 2

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 5 of 52

holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under section 541." 124 CONG. REC. H 11,096 (Sept. 28, 1978); S 17413 (October 6, 1978).

> Section 541(d) of the House amendment is derived from section 541(e) of the Senate amendment and reiterates the general principle that where the debtor holds bare legal title without any equitable interest, then the estate acquires bare legal title without any equitable interest in the property. . . . Thus, as section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. <u>To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate</u>. . . . (emphasis added)

124 CONG. REC. H 11,096 (Sept. 28, 1978).

As the legislative history makes clear, the debtor's estate does not include property to which the debtor holds only bare legal title, but has no equitable interest. *See also* 5 COLLIER ON BANKRUPTCY, ¶541.27 (15th ed. rev. 2004). Thus, "the Bankruptcy Code embraces the crucial distinction between a legal interest and an equitable interest in property." <u>Marrs-Winn Co. v. Giberson (In re Marrs-Winn Co.)</u>, 103 F.3d 584, 589 (7th Cir. 1996); *see also* <u>Begier v. IRS</u>, 496 U.S. 53, 59 (1990)("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); <u>In re Rodeo Canon Development Corp.</u>, 362 F.3d 603, 609 (9th Cir. 2004)(finding property at issue was not property of the estate simply because the debtor held legal title).

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 3

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 6 of 52

**B.      The Debtor's Property Rights are Determined by State Law.**

The Bankruptcy Code leaves "the determination of property rights in the assets of a [debtor's] estate to state law.  Property interests are created and defined by state law." Butner v. United States, 440 U.S. 48, 54 (1979).  The estate has "no greater rights in property than those held by the debtor prior to bankruptcy."  In re Coupon Clearing Serv., Inc., 113 F.3d 1091, 1099 (9th Cir. 1997).  "The bankruptcy court therefore must look to state law to determine the nature of the estate's property rights."  In re Keller, 185 B.R. 796, 800 (9th Cir. B.A.P. 1995).

Accordingly, whether a trust has been established is "a question to be resolved under the law of the state that is the situs of the trust fund."  In re California Trade Technical Schools, Inc., 923 F.2d 641, 646 (9th Cir. 1991).  Ninth Circuit case law has applied §541(d) to express trusts, constructive trusts and statutory trusts, finding that an equitable interest in any of these types of trusts is not property of the debtor's estate. California Trade Technical Schools, 923 F.2d at 647 (applying §541(d) to an express trust); Coupon Clearing Serv., 113 F.3d at 1099 ("Property that is held in trust by a debtor for another, however, is not property of the estate . . . .  This rule of law applies with equal force to constructive trusts that arise by operation of state law."); In re Megafood Stores, Inc., 163 F.3d 1063, 1067 (9th Cir. 1998) (finding a sales tax statutory trust in which the debtor held only legal title, and not an equitable interest, was not property of the estate.).  The Ninth Circuit Bankruptcy Appellate Panel has also applied §541(d) to a resulting trust.  In re Sale Guaranty Corp., 220 B.R. 660 (9th Cir. B.A.P. 1998).

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 4

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 7 of 52

The application of Washington's property and trust law supports the conclusion that the Diocese holds title to parish property in trust as a matter of law. Even if parish property is part of the Diocese's estate, these assets are subject to such restrictions based on patterns of donations and administration that they could not be subject to execution as unrestricted assets. At the very least, there are substantial questions of material fact that preclude summary judgment in favor of the Litigants as a matter of law.

In addition, as discussed below and in the Diocese's Cross-Motion for summary judgment, the Litigants do not apply controlling Washington law applicable to the resolution of disputes concerning the control and ownership of church property. When the correct law is applied in this adversary proceeding, summary judgment should be entered in favor of the Diocese as a matter of law.

## III.   WASHINGTON TRUST AND PROPERTY LAW SUPPORT THE EXISTENCE OF A TRUST

The Tort Litigants argue repeatedly that they are entitled to summary judgment simply because the Debtor holds bare legal title to the twenty-two parishes that are the subject of their motion. Litigants' memo, pp. 2, 7, 8, 9, 13, 17, 18, 19, 29 and 30. The legal validity of the Litigants' mantra on this point, however, is not somehow magnified through sheer repetition.[2]

---

[2] Under Washington's rule of compulsory deference to ecclesiastical authority, the issue of who holds formal title to property is irrelevant. Southside Tabernacle v. Church of God, 32 Wn. App. 814, 822 (1982)("the issue of who holds formal title has no relevancy under this [deference] theory"). Likewise, in compulsory deference states like Washington, questions of ownership and control under corporate, property or trust law is irrelevant. *Civil Court Resolution of Property Disputes Among*

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 5

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

Legal ownership — the fact that the Diocese (as a corporation sole) holds fee simple title to parish property — has never been at issue. The issue is whether the Diocese holds fee simple title in trust for others. The Litigants have approached this critical, threshold property of the estate issue as if §541(d) simply did <u>not</u> exist. A myopic focus on bare legal title is not the approach taken by the courts in the 9th Circuit. In <u>Rodeo Canon</u>, 362 F.3d at 609, for example, the court found that the property at issue was not property of the estate simply because the debtor held legal title. Likewise, the parishes which are the subject of the Litigants' motion are <u>not</u> property of the estate of the Debtor simply because the Debtor holds bare legal title. Washington property and trust law support the existence of a trust as a matter of law.

**A.** **<u>Under Washington Law, the Diocese Holds All Property in a Statutory Trust</u>.**

A trust is a relationship wherein one person, the trustee, is charged with holding property for the benefit of another, the beneficiary. 1 Wash. Prac. *Trusts* § 30.1, p. 662. Regardless of the deeds or title documents, a trust may be established by legislative mandate. Restatement (3rd) Trusts, § 10 cmt. a, p. 146. There are several such trusts created under Washington law. For instance, Washington has adopted the Washington Uniform Transfers to Minors Act, which provides that the custodian of funds transferred on behalf of a minor is subject to the fiduciary standard of a trustee under Washington

---

*Religious Organization*, 39 Am.U.L.Rev. 513, 533 (1990). *See* Diocese's Cross-Motion for Summary Judgment, Sec. V, B. However, for the purposes of this motion, the Diocese will respond to the Litigants' property and trust arguments to show that the Litigants are not entitled to judgment as a matter of law.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 6

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 9 of 52

law.  RCW 11.114.  Additionally, Washington guardianship laws create a trust relationship between the guardian and the incapacitated person's property.  RCW 11.92. Washington's corporation sole statute, RCW 24.12, likewise creates a statutory trust.

The Catholic Bishop of Spokane (aka the Spokane Diocese) was incorporated in 1915 as a corporation sole.  The corporation sole statute in Washington expressly provides "every corporation sole shall, **for the purpose of the trust**," have the same powers as a natural person.  RCW 24.12.020.  The statute also provides:

> **All property** held in such official capacity by such bishop…**shall be in trust for the use, purpose, benefit and behoof[3] of his religious denomination, society or church.** (Emphasis added)

RCW 24.12.030.[4]

The legislative history of this key statute confirms that one of the purposes of the statute is to authorize the corporation sole "to transact business **and hold property in trust** for religious denominations, societies or churches."  Session Laws, 1915, Ch. 79 [S.B. 188].

The Diocese's Articles of Incorporation ("Articles") expressly refer to and mirror the express trust provisions of the corporation sole statute.  (These Articles are attached

---

[3] "Behoof" is defined in Webster's as "advantage or profit."

[4] Although <u>all</u> property is held in trust, the use of unrestricted diocesan property to satisfy diocesan creditors would be consistent with such trust.  The use of *parish* property to pay *diocesan* creditors would not.  In the case of unrestricted Diocesan assets, the Diocese holds both the legal and the equitable interest (like a self-settled trust), whereas in the case of parish assets, the Diocese holds only bare legal title, and the parishes have the equitable interests.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 7

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 10 of 52

as Exhibit B to the Affidavit of Bishop Skylstad)  The powers of the corporation are to "transact business and **hold property in trust**." Article IV.  The corporation was formed for the purpose of "transacting business **and holding property in trust.**" Article III. Further, Article V provides "all property held by it [the corporation] **being in trust** for the use, purpose, benefit and behoof of the Roman Catholic Church of the Diocese of Spokane."

This trust relationship has been recognized and understood since the founding of the Diocese.  Seventy years ago, Bishop Charles White, the Spokane Diocese's second Bishop stated:

> In every case I hold each Parish responsible for its own obligations. Even when parish properties are held under the title of the diocesan corporation, the Catholic Bishop of Spokane, (the title of nearly all our parish properties) this form of tenure does not change the fact that they are parish properties, the diocesan corporation being a mere non-profit holding corporation which holds the various parish properties in trust for the faithful of the respective parishes.

