1  MICHAEL J. PAUKERT
2  SHAUN M. CROSS
3  PAINE, HAMBLEN, COFFIN,
     BROOKE & MILLER LLP
4  717 W. Sprague Avenue Suite 1200
5  Spokane, WA 99201-3505
6  (509) 455-6000
7  Attorneys for the Debtor

8

9

10

11              UNITED STATES BANKRUPTCY COURT

12               EASTERN DISTRICT OF WASHINGTON

13

14  In Re:                              )
                                        )
15  THE CATHOLIC BISHOP OF              )  Case No. 04-08822-PCW-11
    SPOKANE a/k/a THE CATHOLIC          )
16  DIOCESE OF SPOKANE, a               )  Adv. Proc. No. 05-80038
17  Washington corporation sole,        )
                                        )  **AFFIDAVIT OF**
18                         Debtor.      )  **NICHOLAS P. CAFARDI**
19  _____ )
    COMMITTEE OF TORT                   )
20  LITIGANTS,                          )
                                        )
21                                      )
                                        )
22                        Plaintiff,    )
                                        )
23          vs.                         )
                                        )
24  THE CATHOLIC BISHOP OF              )
25  SPOKANE, et. al.,                   )
                                        )
26                      Defendants.     )
27  _____ )

28

29  AFFIDAVIT OF NICHOLAS P. CAFARDI - 1          PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
                                                     717 WEST SPRAGUE AVENUE, SUITE 1200
30                                                 SPOKANE, WA  99201 PHONE: (509) 455-6000

STATE OF PENNSYLVANIA )
                                 ) ss.
County of Allegheny              )

NICHOLAS P. CAFARDI, being first duly sworn on oath, deposes and says:

1.    I am over the age of eighteen (18) and competent to testify and have personal knowledge to all facts set forth herein.

## BACKGROUND

2.    I am Dean and Professor of Law at Duquesne University Law School in Pittsburgh, PA. My curriculum vitae is attached to this affidavit as Exhibit "A."

3.    My education is: Bachelor in Philosophy, 1970, Gregorian University, Rome, Italy; Masters in Philosophy, 1972, Duquesne University, Pittsburgh, PA; Juris Doctor, *cum laude*, 1975, University of Pittsburgh School of Law; *Juris Canonici Licentiatus* (License in Canon Law) *summa cum laude*, 1987, University of St. Thomas Aquinas, Rome, Italy. I am currently a candidate for a Doctor of Canon Law at St. Thomas.

4.    My professional employment has been: 1975-1977, Legal Counsel to the Diocese of Pittsburgh; 1977- 1981, Assistant Dean and

AFFIDAVIT OF NICHOLAS P. CAFARDI - 2

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

Assistant Research Professor, University of Pittsburgh School of Law; 1981-1988, Legal Counsel to the Diocese of Pittsburgh; 1988-1993 General Counsel and Vice-President for Legal Services, Duquesne University; 1993-Present, Dean and Professor of Law, Duquesne University School of Law.

5.    As a canon lawyer, I have represented individuals and religious institutes before diocesan tribunals and the tribunals of the Holy See in Rome. As a canon lawyer, I have advised dioceses and religious orders on the proper civil law structures for their ministry in conformity with the canon law.

## CANON LAW OF THE ROMAN CATHOLIC CHURCH

6.    The canon law of the Catholic Church is the oldest, continually functioning legal system in the world.  It dates back to collections of church law and discipline that were assembled in the first and second centuries of the common era.  In the late middle ages and Renaissance period, it began to be collected and summarized in a more orderly fashion.  A collection including Gratian's Decree, 1140, the Decretals of Gregory IX, 1234, the *Liber Sextus* of Boniface VIII, 1298, the *Liber Septimus* of Clement V/John XXII, 1317, the Extravagantes of John XXII and the *Extravagantes Communes*, 1500, was given official status by Gregory XIII in 1580, as the *Corpus Iuris Canonici*-the

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201 PHONE: (509) 455-6000

Body or Collection of Canon Law. The *Corpus Iuris Canonici*, together with the decrees of the Council of Trent (1545-1563), were the canon law of the Catholic Church until 1917, when the *Codex Iuris Canonici* was promulgated by Benedict XV. This Code of Canon Law replaced all previous legislation. In 1983, a revision of the Code of Canon Law, incorporating the theology of the Second Vatican Council, was promulgated by John Paul II.