Bishop Charles White correspondence dated November 30, 1935, attached as Exhibit L to the Supp. Affidavit of Fr. Barnett, ¶15, submitted by the Association of Parishes.

The Tort Litigants interpret the trust language in the corporation sole statute extremely narrowly, to apply only to restrict the Bishop's <u>personal</u> interest in church property.  Litigants' memo, p. 10.  Such a narrow interpretation is not consistent with the express terms of the statute.  The first explicit reference to a trust in the statute (which the Litigants ignore) is contained in RCW 24.12.020.  That section, which enumerates the

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 8

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 11 of 52

corporation's powers, enables the corporation, **"for the purpose of the trust,"** to contract, sue and be sued, borrow money, secure payment, deal in real and personal property, receive bequests and devisees, and to otherwise act in the same manner as a natural person. The "trust" clause applies to *all* of these corporate powers, and is not limited to the Bishop's personal interest when holding property. To restrict the purpose of the corporation sole to the holding and transfer of property is to capture only a portion of the purpose it is intended to serve and to artificially truncate its functions.

The Litigants' narrow interpretation also ignores the unambiguous terms of the specific proviso in RCW 24.12.030, which provides that all property is "**in trust** for the use, purpose, benefit, and behoof of his religious denomination, society or church." When interpreting a statute, words must be given their plain meaning unless otherwise noted, and no words should be ignored or rendered meaningless. State v. Roggenkamp, 153 Wn.2d 614, 623-24 (2005); American Continental Ins. Co. v. Steen, 151 Wn.2d 512, 518 (2004). A statute is not ambiguous simply because different interpretations are conceivable. State v. Watson, 146 Wn.2d 947, 955 (2002). An unambiguous statute is not subject to judicial construction, even if the court believes the legislature intended something else, but did not adequately express it. Id. The express trust provisions in Washington's corporation sole statute must be given effect. As a matter of law, property held in the name of the Diocese (a corporation sole) is held "in trust."

Property held by a debtor pursuant to a statutory trust is not part of the debtor's estate. In Begier v. IRS, 496 U.S. 53 (1990), the United States Supreme Court held that

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 9

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 12 of 52

funds collected by the employer for payment of taxes were not part of the debtor's estate because they were held in a statutory trust. The Internal Revenue Service provides that funds collected or withheld "from any other person . . . to pay over . . . to the United States . . . shall be held to be a special fund in trust for the United States." 26 U.S.C. §7501. Thus, because the funds never belonged to the debtor, the funds collected were not part of the bankruptcy estate.

Likewise, in Megafoods Stores, Inc., 163 F.3d 1063 (9th Cir. 1998), because state law prescribed that state sales taxes were "held in trust for the state," the funds collected by the debtor were not part of the debtor's bankruptcy estate. The court held that §541(d) of the Bankruptcy Code precluded the inclusion of property over which the debtor held only legal, but not equitable title in accordance with a statutory trust. Id.

Based on the express statutory trust created by Washington's corporation sole statute, parish property held by the Diocese "in trust" cannot be included in the Diocese's estate as a matter of law.

**B.**   **The Diocese Holds Property for the Benefit of Parishes Pursuant to Express Trusts.**

An express trust arises when the grantor clearly intends to transfer property to one person for the benefit of another. Hoffman v. Tieton View Meth. Ch., 33 Wn.2d 716 (1949). To determine if an express trust exists,

> the entire instrument and its general purpose and scope may, and where necessary should, be considered, and its various parts compared. **The instrument should be construed in the light of**

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 10

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 13 of 52

**the situation and circumstances surrounding its execution**.
54 Am.Jur. 63, 64, § 53. (Emphasis added)

Hoffman, 33 Wn.2d at 726.

A grantor is not required to utilize a particular form of words in creating a trust. Dukeminier & Johanson, *Wills, Trusts and Estates*, p. 567 (6th ed. 2000). For instance, language restricting the use of property for a particular charitable purpose in the granting deed works to create an express charitable trust without utilizing the words "trust" or "trustee." Niemann v. Vaughn Cmty. Church, 118 Wn. App. 824, 836 (2003). Instead, the sole requirements for a valid trust are that the grantor manifest an intention to create a trust relationship and the grantor make an effective transfer of the trust property to the trustee. Hoffman, 33 Wn.2d at 726; Restatement (3rd) *Creation of Trusts*, Introductory Note, p. 144. The manifestation of intent "may be made by conduct as well as by words." Diel v. Beekman, 7 Wn. App. 139, 145 (1972), *overruled on other grounds,* Chaplin v. Sanders, 100 Wn.2d 853 (1984).

## 1.    Part Performance Removes an Oral Trust From the Statute of Frauds.

The Litigants recite the general rule in Washington that an express trust of real estate is subject to the statute of frauds, that is, it generally must be in writing, and may not be established by parol. RCW 64.04.010, 64.04.020; Dowgialla v. Knevage, 48 Wn.2d 326 (1956). But this is not the end of the analysis. Because the purpose of the statute of frauds is to "prevent a fraud, not to perpetuate one," there are various exceptions to the rule that allow Washington courts to disregard the statute under

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 11

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 14 of 52

appropriate circumstances. <u>Richardson v. Taylor Land Etc. Co.</u>, 25 Wn.2d 518 (1946); <u>Powers v. Hastings</u>, 20 Wn. App. 837, 842 (1978), *aff'd* 93 Wn.2d 709 (1980).

One applicable exception to the statute of frauds is part performance by a beneficiary in possession. <u>Richardson</u>, 25 Wn.2d at 527; <u>Powers</u>, 93 Wn.2d at 717; <u>Berg v. Ting</u>, 125 Wn.2d 544, 556 (1995). To determine if there is sufficient part performance to establish an express trust in spite of the absence of a written memorandum, Washington courts have identified three non-exclusive factors to consider: (1) possession of the property, (2) payment of consideration, and (3) the making of permanent, substantial and valuable improvements. <u>Id</u>.

These factors are to be "weighed along with all of the other evidence bearing on the problem to establish whether or not it was the intent of the parties that such a trust would result." <u>Diel</u>, 7 Wn. App. at 144. No one factor is determinative, and part performance can be found even if only two or just one factor is present. <u>Richardson</u>, 25 Wn.2d at 529; <u>Powers</u>, 93 Wn.2d at 721. The determination of each case depends upon the particular facts and circumstances. <u>Berg</u>, 125 Wn.2d at 557.

In the adversary proceeding at hand, it is undisputed that the parishes are in possession of parish property. *See* affidavits and materials filed by the Association of Parishes. In accordance with canon law, each parish administers its own parish property, separate and apart from the Diocese and other parishes. CIC 532, 1255, 1256, 1259,

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 12

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 15 of 52

1279;[5] Affidavit of Bishop Skylstad ¶¶20-25; Affidavit of Cafardi, ¶¶17-21. Parish administration, including the payment of salaries, utilities and other costs associated with the day-to-day operation of the parish are done at the parish level. Diocese's Separate Statement of Facts Nos. D15, D17, D20-21, D26, D35-37; Affidavit of Bishop Skylstad, ¶¶20-25, 30, 43. Likewise, capital campaigns for new churches, schools, or improvements to existing buildings are done at the parish level with dedicated parish funds tied to the specific project. Affidavit of Bishop Skylstad, ¶¶7, 22, 45-46, 59; Affidavit of Cafardi, ¶19. In further support, the Diocese joins and adopts the arguments, authority and evidence submitted by the Association of Parishes with regard to parish administration of parish assets.

Although ignored by the Litigants, the intention of the donors cannot be understated. Under canon law, offerings given "for a definite purpose can be applied only for that same purpose." CIC 1267 §3. This is entirely consistent with civil trust law. Further, each parish is its own separate legal entity under canon law (called a "juridic person"), endowed with its own rights and obligations, including the right to own and administer its own property. CIC 113-116, 515, 1254, 1255, 1259; Affidavit of Cafardi, ¶¶ 17-21. Offerings given to a parish "are presumed to be given to that juridic person." CIC 1267 §1.

---

[5] Canon Law is cited "CIC," which is derived from the Latin title, *Codex Iuris Canonici*. All references to canon law are supported by the Affidavit of Cafardi.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 13

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 16 of 52

Because the parishioners voluntarily participate in the church, they consent to the church rules, canons and governance structure. The U.S. Supreme Court has long recognized that:

> all who unite themselves into such a body do so with an implied consent to this [church] government, and are bound to submit to it.