7.    The Canon Law of the Roman Catholic Church is both a theological and a juridical discipline. It finds its fundamental rules in the experience of a society based on faith and having as its primary purpose the proclamation of the Gospels and the saving of souls.

8.    In the Christian community, an over-all obligation of theological origin exists prior to any law. It is the bond that binds the faithful to God and to each other. Canon law gives directions in detail as to how to fulfill this principal obligation in daily life. Canon law, in its essence, depends on a pre-existing theological reality.

9.    It is therefore impossible to read the juridic language of the Code of Canon Law without an awareness of the theological reality on which the law is based.

AFFIDAVIT OF NICHOLAS P. CAFARDI - 4

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

10.    The 1983 Code of Canon Law is the universal law for the entire western or Latin Church, and is currently in force in the United States of America.  References to the Code of Canon Law in this Affidavit are to the current 1983 Code of Canon Law ("CIC").  The applicable canons of the 1983 Code of Canon Law are attached to this Affidavit as Exhibit "B."

11.    In the Apostolic Constitution on the Roman Curia, *Pastor Bonus* , issued at the Vatican on June 28, 1988, Pope John Paul II set forth the competencies of the various Roman dicasteries (departments) of the Roman Curia, the agencies which assist the Holy Father in his governance of the Universal Church.  Articles 154-158 address the function and competencies of the dicastery known as the Pontifical Council for the Interpretation of Legislative Texts.

12.    In *Pastor Bonus*,  Article 154 - The function of the Pontifical Council for the Interpretation of Legislative Texts "consists mainly in interpreting the laws of the Church."  In Article 155 – With regard to the universal laws of the Church, the Council is competent to publish authentic interpretations confirmed by pontifical authority, after consulting the dicasteries concerned in questions of major importance.  In Article 156 – This

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201 PHONE: (509) 455-6000

Council is at the service of the other Roman dicasteries to assist them to ensure that general executory decrees and instructions which they are going to publish are in conformity with the prescriptions of the law currently in force and that they are drawn up in correct juridical form. Article 157 – Moreover, the general decrees of the various national conferences of bishops are to be submitted to this Council by the dicastery which is competent to grant them the *recognitio* (approval), in order that they may be examined from a juridical perspective. In Article 158 – At the request of those interested, the Council determines whether particular laws and general decrees issued by legislators below the level of the Holy See are in agreement with the universal laws of the Church.

13. These articles from *Pastor Bonus* are attached as Exhibit "C." Pursuant to these Articles, the Pontifical Council for the Interpretation of Legislative Texts is the official body designated to provide definitive interpretations of the Canon Law in the Roman Catholic Church. Contrary interpretations of the Canon Law are to be resolved by the Pontifical Council for the Interpretation of Legislative Texts.

AFFIDAVIT OF NICHOLAS P. CAFARDI - 6

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

## DOCUMENTS REVIEWED

14.  I have reviewed the following documents:

    a)    Committee of Tort Litigant's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment in <u>In re: The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane, Debtor Case No.: 04-08822-PCW11, Chapter 11, Adv. Case No. 05-80038</u>

    b)    Affidavit of James I. Stang, Esq. In Support of Committee of Tort Litigant's Motion for Partial Summary Judgment in <u>In re: The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane, Debtor Case No.: 04-08822-PCW11, Chapter 11, Adv. Case No. 05-80038</u>

    c)    Committee of Tort Litigants' Separate Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment in <u>In re: The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane, Debtor Case No.: 04-08822-PCW11, Chapter 11, Adv. Case No. 05-80038</u>