Watson v. Jones, 80 U.S. 679, 729 (1871).

Given the context of canon law — to which each parishioner consents — any gifts given directly to the parishes are expressly intended for the parishes. Affidavit of Cafardi, ¶¶19-20. This applies to gifts of both personal and real property. The Diocese has no equitable interest in this parish property, even where the property is titled in the Diocese's name as the corporation sole. Id. at ¶34.

The Litigants cite Ray v. King County, 120 Wn. App. 564 (2004) for the proposition that a deed will convey fee simple title "where there is no language relating to the purpose of the grant or limiting the estate conveyed." Litigants' memo, p. 8. That case involved the transfer of property to a railroad, and a dispute whether the interest in the property transferred was in fee simple or for an easement only. In this adversary proceeding, there is no question that parish property is fee simple. This, however, does not resolve the issue of whether fee simple title is held in trust. Although not on point, the Ray case cited by the Litigants provided:

> The interpretation of such a deed is a mixed question of fact and law. **It is a factual question to determine the intent of the**

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 14

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 17 of 52

**parties**.  Courts must then apply the rules of law to determine the legal consequences of that intent. (Emphasis added).

Ray v. King County, 120 Wn. App. at 571.  Likewise, for purposes of the Litigants' motion, it is a factual question to determine the intent of the donors with regard to each piece of real and personal property at issue in this case.

>  **2.    There is No Legal Support for the Argument that the Rights of a Creditor are Superior to the Beneficiary of a Trust.**

In an argument that would make §541(d) of the Bankruptcy Code completely meaningless, the Litigants argue that "creditors' rights are senior to donors/trustors notwithstanding express trust restrictions."  Litigants' memo, p. 13.  The Litigants, however, provide no Washington authority to support this statement.

The Litigants cite a bankruptcy court decision out of the D.C. District as "directly on point."  That case, McCarthy v. Bierbower (In re Crossroad Health Ministry, Inc.), 319 B.R. 778 (Bankr. D.D.C. 2005)("Crossroads"), however, dealt with a charitable use limitation, not a trust.  Specifically, the court expressed that

> It is surprising that neither party has addressed the question of whether the D.C. Uniform Trust Code, which governs, *inter alia*, express and charitable trusts, is relevant to this dispute.

Crossroads, 319 B.R. at 782.

Regardless, the Litigants cite this case because it interpreted the dissolution provisions of a corporation statute "identical in every important way" to RCW

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 15

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 18 of 52

24.03.225.[6] But RCW 24.03.225 does not apply to a corporation sole. The dissolution provision of the applicable corporation sole statute, RCW 24.12.060,[7] refers to other sections of the Washington Corporation Act (RCW 23B). Contrary to the Litigants' argument, nothing in that applicable statute provides that property held in trust must be converted and used to pay creditors. Such a provision would require a trustee to violate fiduciary duties, and would improperly divest third party beneficiaries of their rightful interests in their property.

Given the autonomy of the parishes and the Diocese as provided by canon law[8] — especially when read in conjunction with the corporation sole statute, which provides that the Diocese holds church property "in trust," and must act "in conformity" with church law — parish property held by the Diocese is held only in trust. At the very least, a consideration of whether parish property was intended to be held by the Diocese in trust only is dependent on the factual circumstances, including the donor's intent, surrounding each piece of property that would preclude determination of this issue in the Litigants' favor as a matter of law on summary judgment.

---

[6] The Litigants actually cite RCW 24.04.225, which doesn't exist. Litigants' memo, p. 14.

[7] The Litigants mis-cite this section as RCW 24.14.060. Litigants' memo, p. 14.

[8] *See* Diocese's memo in support of Cross-Motion, Sec. V, C; Affidavit of Cafardi; and Report of Pontifical Council for the Interpretation of Legislative Texts, attached as Exhibit D.

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 16

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 19 of 52

**C.** **A Constructive Trust Arises to Prevent an Inequitable Result.**

A constructive trust is an equitable remedy that usually arises when a person wrongfully obtains property that belongs to another, or where the retention of property would result in the unjust enrichment of the person retaining it. <u>Estate of Krappes</u>, 121 Wn. App. 653 (2004); <u>City of Lakewood v. Pierce Cty.</u>, 144 Wn.2d 118, 126 (2001). Reasons for imposing a constructive trust typically involve fraud, misrepresentation, bad faith, or overreaching. The Litigants' entire discussion of constructive trusts consists of the statement that "there is no evidence of any misconduct by the Diocese that would give rise to a constructive trust." Litigants' memo, p. 15.

While the Bishop certainly agrees that there has been no misconduct with regard to the property at issue, constructive trusts are also imposed in broader circumstances not requiring wrongdoing. <u>Baker v. Leonard</u>, 120 Wn.2d 538, 547 (1993); <u>Consulting Overseas Mgmt., Ltd. v. Shtikel</u>, 105 Wn. App. 80, 87 (2001), *review denied*, 145 Wn.2d 1003 (2001). For instance, if an express trust fails due to a violation of the statute of frauds (assuming no partial performance or some other exception),

> a court will often impose a constructive trust in favor of the beneficiary, with the same result as if the trustor had succeeded in creating the express trust after all.

1 Wash. Prac. *Trusts* § 30.4, p. 665, *citing* <u>Mehelich v. Mehelich</u>, 7 Wn. App. 545 (1972).

In <u>Mehelich</u>, the court analyzed findings of fact to determine if they supported a constructive trust. That court determined:

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 17

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 20 of 52

> [w]here, for any reason, the legal title to property is placed in one person under such circumstances as to make it inequitable for him to enjoy the beneficial interest, a trust will be implied in favor of the persons entitled thereto. This arises by construction of equity, independently of the intention of the parties. (Quotations and citations omitted, emphasis added)

Mehelich, 7 Wn. App. at 549.

This court, after reviewing all the facts and circumstances surrounding the transfer of each piece of parish property, in order to avoid an inequitable result, can impose a constructive trust regardless of the language of the deeds. In this regard, the Diocese joins and adopts the argument, authority and evidence submitted by the Association of Parishes with regard to the donations, gifts and acquisition of parish property.

**D.  A Resulting Trust Arises Where the Grantor Did Not Intend the Person Holding Legal Title (the Diocese) to also have Equitable Title.**

While an express trust is intentionally created between the parties of the trust agreement, a resulting trust is a trust that results from the facts and circumstances of a situation by implication of law. As explained by the court:

> An express trust is created only if the settlor manifests an intention to create it, although the manifestation may be made by conduct as well as by words. A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property. In other words, an express trust is created if it appears that there was an affirmative intention to create it; whereas in the case of a resulting trust, the circumstances indicate the absence of an intention to give the

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 18

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

beneficial interest to the person in whom the legal title to the property is vested.

Diel v. Beekman, 7 Wn. App. at 145-146.

A resulting trust arises by operation of law to return property to the original grantor in circumstances where the grantor did not intend the person holding legal title to also have equitable title. Under Washington law, a resulting trust is an equitable remedy that arises

> where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property.

Thor v. McDearmid, 63 Wn. App. 193, 205 (1991) (*quoting* Engel v. Breske, 37 Wn. App. 526, 528 (*quoting* 5 Scott, *Trusts* § 404.1, at 3213 (3d ed. 1967))).

Generally, the resulting trust is found because "the person who holds the property is not entitled to the beneficial interest." In re Washburn & Roberts, Inc., 795 F.2d 870, 872 (9th Cir. 1986) (internal citations omitted).

In the instant case, a resulting trust may arise if a parishioner donates property to a specific Parish, and intends to convey the interest in the property to the Parish. Due to Washington's corporation sole statute, legal title is placed in the name of the Diocese, which is under a legal and ecclesiastical obligation to hold the property "in trust" for the benefit of the Parish. If the purpose of the grant fails, and the donor gave no indication of a greater charitable intent, the property will revert back to the granting parishioner. In no

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 19

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 22 of 52

event could the property donated to the parishes be diverted to another use — such as paying diocesan creditors.

Again, such a consideration by the court must necessarily include the facts and circumstances surrounding the transfer of tens of thousands of pieces of disputed property, that is to say each and every donation since 1915 and beyond.

**E.    Parish Property is Restricted, Even if Property of the Estate.**

Even if considered property of the estate, the properties of parishes are subject to restrictions based on the patterns of donations, administration and other circumstances related to how these assets were donated or acquired.  For example, when a special need (i.e., parish building) is identified, a special fundraising initiative is undertaken at the parish level.  Such dedicated funds are administered in a restricted way to assure that those funds are spent only for the purpose for which they were collected, and no other. *See* Affidavit of Bishop Skylstad ¶¶7, 22, 45-46, 59; Affidavit of Cafardi, ¶19; and affidavits and materials filed by the Association of Parishes.  This is consistent with canon law, which provides that "offerings given for a definite purpose can be applied only for that same purpose."  CIC 1267 §3.