AFFIDAVIT OF NICHOLAS P. CAFARDI - 7

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

d)    Committee of Tort Litigants' Motion for Partial Summary Judgment in <u>In re: The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane, Debtor Case No.: 04-08822-PCW11, Chapter 11, Adv. Case No. 05-80038</u>

e)    Complaint for Declaratory Relief and Substantive Consolidation in <u>In re: The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane, Debtor Case No.: 04-08822-PCW11, Chapter 11, Adv. Case No. 05-80038</u>

f)    Motion for Summary Judgment filed by Plaintiff Michael Shea in <u>In re: The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane, Debtor Case No.: 04-08822-PCW11, Chapter 11, Adv. Case No. 05-80038</u>

g)    Memorandum in Support of Motion For Summary Judgment filed by Plaintiff Michael Shea in <u>In re: The Catholic Bishop of Spokane a/k/a The Catholic Diocese of Spokane, Debtor Case No.: 04-08822-PCW11, Chapter 11, Adv. Case No. 05-80038</u>

AFFIDAVIT OF NICHOLAS P. CAFARDI - 8

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW   Doc 209   Filed 05/27/05   Entered 05/27/05 14:06:37   Pg 8 of 21

15.     Because those allegations regarding matters of Catholic Church doctrine, polity, and governance in the five documents described above are identical or almost identical to each other, I will refer jointly to Tort Litigants' and Plaintiffs' pleadings in the paragraphs that follow.

## TORT LITIGANT'S AND PLAINTIFFS' ERRORS REGARDING THE DOCTRINE, POLITY, AND GOVERNANCE OF CATHOLIC INSTITUTIONS AND REGARDING THE EFFECT OF THE CORPORATION SOLE ON PARISH AUTONOMY

16.     Tort Litigants and Plaintiffs in their pleadings claim that, because legal title to parish entities is in the Roman Catholic Bishop of Spokane, a corporation sole, the diocese is the owner of all parish property.  Such a conclusion would create an ecclesiastical system which is out of conformity with the Code of Canon Law and which, as a result, does not exist.  Were a civil court to attempt to impose a polity upon a Roman Catholic diocese as required by Tort Claimants' allegations, the result would be a complete distortion of the Roman Catholic Church's doctrine, polity, and governance.

17.     Under the Code of Canon Law, a parish is a separate legal entity from the diocese.  It is, under Canon Law, its own public juridic person.  CIC. canon 515, §3.

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA  99201 PHONE: (509) 455-6000*

18.    In the Code of Canon law, a public juridic person is an aggregate of persons or an aggregate of things, constituted by operation of law or by an act of competent ecclesiastical authority as its own legal person, existing independently of other persons, endowed with its own rights and duties, and owning its own property, apart from the property of other juridic persons. CIC, canons 113-116.

19.    Parish property is, almost entirely, the result of the offerings of the faithful to the parish for the use of the parish.  Under the Code of Canon Law, gifts made for a particular purpose must be used only for that purpose. CIC, canon 1267, §3.

20.    Under the Code of Canon Law, property given to the pastor of a parish is presumed to be property given to the parish itself. CIC, canon 1267, §1.

21.    Under the Code of Canon Law, the pastor of a parish, and not the diocesan bishop, is the administrator of all parish property. CIC, canon 532. The diocesan bishop is neither the owner nor the administrator of parish property.

AFFIDAVIT OF NICHOLAS P. CAFARDI - 10

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 209    Filed 05/27/05    Entered 05/27/05 14:06:37    Pg 10 of 21

22.     Under the Code of Canon Law, the Catholic Church has an innate right to acquire, retain, administer and alienate temporal goods in pursuit of its proper ends, *independently of civil power*. CIC, canon 1254, §1

23.     Under the Code of Canon Law, all juridic persons are capable of acquiring, retaining, administering and alienating property. CIC, canon 1255

24.     Under the Code of Canon Law, the property of a parish is not the property of the diocese nor of the diocesan bishop. CIC, canon 1256.