The estate has "no greater rights in property than those held by the debtor prior to the bankruptcy."  <u>Coupon Clearing Service</u>, 113 F.3d at 1099.  The legislative history of §541 confirms this:

> To the extent such an interest [in property] is limited in the hands
> of the debtor, it is equally limited in the hands of the estate.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 20

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 23 of 52

124 CONG. REC. H 11,096 (Sept 28, 1978). Accordingly, parish property acquired using dedicated funds is restricted, and would not be available to Diocesan creditors as a matter of law.

Based on the explicit terms of Washington's corporation sole statute, the Diocese's Articles of Incorporation, canon law, and Washington's trust law, this court should determine as a matter of law that parish property is held only "in trust" by the Diocese and is not part of its estate. Even if part of the estate, such property would be restricted and not available to Diocesan creditors. At the very least, the issues of donor intent and the factual circumstances surrounding the acquisition, transfer or administration of each piece of parish property precludes summary judgment in the Litigants' favor as a matter of law.

## IV. UNDER WASHINGTON LAW, THE PARISHES HAVE A LEGAL EXISTENCE THAT,WHILE CLOSELY RELATED TO, IS LEGALLY SEPARATE AND DISTINCT FROM THE DIOCESE.

The Tort Litigants assert that the parishes are "unincorporated associations." Litigants' Statement of Facts, No. 23. The Debtor generally agrees with the Tort Litigants on this crucial point.[9] Washington state civil and common law recognize the separate legal status of unincorporated associations.

---

[9] Canon law truly defines the complex relationship between a diocese and the parishes within the Catholic Church. The Church does not neatly fit into the structures created by civil law. The concept of an unincorporated association, however, is a close analogy under civil law.

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 21

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 24 of 52

An "unincorporated association" is defined as "a body of individuals acting together for the prosecution of a common enterprise." 6 Am.Jur.2d, *Associations and Clubs* § 1, p. 393. Washington's Supreme Court has recognized that "associations vary in their nature." <u>Riss v. Angel</u>, 131 Wn.2d 612, 635 (1997). Unincorporated associations include groups of individuals of a particular religion or creed. *See* <u>Bacon v. Gardner</u>, 38 Wn.2d 299 (1951); <u>Church of Christ v. Carder</u>, 105 Wn.2d 204 (1986).

In Washington and the 9th Circuit, unincorporated associations have the legal capacity to sue and to be sued. Cases by and against unincorporated associations are legion. In addition to the cases cited above, s*ee* <u>Hairston v. Pac-10 Conference</u>, 101 F.3d 1315 (9th Cir. 1996); <u>Hispanic Taco Vendors, WA v. City of Pasco</u>, 994 F.2d 676 (9th Cir. 1993); <u>Int'l Assoc. of Firefighters v. Spokane Air</u>, 146 Wn.2d 207, 213-214 (2002); <u>Save v. Bothell</u>, 89 Wn.2d 862, 866 (1978); <u>Labonite v. Cannery Workers' and Farm Laborers' Union et al.</u>, 197 Wash. 543, 550 (1938)(unincorporated associations "can be sued and judgments against them are valid").

In addition, by statute, unincorporated associations in Washington have the legal capacity to appear and represent their interests in declaratory judgment actions. RCW §§7.24.110 – .130. Indeed, the Tort Litigants themselves recognized the parishes' capacity to be sued as they did just that — they named and served each parish as an individual defendant in this adversary proceeding, which in essence, requests declaratory relief, namely a declaration by this court that the parish property is property of the Debtor's estate.

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 22

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 25 of 52

Washington cases and statutory authority that recognize an unincorporated association's legal capacity are significant because Bankruptcy Rule 7017 (which incorporates Fed.R.Civ.P. 17(b)) provides that the legal capacity of an entity to sue or be sued "shall be determined by the law of the state in which the district court is held." As a matter of law, unincorporated associations have the legal capacity to sue and be sued in Washington. Cases from other jurisdictions are irrelevant.

Moreover, the Bankruptcy Code clearly recognizes the right of an unincorporated association to be a debtor. Code Section 101(13) defines "debtor" to include "person." A "person" is defined in the Code to include a "corporation." Section 101(41). A "corporation" is further defined to include an "unincorporated association." Section 101(9)(A)(iv). The Ninth Circuit has specifically recognized the right of an unincorporated association to be a debtor in bankruptcy. *See* In Re General Teamsters, 265 F.3d 869 (9th Cir. 2001).

There is simply no legal prohibition under Washington State or federal law to prevent this Court from determining that the parishes — which have daily operational autonomy *in fact*, and which are separate and distinct juridic entities under canon law — also have a concurrent legal status, as unincorporated associations, under civil law.

Washington has no statute which specifically authorizes ownership of real property by an unincorporated association.[10]  Because of this infirmity under Washington civil

---

[10]  There are cases in Washington, however, where the courts have recognized an unincorporated association's legal capacity to own real property. (See *for example*, Bacon v. Gardner, 38 Wn.2d 299

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 23

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 26 of 52

law, parish real property in Washington state is held in the name of the corporation sole, rather than in the name of the parishes themselves. Washington's corporation sole statute expressly provides that the corporation sole holds all property, not for itself, but "in trust." RCW 24.12.030.

Although an unincorporated association in Washington may not hold title to real property in its own name, **an unincorporated association in Washington can be the beneficiary of a trust**. Leslie v. Midgate Center, Inc., 72 Wn.2d 977 (1967). In that case, property was transferred in trust to an unincorporated association. That court cited and followed 1 Restatement (Second) of Trusts, §119 (1959) comment (a), and stated unequivocally:

> **whether or not it has capacity to take or hold legal title to property, it [an unincorporated association] has capacity to be the beneficiary of a trust.** (Emphasis added)

Leslie, 72 Wn.2d at 982.[11]

Accordingly, the parishes, as unincorporated associations, can be the beneficiary of a trust regarding property held by the Diocese.

Either as unincorporated associations under civil law, or as juridic persons under canon law, parishes have sufficient legal capacity to hold an equitable interest in parish

---

(1951) (one unincorporated association transferred ownership of real property to another unincorporated association).

[11] Washington Supreme Court in Leslie also cites favorably: 2 Scott, *The Law of Trusts*, §119 (2nd ed. 1956); Bogert, *The Law of Trusts and Trustees*, §167 (2d ed. 1965); 6 Am.Jur.2d *Associations and Clubs* § 23 (1963); and 54 Am.Jur. *Trusts* §137 (1945).

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 24

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 27 of 52

property.  Any doubt on this issue was laid to rest when the state legislature enacted the corporation sole statute in 1915.  The purpose of that statute was to bridge the gap between civil law and canon law.  The statute on its face expressly allows the church to govern itself "in conformity with the constitution, canons, rules, regulations or discipline of [the] church."  RCW 24.12.010.  Under Canon Law, the parishes are separate juridic persons capable of acquiring, retaining and administering their own real and personal property, CIC 515, 1255, 1256.  The capacity of parishes to acquire and retain an interest in parish property, thus, is recognized under civil law.

Cases from other jurisdictions in which the courts determined that a diocese and a parish were one and the same for legal purposes, including F.E.L.,[12] were generally based on the principle that an unincorporated entity was not a legal entity with the capacity to hold title to property, or to sue or be sued.  As discussed, Washington, the 9th Circuit and the Bankruptcy Code recognize the legal capacity of unincorporated associations to be the beneficiary of a trust, a debtor in bankruptcy, and to sue and be sued.  The authority cited by the Litigants simply does not preclude the parishes from having an equitable or beneficial interest in ecclesiastical property held "in trust" by the Diocese, which is a separate legal entity, a corporation sole.

---

[12] The Litigants rely chiefly on F.E.L. Pub. v. Catholic Bishop of Chicago, 754 F.2d 216 (7th Cir. 1985) *cert. denied*, 474 U.S. 824 (1985) for the proposition that parishes within a diocese are not legal entities separate and independent from the diocese.  What the litigants fail to point out is that unincorporated associations are not recognized in Illinois, and they are recognized in Washington. Simply stated, the basis for the result in F.E.L. does not apply at all in our case in Washington State.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 25

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

Under Code §541, the equitable interest of a non-debtor cannot be included in the debtor's estate. In this case, the equitable interest of the parishes, as separate unincorporated associations, cannot be included in the estate of the Diocese.