25.     Under the Code of Canon Law, all property which belongs to a public juridic person, such as a parish, is ecclesiastical property, subject to the Canon Law. CIC, canon 1257, §1

26.     In 2004, the Pontifical Council for the Interpretation of Legislative Texts issued an opinion on whether, in the case of a parish bankruptcy, the assets of the diocese could be used to pay parish creditors. The interpretation of the Council, which is authoritative, was that the ownership of church property is always in individual public juridic persons, and not in some confused mingling of them. The Council further stated that to make the goods of one public juridic person available for the debts of another public juridic person would contradict the basic separateness and legal

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201 PHONE: (509) 455-6000

autonomy of juridic persons, one from another. Acta Consilii I, Nota, No. 3, Communicationes I (2004) 24, at 25. This opinion and a certified English translation is attached as Exhibit "D."

27. A proper and correct interpretation of this ruling would apply equally to making the assets of a parish available to the creditors of a diocese. As the Pontifical Council for the Interpretation of Legislative Texts has stated, making the goods of one public juridic person (e.g. the parish) available for the debts of another (e.g. the diocese) is a violation of Canon Law because it destroys the legal autonomy of these public juridic persons, one from another.

28. The Corporation Sole law of the State of Washington specifically states that a bishop "may, in conformity with the constitution, canons, rules, regulations or discipline of such church or denomination, become a corporation sole...." RCW 24.12.010

29. When the Roman Catholic Bishop of Spokane became a corporation sole, he did so in conformity with the canons of the Roman Catholic Church, as specified in the statute, and as further delineated in the Articles of Incorporation at Article VI. The Articles of Incorporation are attached as Exhibit "E."

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201 PHONE: (509) 455-6000

30.    The corporation sole is the incorporation of an office, with corporate privileges granted to the individual holding the office. In establishing a corporation sole, the Roman Catholic Bishop of Spokane was not merely separating his personal from his private interests, as the Tort Litigants and Plaintiffs allege (Committee Memo of P & S's Re Motion for Summary Judgment, Page 10, Line 12); rather he was incorporating the office of diocesan bishop so that it could function as a corporation in the manner permitted by civil law and in conformity with the Canon Law.

31.    Under the Corporation Sole law of the State of Washington, a corporation sole may "deal in real and personal property in the same manner as a natural person may." RCW 24.12.020 One of the rights of natural persons with regard to real and personal property is the right to hold property in trust.

32.    The Articles of Incorporation of the Spokane corporation sole state that the corporation sole is being formed for the purpose of "holding property in trust." Article III. Thus, the corporate articles are public notice that the corporation sole will be holding legal title to property, the beneficial ownership of which resides in other legal entities.

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

33.     This public notice was essential in the corporate articles because the bishop of a diocese is not the owner of parish property under the Canon Law. If title to parish property is placed in the name of the bishop or the diocese for purposes of legal convenience it does not divest the parish of its rights in the property, inasmuch as such a divestiture would violate the Canon Law.

34.     When a bishop takes legal title to parish property in the name of the corporation sole, it must be presumed that he is doing so in conformity with the Code of Canon Law. For that reason, the bishop as corporation sole can only hold bare legal title to parish property. Under the Canon Law, the beneficial interest is with and remains in the public juridic person of the parish.

35.     When the Corporation Sole statute, the Articles of Incorporation and the Canon Law of the Roman Catholic Church are read together, in complimentary and not contradictory fashion, as they must be, it is clear that the bishop as corporation sole is not the owner of parish property, but rather that he holds bare legal title to such property in trust for the public juridic persons of the parishes.