### V.   THE DIOCESE IS NOT ESTOPPED FROM ASSERTING A TRUST CONSISTENT WITH ECCLESIASTICAL AND SECULAR LAW.

The Tort Litigants assert that the Diocese is "judicially estopped" from arguing that parish property is not part of the bankruptcy estate. Litigants' memo, p. 18. Judicial estoppel is an equitable doctrine that prevents a party from asserting contrary positions in different legal proceedings in order to gain an advantage. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). The position taken by the Diocese in its bankruptcy petition with respect to parish property, is not inconsistent with any assertions made in previous litigation.

The Supreme Court identified three non-exclusive factors to determine whether judicial estoppel applies: (1) a party's later position must be "clearly inconsistent with its earlier position," (2) the party must have succeeded in persuading a court to accept the earlier inconsistent position, and (3) the party would gain an unfair advantage or prejudice a party who has acquiesced or relied on the former inconsistent position. New Hampshire v. Maine, 532 U.S. at 750-751.

The Litigants cite to two Washington cases (one of which is unpublished) in which the Catholic Bishop of Spokane was a party. In both cases, the Litigants misrepresent the factual circumstances, the issues involved, and the Diocese's legal positions in order to

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 26

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 29 of 52

manufacture an inconsistent position. In neither of these cases, however, did *any* party raise or litigate the issue of which church entity had equitable versus legal ownership in parish property.

In the first case, <u>Munns v. Martin</u>, 131 Wn.2d 192 (1997), the St. Patrick Parish Building Committee, a <u>parish</u> committee, sought a permit to demolish St. Patrick's school in Walla Walla and replace it with a new pastoral center. <u>Id</u>. at 197. The Diocese was involved as the legal owner of the property, but acted only **"through the St. Patrick Building Committee."** <u>Id</u>. At no time were the interests of the parish and the Diocese adverse. Because the Diocese and parish were working together, there was never any issue raised or litigated as to equitable ownership, trusts or other property rights as between the two.

In that case, six members of the parish and one outsider formed a group to preserve the school building as an historic structure. The issue litigated was whether Walla Walla's local demolition permit ordinance unconstitutionally burdened the free exercise of religion. The basis for that suit had nothing to do with who owned the subject property. That court specified in dicta that the Spokane Diocese held title to the property pursuant to RCW 24.12 as a corporation sole "in conformity with the constitution, canons, rules, regulations or discipline" of the Roman Catholic Church. <u>Id</u>. at 196 n.1.

Applying the <u>New Hampshire v. Maine</u> factors: (1) the Diocese's involvement in <u>Munns</u>, as the legal owner of the property in accordance with the corporation sole statute and canon law, is not inconsistent with the Diocese's current position that it holds legal

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 27

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 30 of 52

title to parish property in trust in accordance with the corporation sole statute and canon law; (2) the Diocese did not persuade that court (nor even raise the issue) that no trust existed or that the parish had no equitable interest in the property; and (3) the Litigants can show no evidence that they were prejudiced because the Diocese holds legal title to St. Patrick's, a fact that is undisputed, even in the current litigation. Collateral estoppel simply does not apply to prevent the Diocese from asserting a trust in accordance with secular and ecclesiastical law — an issue that was never raised or litigated in <u>Munns</u> (and certainly was not necessary to resolve that dispute).

The second case cited by the Litigants is an unpublished opinion, <u>Miller v. Catholic Bishop of Spokane</u>, 2004 WL 2074328 (Wn. App. 2004). *See* Litigants' memo, p. 19. Unpublished decisions have no precedential value, and may not be cited as authority. LR 7.1 (g)(2); RCW 2.06.040. Reliance on an unpublished opinion is "plainly improper." <u>State v. Creekmore</u>, 55 Wn. App. 852, 868 (1989).

> Unpublished opinions of the Court of Appeals will not be considered in the Court of Appeals and should not be considered in the trial courts. They do not become a part of the common law of the State of Washington.

<u>State v. Fitzpatrick</u>, 5 Wn. App. 661, 668 (1971).

Regardless, that case also had nothing to do with what church entity had equitable versus legal title to church property. In that case, the plaintiff was injured when she fell at Sacred Heart Catholic Church in Springdale, Washington. She sued the Spokane Diocese as the legal owner of the property. (Again, there is no dispute that the Diocese

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 28

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 31 of 52

holds legal title to church property).  The litigation in that case involved a landlord's duty to a licensee.  Plaintiff's claims were dismissed on summary judgment because the hazard at issue was open and obvious.

At no time did any party raise or litigate the issue of whether the parish had a beneficial or equitable interest in the parish property.  Neither did the Diocese make any assertions that are inconsistent with its current position that it holds legal title in trust pursuant to secular and ecclesiastical law.  So even if it weren't improper for the Litigants to cite and rely on this unpublished case, it simply does not support the Litigants' estoppel argument.

Finally, even though not part of any judicial proceeding, the Litigants cite to various provisions of the Diocese's Policy and Procedure Manual in an effort to allege inconsistencies with its current position, which is based on canon law.  Many of the cited provisions are incomplete or are taken out of context.  *See* Diocese's Response to Litigants' Statement of Facts.  Regardless, such provisions cannot be contrary to canon law because the very purpose of the diocesan policy manual is to give effect to canon law.  The Manual

> reflects the ongoing effort of the Bishop of Spokane to fulfill his obligation and right (1) to protect the unity of the universal Church through urging the observance of ecclesiastical laws (cf. C 392 § 1) (2) to enact legislation for his own diocese (C 391 § 2); and (3) to determine the methods to be observed in applying the law or clarifying the law's prescripts (CC 32-34) . . . **In the application of universal law to this particular church, decrees or instructions contrary to [canon] law lack all force (CC 33**

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 29

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 32 of 52

**§ 1, 34 § 2).** "A lower legislator cannot validly issue a law contrary to higher law." (Cf. C 135 § 2). (Emphasis added)

Diocesan Policy Manual, Section 1.00.01, attached as Exhibit 10 to Affidavit of Stang.

Therefore, nothing in the diocesan manual can be interpreted inconsistently with the canon law to destroy the separate existence and autonomy of the public juridic personality of the parishes from each other and from the diocese. *See* Affidavit of Cafardi, ¶¶41-42; Affidavit of Bishop Skylstad, ¶64.

## VI. THE LITIGANTS' ALTER EGO ANALYSIS WOULD DENY THE DIOCESE THE RIGHT TO GOVERN "IN CONFORMITY" WITH CANON LAW

Citing a principle applicable to business corporations, the Litigants assert that the Diocese "so dominates and controls" the parishes that such parishes are its "alter ego," and the court is justified in "piercing the corporate veil" and holding that the Diocese and parishes are one and the same. Litigant's memo, p. 20. This is a misapplication of the alter ego doctrine.

Washington's Supreme Court has stated that the alter ego theory, which allows a court to pierce the corporate veil and impose personal liability upon a principal,

> is applied when the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist. (citations omitted)

Grayson v. Nordic Construction Co., Inc., 92 Wn.2d 548, 553 (1979). The doctrine is most commonly used to impose personal liability upon corporate officers for fraud

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 30

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 33 of 52

committed by a corporation.  <u>Standard Fire Ins. v. Blakeslee</u>, 54 Wn. App. 1, 5-6 (1989).
It is also recognized to impose liability on a corporation for individual acts of
shareholders who owned all or substantially all of the corporation's stock.  <u>Id</u>.

The Litigants cite no cases in which this doctrine, developed to impute liability,
has been extended to defeat a trust.  Nor do the Litigants cite any cases in which the alter
ego doctrine has been applied to a religious corporation sole to prevent it from structuring
and governing itself in accordance with its own ecclesiastical rules.  Underlying the
Litigant's position is the mistaken notion that the Catholic Church and General Motors
have the same corporate governance structures and theories of liability apply equally to
organizations that feed souls and make cars.  As a corporation sole, the Diocese governs
itself "in conformity with the constitution, canons, rules, regulations or discipline of [the]
church."  RCW 24.12.010.  There is simply no evidence that the Diocese disregarded the
corporate entity or the canon law under which the corporation is governed.  The Diocese's
current position, that it cannot usurp the ownership rights of the parishes, is entirely
consistent with canon law.  The Litigants' "evidence" of the Diocese's domination and
control reflects ecclesiastical requirements and duties of the Bishop, and the hierarchical
polity of the Roman Catholic Church.