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201 PHONE: (509) 455-6000

36.     When the bishop as corporation sole signs leases or licenses in regard to parish property, he does so as trustee and not as outright owner. In situations where the lease or license may not go into detail as to the nature of the corporation sole's authority to sign on behalf of a parish, the fact of the corporation sole's trusteeship is demonstrated by the fact that the lease or license proceeds are transmitted without exception to the parish. Such income cannot be kept by the bishop or the diocese because the Code of Canon Law is very clear that such income inures to the benefit of the public juridic person of the parish which is the true owner of parish property, with the right to receive all income from it. CIC, canon 1284, § 2, 4°.

37.     It is incorrect to say that the corporation sole was "designed as a legal entity to give the presiding Bishop absolute and complete control over the property of the diocese." Memorandum in Support of Motion For Summary Judgment filed by Plaintiff Michael Shea, p. 14. The corporation sole only places bare legal title to certain real estate in the office of the bishop, not in the bishop himself, the exercise of which office is bound by the Canon Law of the Roman Catholic Church, which law does not give the office of bishop absolute and complete control over parish assets.

AFFIDAVIT OF NICHOLAS P. CAFARDI - 15

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

38.    It is incorrect to say that the bishop has "unbridled authority to dispose of this [parish] property which the Diocese owns." Memorandum in Support of Motion For Summary Judgment filed by Plaintiff Michael Shea , p. 23.  First of all, neither the bishop nor the diocese is the owner of parish property under the Canon Law. The public juridic person that is the parish owns all parish property.  CIC, canon 1256. The bishop can only dispose of parish property with the consent of the pastor of the parish, who is the canonical administrator of the parish.  CIC, Canon 532. In situations where the value of parish property being disposed of is above a minimal amount, the consent of the diocesan finance council and the diocesan college of consultors is required. CIC, canon 1291, §1 In situations where the value of parish property being disposed of is beyond $5,000,000, the additional permission of the Apostolic See is necessary. CIC, canon 1291, §2

39.    It is incorrect to say that parishes "are merely unincorporated divisions of the corporation sole." Memorandum in Support of Motion For Summary Judgment filed by Plaintiff Michael Shea, p. 28.  Parishes are stable communities of Christ's faithful established within a diocese. CIC, canon 515, §1.  They are not "divisions" of the diocese or of the corporation sole in any

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA  99201 PHONE: (509) 455-6000

sense. Their relationship to the corporation sole is that the corporation sole holds certain assets that are, under the Canon Law, the property of individual parishes, and that are, civilly, restricted assets of the corporation sole held for the sole use and benefit of those stable communities of the faithful that are the individual parishes.

40. In the theological context of the Code of Canon Law, a parish is a community of the faithful by means of which the faith is passed on, works of charity are performed, the young are educated and the Gospel is preached. It is, pre-eminently, the means of assuring that the faithful, through the sacraments, and especially through the Eucharist, are spiritually nourished and saved. Parishes are not "operating divisions" of a diocese whose assets can be seized by the diocesan bishop when he has diocesan debts to pay. They are stable communities of the faithful, with a stable pastor, which constitute the most immediate means for individual Catholics to work out their salvation. Among those means are the parish assets, the parish property, both real and personal, that make liturgy and sacraments possible and works of charity sustainable, assets that primarily have their origins in the contributions that the parishioners made to the parish for this purpose, to aid in their salvation. The

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201 PHONE: (509) 455-6000

idea that a bishop, or someone standing in his place, would harm a parish to pay diocesan debts is abhorrent to the Canon Law. It would violate the highest principle of the Canon Law, which is that every law exists for the salvation of souls. CIC, canon 1752

41. When the bishop exercises his legislative authority in his diocese, as when he makes rules for parishes to follow in their financial affairs, he can only do so in accordance with and in agreement with the universal law of the Church, the Canon Law. CIC, canon 391 §1. No individual bishop is able to alter the universal law of the Church. CIC, canon 12, § 1.