According to canon law, and as officially interpreted by the Pontifical Council for
the Interpretation of Legislative Texts, ownership of ecclesiastical property

> **always belongs to each pubic legal entity, who are each
> individually responsible for it**. . . Canon Law makes a clear

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 31

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 34 of 52

distinction and sets forth the autonomy one from the other of the
various ecclesiastical entities.

Report of Pontifical Council for the Interpretation of Legislative Texts, p. 2, attached to

Affidavit of Cafardi, Exhibit D.

The Bishop is charged with the task of supervision, not management.
"Supervision *does not* therefore, include the right of *standing in* for representation." <u>Id</u>.
at p. 4. The Bishop

has the right and duty of overseeing the management of property
belonging to juridic entities that are subject to him (see canon
1276, § 1), and of supervising the canonical legal entities within
the limits set by law (see canons 392, § 2, 325, § 1).

The need for a higher level of control is determined by the very
nature of ecclesiastical property and by its public character.
**Therefore, it should not be conceived as a limitation on the
entity's autonomy, but rather as a *guarantee* of same**.

<u>Id</u>. at p. 3. *See also* Affidavit of Bishop Skylstad, ¶¶11, 27, 31. It simply cannot be

argued that the Bishop's actions in supervising and overseeing his diocese is evidence that

he has usurped the ownership of other juridic entities. The Bishop's supervision and

oversight is entirely consistent with canon law, and with his role as trustee.

Matters of internal church hierarchy, administration and government are "at the

core of ecclesiastical affairs." <u>Serbian Orthodox Diocese v. Milivojevich</u>, 426 U.S. 696,

721 (1976). When discussing the polity of the Serbian Orthodox church, the Supreme

Court provided:

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 32

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 35 of 52

> the bishop of a church is clearly one of the central figures in such a hierarchy and the embodiment of the church within his Diocese, and the Mother Church constitution states that "[h]e is, according to the church canonical regulations, chief representative and guiding leader of all church spiritual life and church order in the diocese."

Id. at 717.

Likewise, a Catholic bishop is the spiritual and administrative leader of his diocese. Affidavit of Bishop Skylstad, ¶7. Application of an alter ego analysis would necessarily require the consideration of the internal structure or polity of the diocese, including the bishop's functions and duties with regard to parishes and other juridic entities. This would clearly entangle the courts in religious doctrine in violation of the constitution. Id. at 722-723; *see also*, Md. & Va. Churches v. Sharpsburg Ch., 396 U.S. 367, 368-370 (1970) (Brennan, J., concurring).

This analysis leads to the Diocese's other main point: the Tort Litigants have not applied the correct law to this church property dispute. Although property rights under §541 must be determined by state law, the Litigants ignore Washington State law applicable to the determination of church property disputes. Washington courts, in accordance with the U.S. Constitution and the U.S. Supreme Court, have adopted a strict compulsory deference rule.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 33

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 36 of 52

**VII.   STATE AND FEDERAL LAW REQUIRE JUDICIAL DEFERENCE IN REVIEWING DISPUTES CONCERNING THE OWNERSHIP AND CONTROL OF CHURCH PROPERTY.**

The property of the estate question raised in this adversary proceeding can be entirely resolved in the Diocese's favor according to Washington's corporate, property and trust law, as outlined above.  Washington's corporation sole statute, under which the Diocese operates, expressly creates a trust which must be administered in conformity with the law, custom, and principles of the Catholic Church.  In this case, the Code of Canon Law and other relevant theological, doctrinal and pastoral principles are binding on the Diocese with regard to the administration of the temporal goods (property) of the Church.  By operation of state law, and *in fact*, the parish property at issue in this adversary proceeding is indisputably subject to both civil and ecclesiastical trust obligations.

Although civil law and canon law are entirely consistent in this respect, the Litigants urge this court to find some irreconcilable conflict between the operation of the civil law and the requirements of the ecclesiastical law, and apply only the Litigants' version of the civil law.  There is no need for this court to take such a path.  Should the court be tempted to follow this path, it would create a constitutional infringement and call into play constitutional principles which, in the end, would require deference to the ecclesiastical principles outlined herein.[13]

---

[13] For example, in <u>Serbian Orthodox Diocese v. Milivojevich</u>, 426 U.S. 696 (1976), the Supreme

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 34

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

Under the relevant case law of the United States Supreme Court, churches have the power to organize and govern themselves according to religious law, doctrine and principle. Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 116 (1952). That court recognized that religious organizations enjoy

> a spirit of freedom . . . and independence from secular control or manipulation – in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.

The state lacks the power to dictate organizational choices to religious bodies. The internal structure or "polity" of the religious body reflects deeply felt choices about how religious doctrine requires the body to organize itself in the civil society. Mark E. Chopko, Stating Claims Against Religious Institutions, 44 B.C.L.Rev. 1089, 1095, 1103-4 (2003). Washington's corporation sole statute respects these principles by deferring, in a very real sense, to the power of self-government within a religious community. The statute allows the Diocese to organize itself and operate "in conformity with" ecclesiastical law. RCW 24.12.010.

At the heart of this adversary proceeding is the question of which church entity, within the structure of the Roman Catholic Church, has beneficial or equitable ownership of ecclesiastical (parish) property — the Diocese or the parishes. The court's jurisdiction to resolve this issue regarding the ownership of ecclesiastical property as between church

---

Court noted that the taking of expert testimony to resolve a question of the internal law of that church violated the autonomy principles embodied in the Constitution.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 35

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 38 of 52

entities is "severely circumscribed" by the First Amendment to the Constitution. Presbyterian Church v. Hull Church, 393 U.S. 440, 449 (1969). A civil court may not entangle itself in ecclesiastical matters. When considering a dispute regarding the ownership of church property as between church entities, civil courts must defer to the rules and decisions of the hierarchical church authority. *See* Watson v. Jones, 80 U.S. 679 (1871) and its progeny, discussed in the Diocese's memo in support of Cross-Motion, Sec. IV. Such deference ensures that the state respects the proper separation of church and state, and does not entangle itself in ecclesiastical matters in violation of the Constitution.

Washington is one of seven states that has adopted a strict compulsory deference rule (also referred to as the "church polity" rule), and expressly rejected the alternative "neutral principles" approach advocated by the Tort Litigants. Southside Tabernacle v. Church of God, 32 Wn. App. 814, 818-820 (1982); Organization of Lutherans v. Mason, 49 Wn. App. at 441, 446-447 (1987); *See* Diocese's memo in support of Cross-Motion, Sec. V, B.

## A. This Court Is Required to Apply Washington Law, Not "Neutral Principles."

Contrary to both federal and state law, the Litigants argue that this court should not follow Washington law and defer to ecclesiastical authority, but is "required" to apply "neutral principles" to resolve this church property dispute. Litigants' memo, p. 23.[14]

---

[14] A "neutral principles" analysis would still lead to the conclusion as a matter of law that the Diocese holds parish property only "in trust." *See* Diocese's memo in support of Cross-Motion, Sec.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 36

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 39 of 52

The Litigants cite <u>Jones v. Wolf,</u> 443 U.S. 595 (1979), but fail to acknowledge that court's explicit ruling that states are *not* required to follow a neutral principles approach, but are free to adopt <u>Watson's</u> compulsory deference rule:

> The First Amendment does not dictate that a State must follow a particular method of resolving church property disputes. Indeed, "a State may adopt *any* one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters. . ." (Emphasis in original)

<u>Jones v. Wolf</u>, 443 U.S. at 602.

While the Litigants' cite the Washington case of <u>Southside Tabernacle v. Church of God</u>, 32 Wn. App. 814 (1982), they fail to disclose the holding in that case. That court recognized the Washington Supreme Court <u>expressly rejected</u> the "neutral principles" approach in favor of a strict compulsory deference rule. *See* <u>Southside Tabernacle</u>, 32 Wn. App. at 820; *See also* <u>Organization of Lutherans v. Mason</u>, 49 Wn. App. at 447 ("When the Washington Supreme Court had the opportunity to rule upon a church property dispute, **the court expressly rejected the neutral principles method and, instead, reaffirmed the polity approach of <u>Watson v. Jones.</u>**")

The 9th Circuit has likewise recognized that states may adopt the rule of deference to the hierarchical authority. <u>Maktab Tarighe Oveyssi Shah v. Kianfar</u>, 179 F.3d 1244, 1249 (9th Cir 1999). In that case out of California (a state that has adopted a neutral principles approach), the 9th Circuit acknowledged:

---

VIII. But that is not the correct law to apply in Washington.

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 37

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 40 of 52

> Civil courts may follow <u>Watson v. Jones</u>, 80 U.S. (13 Wall.) 679 (1871), and its progeny, in deferring to the decision-making authorities of hierarchical churches. Under that approach, the court avoids entanglement in religious issues by accepting the decision of the established decision-making body of the religious organization. *See* <u>Serbian Eastern Orthodox Church</u>, 426 U.S. at 708-09. This approach is most easily employed when there is no dispute between the parties concerning the hierarchical nature of the church or the identity of its decision-making body. *See* <u>id</u>. at 715 & n.9.