42. Thus in the Diocesan Policy Manual, which is a form of legislation for the Diocese of Spokane, the Introduction clearly states "In the application of universal law to the particular church [the diocese], decrees or instructions contrary to laws lack all force. CIC, canons 33 §1, 34 §2." The autonomy rights that a parish has are given to it by universal law. Therefore, nothing in that diocesan manual can be interpreted to destroy the separate existence and autonomy of the public juridic personality of the parishes from each other and from the diocese.

AFFIDAVIT OF NICHOLAS P. CAFARDI - 18

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201 PHONE: (509) 455-6000

43. Under the Code of Canon Law, the property of a parish cannot be used for the debts of any other public juridic person, including the debts of the diocese. To do so would destroy the juridical autonomy of the individual public juridic persons of the parish as separate from the diocese. Only diocesan assets are available for diocesan creditors.

44. The bishop's right to legislate for the diocese and the parishes within the diocese does not and cannot destroy the legal autonomy of the parishes in Canon Law. Any such legislation by a diocesan bishop that attempted to destroy the legal autonomy of individual parishes would be contrary to the universal law of the Church and would be void.

45. A diocesan bishop is subject to the Code of Canon Law in the same way that every baptized Catholic is subject. Should a diocesan bishop violate the canons, he is subject to penalties for those violations, including the penalty of loss of ecclesiastical office.

46. The fact that a parish is under a diocesan bishop's legislative power does not destroy a parish's independence or submit the parish to the bishop's control in such a way that the legal independence of a parish is destroyed. It would be a complete mischaracterization of a bishop's

AFFIDAVIT OF NICHOLAS P. CAFARDI - 19

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

jurisdictional authority over parishes to say that it simply makes the parishes the alter ego of the bishop. Such a conclusion would create an ecclesiastical system which is out of conformity with the Code of Canon Law and which, as a result, does not exist. Were a civil court to attempt to impose a polity upon a Roman Catholic diocese as required by Tort Claimants' and Plaintiffs' allegations, the result would be a complete distortion of the Roman Catholic Church doctrine, polity, and governance.

47. It is my canonical opinion that should the Tort Litigants' and Plaintiffs' assertions as to the lack of distinction between diocesan and parish property be accepted by the court, the ecclesial polity and governance of the Catholic Church as it applies to dioceses and parishes would be violated. The one size fits all organization described by the Tort Litigants in their respective pleadings is simply not the Catholic Church as it is or as it is required to be by its own Code of Canon Law.

48. I have reviewed the Affidavit of the Most Reverend William S. Skylstad, Bishop of Spokane, and I concur in his representations as to the Canon Law of the Roman Catholic Church and the relationship of the diocesan

AFFIDAVIT OF NICHOLAS P. CAFARDI - 20

*PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP*
*717 WEST SPRAGUE AVENUE, SUITE 1200*
*SPOKANE, WA 99201 PHONE: (509) 455-6000*

05-80038-PCW    Doc 209    Filed 05/27/05    Entered 05/27/05 14:06:37    Pg 20 of 21

bishop and the diocese to the parishes within the diocese, the formation and functioning of parishes, and the rights of parishes and their pastors.

49. The statements contained here are true and correct. I have made these statements upon my personal knowledge.

_Nicholas P. Cafardi_
NICHOLAS P. CAFARDI, J.D., J.C.L.

SIGNED AND SWORN to before me this __27__ day of May, 2005, by NICHOLAS P. CAFARDI.

_Marie M. Zagrocki_
Print Name: MARIE M. ZAGROCKI
NOTARY PUBLIC in and for the State of Pennsylvania, residing at __Pittsburgh,__
__Allegheny__ County.
My Commission Expires: __April 19, 2007__.

Notarial Seal
Marie M. Zagrocki, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Apr. 19, 2007
Member, Pennsylvania Association Of Notaries

AFFIDAVIT OF NICHOLAS P. CAFARDI - 21

PAINE, HAMBLEN, COFFIN, BROOKE & MILLER LLP
717 WEST SPRAGUE AVENUE, SUITE 1200
SPOKANE, WA 99201 PHONE: (509) 455-6000