<u>Maktab</u>, 179 F.3d at 1248.

There is no dispute that the Roman Catholic Church is hierarchical and governed by Canon Law. And there is no dispute that Washington courts (unlike Oregon and California) apply <u>Watson's</u> polity/compulsory deference rule, and reject the neutral principles approach. *See* <u>Southside Tabernacle v. Church of God</u>, 32 Wn. App. at 820; <u>Organization of Lutherans v. Mason</u>, 49 Wn. App. at 447.

A debtor's interest in property is "created and defined" by state law, with the bankruptcy estate having no greater rights in property than those held by the debtor prior to bankruptcy. <u>Butner v. United States</u>, 440 U.S. 48, 54-55 (1979). In determining what property is part of the Debtor's estate under §541, the Bankruptcy Court must look to state law. Washington law requires strict compulsory deference to church authority to determine the Diocese's interest in parish property. Relevant ecclesiastical authority clearly establishes that the parishes are separate juridic entities; they have their own rights and duties — including the right to own property; and the Diocese cannot usurp the ownership of a separate juridic entity, or convert parish property to satisfy its own debts.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 38

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 41 of 52

*See* Diocese's memo in support of Cross-Motion, Sec. V, C; Affidavit of Bishop Skylstad; Affidavit of Cafardi; and Report of Pontifical Council for the Interpretation of Legislative Texts, attached as Exhibit D.

## B. The Tort Litigants Have Created a Church Property Dispute of the First Magnitude.

The Tort Litigants assert that the <u>Watson</u> rule of deference to church authority is not applicable because this case is a dispute between the Debtor and its creditors, not an intra-church dispute. Litigants' Memo, pg. 23. Ignoring the fact that this would likewise make inapplicable the Litigants' own "neutral principles" analysis[15], this narrow distinction of how the issue was raised, <u>rather than the nature of the issue itself</u>, misses an essential point. Neither the validity, nor the extent of the Tort Litigants' claims against the Diocese, is at issue <u>in this adversary proceeding</u>. The crucial issue in this adversary proceeding is whether the assets of the parishes are, or are not, property of the estate of the Diocese, which is the Debtor in this case. This crucial issue, in turn, depends on <u>which church entity</u> has the beneficial ownership of parish assets — the Diocese or the parishes.[16]

---

[15] Under <u>Jones v. Wolf</u>, states can adopt either Watson's polity/compulsory deference rule or the neutral principles approach to constitutionally resolve intra-church property disputes. The Tort Litigants' assertion that the court should apply neutral principles first assumes the existence of an intra-church dispute. If there were no intra-church dispute, *neither* would apply.

[16] As stated by this Court when it denied the motion to intervene of the Tort Claimants' Committee: "Both of these adversaries . . . present a clearly defined easily articulated issue. What constitutes property of the estate? Are the assets of the parishes, the schools and other members of the Diocese, property of the bankruptcy estate or not?" Verbatim Report of Proceedings and Oral Ruling on

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 39

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 42 of 52

Because of the posture of this adversary proceeding, the specific relief requested in the Litigants' Complaint and a related contested motion in the main Chapter 11 case, wherein the Plaintiff has sought and continues to seek the Debtor's §544 avoidance powers[17], this adversary proceeding (including motions related to it) in substance and reality is an intra-church dispute. To determine the rights internally among juridic persons within a church polity, the court must venture into the internal life of the Roman Catholic Church. That fact requires a particular analysis consistent with federal constitutional authority and state law. In Washington, the required constitutional analysis is compulsory deference.

### 1. The Essence of the Litigants' Complaint Pits the Diocese Against the Parishes.

The Litigants' prayer for relief in this adversary proceeding highlights the intra-church nature of this dispute. *See* Complaint for Declaratory Relief, filed February 2, 2005. [Docket No. 1] The Litigants, in the third request of their prayer for relief, ask the Court to order "the Diocese to amend its [bankruptcy] schedules and statement of assets to include parish assets as property of the estate." [Docket No. 1 at p. 15] This prayer for relief pits the Diocese directly against the parishes with regard to the ownership of ecclesiastical (i.e., church) property.

---

Tort Claimants Committee's Motion to Intervene. P. 6, ll. 11-15.

[17] The Litigants are also seeking avoidance powers under Code Sections 545, 547, 548 and 550 [see Main Case Docket no. 223]. In addition, the Tort Claimants' Committee has also jumped on the avoidance Bandwagon. [Main Case Docket No. 285].

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 40

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 43 of 52

Not surprisingly, as a result of the prayer in the Litigants' Complaint, the parishes in their Answer have reserved the right to file a cross-claim against the Diocese:

> The Parishes reserve the right to file any cross-claims against the Catholic Diocese of Spokane resulting from the relief requested by Plaintiff at Paragraph 3 Page 15 of their Complaint.

> Under Canon law and civil law, the Bishop, as an ecclesiastical dignitary of the Roman Catholic Church, holds certain real property and personal property for the benefit of certain parishes in trust. Through the juridic personality of the parish, the Christian faithful of that community raised money to support the religious mission and faith practiced by each parish through tithes, charitable contributions, specific donations, capital campaigns, and gifts.

> The temporal goods of each parish, including both real and personal property, are used by the parish in fulfillment of its religious tenets. The relief requested by Plaintiff directing the Bishop of the Spokane Diocese to claim this property for his own use and benefit is inconsistent with Canon law and civil trust law, resulting in a breach of fiduciary duty.

*See* Defendant Parishes' Answer to Complaint, Affirmative Defenses, ¶ 8, p. 7. [Docket No. 88]

The Diocese finds itself in the position of an interpleader who has been sued on the one hand for not including the parishes in its schedules, and who will be sued by the parishes if it does amend its schedules.

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 41

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 44 of 52

### 2. The Litigants Attempt to Step Into the Diocese's Shoes to Utilize §544 Against the Parishes.

There is another compelling reason for concluding that this is an intra-church dispute. Because the Diocese has not treated parish property as property of its estate, the Litigants have sought, and continue to seek, to "step into the shoes" of the Diocese for the purpose of asserting strong-arm and avoidance claims directly against the parishes under §§544, 545, 547, 548 and 550 of the Bankruptcy Code. *See* Litigants' Motion for an Order Authorizing It to Commence Avoidance Actions and supporting Memorandum filed February 8, 2005. [Main Case Docket Nos. 223 and 224][18] In seeking the Debtor's strong-arm and avoidance authority, the Litigants seek to assert arguments against the parishes in the Diocese's stead because the Diocese did not do so itself. It can hardly be said that these are the Litigants' independent third party claims.

The underlying issue to be resolved in this adversary proceeding is a dispute between Church entities regarding the ownership of Church property. The Tort Litigants cannot say what they have said and pled in their own Complaint and in their own related contested motion, and then with a straight face tell this Court that this adversary is not a dispute involving ecclesiastical property which, <u>at its heart</u>, pits the Diocese against the parishes, or pits the Litigants, using the Diocese as their legal conduit, against the parishes. <u>This adversary proceeding has nothing to do with the liability of the church, the</u>

---

[18] On May 2, 2005, this Court heard oral argument and deferred a decision on the Litigants' request for strong-arm and avoidance powers.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 42

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 45 of 52

Diocese or any of the parishes to a third party. That issue will be determined in lawsuits that were recently remanded to state court. To the contrary, through this adversary, the Tort Litigants have put in play the ownership of every Catholic-related property and entity in thirteen counties in Eastern Washington.

To support their argument that the deference rule does not apply to "third party disputes," the Litigants cite Gen. Council on Fin. and Admin. of the United Methodist Church v. Superior Court, 439 U.S. 1355 (1978). That "case" was actually an order denying certiorari and terminating a temporary stay, and is *not* a Supreme Court precedent. Justice Rehnquist wrote the order as a circuit judge, not as a Supreme Court Justice. He determined that there was not a reasonable probability that four Supreme Court justices would consider the issues presented sufficiently meritorious to grant certiorari. Even so, that case involved alleged violations of state securities laws and related theories arising out of the financial collapse of a corporation that operated numerous retirement homes and convalescent hospitals. Neither the ownership nor control of church property was at issue. Justice Rehnquist — who advocated the minority dissenting view only two years earlier in Serbian Orthodox Diocese v. Milivojevich — opined that the First Amendment compulsory deference analysis was

> not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, in which fraud, breach of contract, and statutory violations are alleged.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 43

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 46 of 52

439 U.S. at 1373. Even if this were a legal precedent that reflected the majority rule, none of these allegations are present in this adversary. On the contrary, questions of ownership rights to ecclesiastical property as between separate juridic entities within a church polity must be settled consistent with the Constitution, Supreme Court precedent and canon law.

Finally, even if one were to take the position that an intra-church dispute does not yet exist, it is obvious that granting the relief requested by the Litigants would, in and of itself, pit the Diocese and parishes against one another, thereby creating an intra-church dispute of the highest order. Where the requested result of the Litigants' argument so clearly creates an intra-church dispute, subtle arguments regarding ripeness should fall on deaf ears.

## C. **The Rule of Compulsory Deference to Church Authority Does Not Violate the Establishment Clause.**

With virtually no analysis or authority, the Tort Litigants argue that civil court deference to church authority would itself be a violation of the Establishment Clause because the Diocese would be receiving a benefit based solely on its religious status. Litigants' memo, p. 25. The lack of analysis is understandable given that this argument has been rejected by the Supreme Court. Although not disclosed by the Litigants, this argument mirrors Justice Rehnquist's *dissent* in Serbian Orthodox Diocese v. Milivojevich, 426 U.S. 696 (1976). By its very nature, this dissenting argument is contrary to the accepted rule of the case. All of the church property dispute cases that

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 44

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

follow the polity approach of <u>Watson v. Jones</u>, including the <u>Serbian Orthodox Diocese</u> case, have ruled that it is consistent with First Amendment principles — and even mandated by them — for courts to defer to church authority in these circumstances. The courts actually avoid violating the Establishment Clause by avoiding entanglement in ecclesiastical issues.

> This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.

<u>Corp. of Presiding Bishop v. Amos</u>, 483 U.S. 327, 334 (1987), <u>citing</u> <u>Hobbie v. Unemployment Appeals Comm'n of Fla.</u>, 480 U.S. 136, 144-145 (1987).

The Litigants cite <u>Board of Ed. of Kiryas Joel v. Grumet</u>, 512 U.S. 687 (1994) for the proposition that the government cannot delegate its discretionary authority to a religious group. Litigants' memo, p. 25. **But deference is not delegation**. In <u>Grumet</u>, the Supreme Court recognized that both the Free Exercise and the Establishment Clauses compel the state to pursue a course of "neutrality" toward religion. <u>Grumet</u>, 512 U.S. at 696 (*citing* <u>Committee for Public Ec. & Religious Liberty v. Nyquist</u>, 413 U.S. 756, 792-793 (1973)). Whereas delegation of discretionary governmental authority would violate this principle by impermissibly entangling government and religion, the court actually avoids entanglement in religion by deferring to the hierarchical authority on matters of church doctrine, polity, government and administration. *See* <u>Serbian Orthodox Church</u>, 426 U.S. at 708-709.

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 45

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 48 of 52

Nor is it significant that the church is allegedly receiving some benefit that is not available to the secular public:

> Where, as here, government acts with the proper purpose of lifting a regulation that burdens the exercise of religion, we see no reason to require that the exemption come packaged with benefits to secular entities.

Amos, 483 U.S. at 338.

## D. The Diocese Has Not Waived Constitutional Rights by Filing a Bankruptcy Petition.

The Tort Litigants imply that since the Diocese voluntarily sought the protection of the bankruptcy court, it may not now argue that the court lacks jurisdiction to independently consider and determine this church property dispute. But the Diocese is not asserting that the court has *no* jurisdiction to decide this property of the estate issue, it asserts only that, because this dispute concerns ecclesiastical property, the court's jurisdiction to determine this issue in this adversary proceeding is defined by the constitution.

> It is of course true that the State has a legitimate interest in resolving property disputes, and that a civil court is a proper forum for that resolution. Special problems arise, however, when these disputes implicate controversies over church doctrine and practice. The approach of this Court in such cases was originally developed in Watson v. Jones.

Presbyterian Church v. Hull Church, 393 U.S. at 445.

DIOCESE'S OPPOSITION TO LITIGANTS' MOTION - 46

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 49 of 52

The role of the court in the resolution of church property disputes is "severely circumscribed" by the First Amendment. Id. at 449. The First Amendment does not provide an exception to the rule of law, it *is* the law that must be applied. The Bankruptcy Court may resolve this dispute over church property, but must do so in accordance with church polity and by deferring to church authority. *(See* Diocese's memo in support of Cross-Motion, Section V).

The Tort Litigants have also asserted that the Diocese is attempting to be "above the law," "judgment proof" or to avoid the application of the bankruptcy rules. On the contrary, the Diocese has reported over $10 million in unrestricted diocesan assets, plus is seeking to secure approximately $15 million (or more) in potential insurance coverage, which are available to pay diocesan creditors. Section 541 of the Bankruptcy Code provides that the property of the estate does not include property held in trust for others. The determination of property rights in the assets of a debtor's estate depends on state law. The Diocese is merely seeking to apply the bankruptcy rules in a constitutional manner consistent with Washington law.

The Diocese has not taken the position that the Court does not have jurisdiction in the main Chapter 11 case. The Diocese has not even taken the position that the Court does not have jurisdiction to handle this specific adversary proceeding within the main Chapter 11 case. What the Diocese is arguing is that, with regard to specific issues in this particular adversary proceeding, the court has certain federal and state constitutional parameters within which it must make its decision.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 47

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 203    Filed 05/27/05    Entered 05/27/05 13:15:55    Pg 50 of 52

To give effect to §541, it is necessary to determine which church entity has beneficial ownership of parish assets — the Diocese or the parishes.  In Washington, ownership rights between and among hierarchical church entities may only be constitutionally resolved in accordance with ecclesiastical authority, consistent with Supreme Court precedent.

The Diocese was involved in litigation with the claimants in state court, in some cases for over two years, before the Diocese sought relief from this Court.  By filing a bankruptcy petition, the Diocese did not waive First Amendment rights.[19]   On the contrary, the Supreme Court has stated:

> The liberties of religion may not be infringed by the denial of or
> placing conditions upon a benefit or privilege.

Sherbert v. Verner, 374 U.S. 398, 404 (1963).  Whether or not the Diocese entered into the bankruptcy system voluntarily, the benefits of that system may not be conditioned upon the abandonment of fundamental religious rights guaranteed by the Constitution, rights which are unique to this country.

The First Amendment, U.S. Supreme Court precedent, and Washington State court precedent require judicial deference to the ecclesiastical authority with regard to

---

[19]  The Diocese in its filing expressly reserved all of its rights "under any applicable law, including, without limitation, Canon law, the First Amendment to the United States Constitution, the Constitution for the State of Washington, Washington's law on corporations sole Chapter 24.12 Revised Code of Washington, the Religious Freedom Restoration Act, the church autonomy doctrine, charitable trust law, Washington trust law, and the rights to object to disclosure of information and to contend that certain assets disclosed herein are not property of the estate." Exhibit A to Schedules and Statement of

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 48

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 203   Filed 05/27/05   Entered 05/27/05 13:15:55   Pg 51 of 52

ecclesiastical rules and decisions governing the ownership of church property as between church entities. As a matter of law, the property and assets of parishes, schools and other separate juridic entities are held in trust by the Diocese, and should not be included in the Diocese's bankruptcy estate. *See* Diocese's Memo in Support of Cross-Motion for Summary Judgment.

## VIII. <u>CONCLUSION</u>

Washington law does not support a judgment in favor of the Tort Litigants. On the contrary, Washington corporate, property and trust law supports the existence of a trust as a matter of law. At the very least, the Litigants' analysis raises extensive issues of fact. Moreover, the Litigants do not apply the correct law. The applicable Washington and constitutional law provides that the Diocese holds only bare legal title to parish property. As a matter of law, parish property is not part of the Diocese's bankruptcy estate.

RESPECTFULLY SUBMITTED this __27th__ day of May, 2005.

PAINE, HAMBLEN, COFFIN,
BROOKE & MILLER, LLP

By_____
Shaun M. Cross
Gerald Kobluk
Gregory J. Arpin
Attorneys for Debtor
The Catholic Bishop of Spokane a/k/a
The Catholic Diocese of Spokane

I:\Spodocs\33029\00036\plead\00319177.DOC

---

Financial Affairs, Docket No. 2.

DIOCESE'S OPPOSITION TO LITIGANTS'
MOTION - 49

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*