JOHN W. CAMPBELL, ESQ. (WSB 13798)
ESPOSITO, GEORGE & CAMPBELL, PLLC
960 Paulson Building
421 West Riverside Avenue
Spokane, Washington 99201
Telephone: (509) 624-9219
Facsimile: (509) 624-9231

JAMES I. STANG, ESQ. (CA BAR 94435)
JOHN D. FIERO, ESQ. (CA BAR. 136557)
J. RUDY FREEMAN, ESQ. (CA BAR 188032)
PACHULSKI, STANG, ZIEHL, YOUNG,
 JONES & WEINTRAUB P.C.
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Counsel for COMMITTEE OF TORT LITIGANTS

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>**THE CATHOLIC BISHOP OF SPOKANE a/k/a THE CATHOLIC DIOCESE OF SPOKANE**<br><br>Debtor. | Case No.: 04-08822-PCW11<br><br>Chapter 11 |
| **COMMITTEE OF TORT LITIGANTS,**<br><br>Plaintiff,<br><br>v.<br><br>**THE CATHOLIC BISHOP OF SPOKANE, et al.,**<br><br>Defendants. | Adv. Case No. 05-80038<br><br>**COMMITTEE OF TORT LITIGANTS' MEMORANDUM OF AUTHORITIES IN RESPONSE TO OPPOSITIONS AND CROSS MOTION FOR SUMMARY JUDGMENT [DIOCESE OPPOSITION AND CROSS MOTION DOCKET NOS. 200 AND 203; EXEMPLAR OF PARISH OPPOSITION AT DOCKET NO. 128]** |

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 1

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 1 of 20

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 2

II. SUPPLEMENTARY DISCUSSION OF FACTS ........................................... 3

    A. The Insurance Information ...................................................................... 4

    B. Governmental Correspondence ............................................................... 4

    C. Agreements Between the Diocese and the Parishes ................................ 5

    D. Sale of Rectory at St. Joseph's-Otis Orchards ........................................ 5

    E. The Deposit and Loan Fund .................................................................... 6

    F. Vendor Relationships ............................................................................... 7

    G. The Compelling Interest of the Survivors ............................................... 8

III. ARGUMENT .................................................................................................... 10

    A. There are No Material Disputed Facts................................................... 10

    B. Summary Judgment Should be Granted on the First Claim for Relief Insofar as it Relates to the Disputed Real Property ................................ 11

        1. The Matters on Which Summary Judgment is Sought are "Core" 11

        2. Parishes Are Not Separate Legal Entities Under Either Federal or Washington State Law ................................................................. 12

            a. Parishes are not unincorporated associations but, rather, are unincorporated divisions of a corporation ......................... 12

            b. The Parishes are not unincorporated associations under federal law ............................................................................. 14

            c. The Parishes, or any association thereof, are not separate legal entities under Washington law ................................... 14

        3. The Real Property is Not Subject to Any Trust ............................ 17

            a. The Debtor ignores the historical purposes of a corporation sole .................................................................................... 17

            b. The Debtor misinterprets the corporation sole statute to bolster its sophistic trust argument ..................................... 18

            c. The articles of incorporation do not create an express trust 21

            d. Self-settled trusts are not immune from the claims of the settlor's creditors ............................................................... 22

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - i

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 2 of 20

| | | | |
|---|---|---|---|
| | 4. | The "Part Performance" Exception to the Statute of Frauds Should Not Apply Here | 23 |
| | | a. The Uniform Management of Institutional Funds Act does not apply to the facts in this case | 26 |
| | 5. | No Resulting Trust Can Arise on These Facts | 27 |
| | | a. The applicable law | 27 |
| | | b. Examination of the facts | 28 |
| | | c. Focus on the Debtor's argument | 28 |
| | | d. Examination of Church trust cases | 29 |
| | 6. | The Facts Do Not Justify the Imposition of a Constructive Trust | 32 |
| | 7. | The Parishes are not eligible to be beneficiaries of a trust | 33 |
| | 8. | Judicial Estoppel Applies Here | 34 |
| | 9. | The Motion Does Not Create an Intrachurch Dispute | 36 |
| | 10. | A Parish's Ineligibility to be an Involuntary Debtor Does Not Preclude Substantive Consolidation | 37 |
| C. | Neutral Principles Of State Law Are Applicable To This Proceeding | | 39 |
| D. | This Court Is Not Deprived Of Jurisdiction Over The Issue Of Property Ownership In This Case, But Must Apply Neutral Principles Of Law | | 41 |
| | 1. | This is not a case involving a solely ecclesiastical, intrachurch dispute | 41 |
| | 2. | This is not an internal church dispute | 45 |
| | 3. | There is no dispute over religious doctrine for this court to avoid in this case | 46 |
| | 4. | Were this court to decline to apply neutral principles of law to determine property ownership in this case, it would violate the Establishment Clause | 48 |
| E. | Neutral Principles Of Generally Applicable Property Law Must Be Applied To The Debtor's Property | | 49 |
| | 1. | Application of Washington's Neutral, Generally Applicable Property Laws in this Case Does Not Violate RFRA | 50 |
| | 2. | Applying Section 541 and State Property Law Does Not Impose a Substantial Burden on the Exercise of Religion | 52 |
| | 3. | The Application of Section 541 and State Property Law in this Case is Supported by a Compelling Governmental Interest, and is the Least Restrictive Means of Furthering that Interest | 54 |

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - ii

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 3 of 20

        4.     As Interpreted by the Diocese, RFRA Violates the Establishment Clause ................................................................................................ 58

        5.     The Washington State Constitution Does Not Impose Any Higher Standard than RFRA ............................................................................ 59

   F.     The Debtor's Cross-Motion Should be Denied ......................................... 60

**IV. CONCLUSION** ............................................................................................... 61

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - iii

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 4 of 20

# I.
# INTRODUCTION

> Under the laws of the State of Washington, all property in the diocese is owned by the Catholic Bishop of Spokane, a Corporation Sole. This means that parishes, institutions, etc. cannot legally own property in their own name. There is no 'legal entity' of the parish to hold such ownership.

Diocesan Policy Manual § 5.02.05.

In the hundreds of pages submitted by the Debtor and its parishes, there is nothing new or disputed. While the Debtor did put forward additional facts in support of its cross-motion for summary judgment, those facts do not alter the inescapable conclusion that the legal and beneficial interest in the Disputed Real Property belongs to the Diocese. In lieu of a disputation of facts, they urge clarifications and explanations. Neither explanations nor clarifications change facts.

In support of the First Amendment-based affirmative defenses, the Debtor says this case is an intrachurch dispute and therefore impinges upon religious freedom. This argument is intellectually dishonest. No American court has ever held that a third party's rights under a judgment must be enforced in accordance with a judgment debtor's religious laws.

Across North America, bishops are selling "parish properties" to pay their just debts to survivors of sexual abuse. In Boston, the Archbishop has announced plans to close more than 80 of his diocese's 357 parishes; yet the Bishop of Spokane says he has no control over parish properties. The deeds to those properties, of course, say otherwise.

In Tucson, the Bishop has already auctioned 83 properties (including land slated for future parishes) to help fund payments to the victims of clergy sexual abuse. Yet, the Bishop in this case insists that he is a mere trustee of parish properties.

In Newfoundland, the Bishop intends to sell every piece of church property in the diocese. Yet in Spokane, the Bishop says his job is "the implementation,

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 2

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 5 of 20

observance and enforcement of the universal law of the Church." The universal law of the Church does not trump the Bankruptcy Code.[1]

## II.
## SUPPLEMENTARY DISCUSSION OF FACTS

The facts at issue in this case are now beyond dispute. The most important undisputed facts are that not one single parish or parishioner is the grantee under a deed for the Disputed Real Property[2] and that the deterrence of childhood sex abuse is a compelling governmental interest. On the contrary, title is *always* held (with insignificant variations) in the name of "the Catholic Bishop of Spokane, a corporation sole."[3] When Church property is sold, the grantor is *always* "the Catholic Bishop of Spokane, a corporation sole." No deed even alludes to an express or implied trust relationship.[4]

The Debtor explains its view by resorting to a canon law idea: that each parish is a separate "juridic person" and thus, despite holding no legal title whatsoever, the parish is the beneficiary of a trust relationship with the Debtor. See Skylstad Affidavit, ¶58 (Docket No. 210). In support of this idea, the Parishes submit documents showing they have paid for insurance on Church property associated with their parish, corresponded with governmental entities, created documents reflecting intrachurch affairs, maintained intrachurch and outside bank relationships and paid outside

---

[1] The Court set a 50 page limit on briefs. As the Committee is responding to three separate pleadings, it believes that this brief, albeit more than 50 pages, is within the page limitation.

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Committee's Motion For Partial Summary Judgment (Docket No. 63.).

[3] Those insignificant variations include title in the name of: The Catholic Bishop of Spokane, a corporation; The Catholic Bishop of Spokane; The Catholic Bishop of Spokane, a Washington corporation; The Catholic Bishop of Spokane, d/b/a Our Lady of Fatima Church; and The Catholic Bishop of Spokane d/b/a Assumption Parish.

[4] The Diocese takes title to substantially all properties as a corporation sole regardless of a property's association with a parish (i.e. the unrestricted properties on Schedule A are vested in the same manner as the Disputed Real Property). Thus, the vesting language in the various deeds does not, by itself, evidence a grantor's intent.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 3

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 6 of 20

vendors. The documents do not establish that the Parishes have a separate legal existence or a property interest in the Disputed Real Property.

A. **The Insurance Information**

Almost every affidavit submitted by the priest at a given parish includes one or more invoices for insurance. The insurance policies enumerated in the invoices include Policies 8434 (General Liability and Commercial Property) and XL 8434 (Umbrella Policy) written by the Catholic Mutual Relief Society. The Committee has a copy of Policy 8434. It states that the certificate holder is the Catholic Bishop of Spokane, a corporation sole. There is no reference to the Parishes as certificate holders or beneficiaries. See Affidavit of James I. Stang in Support of Committee's Response ("Supp. Stang Aff."), ¶2 and Exh. 1.

Further evidence that the insurance invoices do not support the Parishes' contention is provided by the Debtor's interrogatory responses in <u>Corrigan v. Catholic Bishop of Spokane</u>, Spokane County Superior Court Case No. 02-2-05956-7. Each and every response identified the insured as the "Catholic Bishop of Spokane." <u>See</u> Supp. Stang Aff., ¶2 and Exh. 2.

B. **Governmental Correspondence**

The Parishes submit miscellaneous governmental documents primarily from various taxing authorities, including references to taxpayer identification numbers and certificates from the Washington Department of Revenue. The Parishes claim that their separate identity is evidenced by the fact that many of them have their own taxpayer identification number ("TIN"). However, the truth is that parishes obtain TINs because the Diocese requires them pursuant to Diocesan Policy Manual §5.02.02, as does the IRS.[5] 26 U.S.C.A. § 6109 (2005). A TIN is not the federal government's endorsement of the Parishes' alleged separate existence.

---

[5] The Committee cites to the Diocesan Policy Manual for illustrative purposes only. The Committee does not concede that the ecclesiastical principles the Bishop has adopted are in any way

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 4

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9210 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 7 of 20

The Parishes also submit tax exempt status certificates from the Washington Department of Revenue. Each and every certificate identifies the Debtor and only the Debtor as the "applicant".

C. **Agreements Between the Diocese and the Parishes**

Several parish affidavits attach letters or agreements evidencing business arrangements between the Diocese and a parish involving the Disputed Real Property. See e.g. Exhibit C to the Affidavit of Fr. Mike Kwiatkowski in Response to Summary Judgment (Docket No. 174); and Exhibit G to the Affidavit of Rev. Mark Pautler in Response to Summary Judgment (Docket No. 186). First, such documents do not refute the fee simple title of the Debtor which appears as an undisputed matter of record in the public records of Spokane County. Second, one would expect the Diocese and its parishes to bargain over the use, sale and lease of property. These bargains within the confines of the Church do not affect the rights of third party creditors in a bankruptcy case. Lastly, such bargaining defeats any claim to an express trust relationship because the Parishes would not need to bargain with the Diocese if a true trust relationship existed.

D. **Sale of Rectory at St. Joseph's-Otis Orchards**

The Affidavit of Fr. James Mangan in Response to Summary Judgment ("Mangan Aff.") (Docket No. 179) makes a claim that is just plain wrong. It states:

> *County Parcel 55074-1808, which is the parish rectory, was purchased by St. Joseph's – Otis Orchards in 1989 by Rev. W. Roy Flock.* Attached hereto as Exhibit "B" are copies of the purchase documents related to this property, signed by Rev. Flock. The rectory was purchased with funds contributed by St, Joseph's – Otis Orchards Parishioners.

Mangan Aff., ¶8 (emphasis added). The document attached as Exhibit B to the Mangan Affidavit is a "Real Estate Purchase & Sale Agreement" which contains the

---

binding upon third party creditors in a proceeding under Title 11 of the United States Code.

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 5

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 8 of 20

following salient information: (1) the Roman Catholic Diocese of Spokane is listed as the "Buyer;" (2) "FNMA" (the Federal National Mortgage Association) is listed as the seller; and (3) in the signature block for the "Buyer" the handwriting says "Rev. Roy Flock – St. Joseph Parish."

The Committee has investigated this claim and searched the County records for the most recent deed. The deed – dated just 17 days after the date on the Purchase & Sale Agreement – is from the Federal National Mortgage Association to *the Roman Catholic Bishop of Spokane – <u>not Father Flock or St. Joseph's Parish</u>*. See Supp. Stang Aff. ¶5 and Exh. 4. At the very minimum, Father Mangan is mistaken.

E. **The Deposit and Loan Fund**

The Parishes point to their participation in the Deposit and Loan Fund ("DLF") as evidence of their separate existence and, as a result, their property interests.[6] They claim an interest in the Disputed Real Property by virtue of supposed tracing of their parishioners' contributions to the Parishes' balances in the DLF and to subsequent parish withdrawals from the DLF. None of the Parishes' affidavits actually trace the contributions into the DLF and back out into the withdrawals or purport to use any recognized methodology for tracing. Rather, they simply make blatant and unsupported factual and legal conclusions that their contributions are traceable and that they have a property interest in the Disputed Real Property.

Regardless of the characterization of the Parishes as unincorporated divisions of a corporation sole or as separate legal entities, the Parishes do not have a property interest in the DLF balances. The DLF is a vehicle for the management of the cash in the Diocese, not unlike any other cash management system that this Court encounters on a daily basis. The DLF simply is a cash concentration account into which, pursuant to the stated mandatory policy of the Diocese, excess funds of the parishes and Diocesan institutions are deposited. The Parishes, as unincorporated divisions of

---

[6] See Parishes' Opposition, Section IV.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 6

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 9 of 20

the corporation sole, maintain local operating bank accounts for day to day use and on occasion maintain larger accounts for specific purposes. As needed, the Diocese transfers funds to the division to fulfill a particular operating or capital need. The Diocese's financial officer, like any other corporate financial officer, maintains records of the receipts and disbursements from and to the parish.

The division is expected to generate enough money to sustain its operations. If it is unable to do so, the division is reconfigured or closed (in Church parlance, "suppressed"). The unincorporated divisions, as a matter of law, do not have any property interest in the funds in either the local accounts or in the concentration account.

If the Court adopts Bishop Skylstad's conclusion that the DLF actually is the Diocesan banking system, that does not make the Parishes into separate legal entities. They still have no property interest in the DLF because unincorporated divisions cannot hold property in their own name.

Even if the Court accepts all of their contentions as to separate identity, they are still mere depositors holding unsecured claims. Mullen v. North Pac. Bank, 25 Wash.App. 864, 876 (1980) (Bank depositor has a creditor's claim against bank). As the bank, the DLF balances are the property of the Diocese. Allied Sheet Metal Fabricators, Inc. v. Peoples Nat. Bank of Washington, 10 Wash.App. 530, 537 (1974) ("It is therefore a fundamental rule of banking law that in the case of a general deposit of money in a bank, the moment the money is deposited it actually becomes the property of the bank, and the bank and the depositor assume the legal relation of debtor and creditor.").

F. **Vendor Relationships**

In the day to day affairs of the Diocese, the public interacts with it at the situs of the Disputed Real Property. As a matter of simple convenience, the pastors and their staff order supplies, arrange for services and engage in other mundane administrative

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 7

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

activities. A bill from a roofer establishes nothing more than the roofer's desire to be paid.

G. **The Compelling Interest of the Survivors**

The Diocese states in the brief in support of its Cross-Motion that there is "no compelling governmental interest in maximizing the creditors' potential recovery."[7] This claim trivializes the experiences of the Catholic children who were sodomized, fondled, and robbed of their innocence by trusted priests within the Diocese of Spokane. In the hundreds of pages of declarations and pleadings that the Debtor and the Parishes filed in response to the Committee's motion, there was not a single mention of a survivor of sexual abuse by clergy. The Committee submits that there is a legitimate interest in treating victims fairly and deterring future cases of childhood sexual abuse by priests.

The Debtor's own discovery in the state court sex abuse litigation has established that Father Knecht grabbed John Doe, opened his pants and instructed him to get his penis out. Thereafter, Father Knecht proceeded to take a toothbrush and scrub John Doe's penis to clean it up, causing bleeding and pain for weeks. For the next two years, Father Knecht repeatedly instructed John Doe to display his penis so that Father Knecht could check to see if he were clean. Father Knecht also kissed John Doe on the lips and made their teeth touch. *See* Declaration of Timothy Kosnoff in Support of Reply Memorandum Of Points And Authorities In Support Of Motion For Partial Summary Judgment ("Kosnoff Decl."), ¶6 and Exh. A.

John Doe also testified that he was once approached by Father O'Malley from behind. Father O'Malley reached in front of John Doe and started fondling his genitals. See Kosnoff Decl., ¶7 and Exh. A.

The Debtor's own discovery in the state court sex abuse litigation has established that Father O'Donnell sexually abused Timothy Corrigan. The Debtor

---

[7] See Cross-Motion, page 31, line 1.

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 8

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 11 of 20

took the deposition of Cheryl E. Corrigan, who described the circumstances which led to her late husband's realization that he was sexually abused by Father Patrick O'Donnell. Cheryl Corrigan also described the events of the days preceding and following Tim's suicide, which left her as a single mother of two young children. See Kosnoff Decl., ¶8 and Exh. B.

The Debtor's own discovery in the state court sex abuse litigation has established that Father O'Donnell abused BN for years. Father O'Donnell caused BN to masturbate him. Father O'Donnell masturbated and sodomized BN. BN also described how Father O'Donnell allowed another adult to come to the priest's Lake Coeur d'Alene cabin and sexually abuse him. See Kosnoff Decl., ¶9 and Exh. C.

The Debtor's counsel also attended the deposition of James Doe, who testified that on a retreat he woke up to find Father O'Donnell laying almost on top of him rubbing his back and reaching into his shorts and rubbing his buttocks. After James Doe resisted Father O'Donnell's attempts to turn James Doe over, Father O'Donnell inserted his finger in James Doe's rectum and left him alone for the balance of the night. On a separate occasion, Father O'Donnell led James Doe to the deep end of the pool and pushed him against the wall of the pool and started masturbating James Doe. James Doe could feel Father O'Donnell's erect penis in his back. On that same day, Father O'Donnell again approached James Doe, this time in the shower, and had James Doe touch his erect penis. See Kosnoff Decl., ¶10 and Exh. D.

The Debtor's own discovery in the state court litigation established that Father O'Donnell caused Joseph Doe – at his first confession – to kneel before him and say a prayer. Then Father O'Donnell grabbed Joseph Doe's hand and put it underneath his robe where his penis was exposed and used Joseph Doe's hand to masturbate him. On another occasion, Father O'Donnell took Joseph Doe and his family on a boating trip. Joseph Doe was asleep by himself when he felt Father O'Donnell on top of him with one hand on Joseph Doe's mouth and the other hand in Joseph Doe's shorts

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 9

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 12 of 20

masturbating him aggressively. Father O'Donnell stopped in response to Joseph Doe's continuous crying. See Kosnoff Decl., ¶11 and Exh. E.

These are the accounts of a few of the people whom the Diocese derisively dismisses as creditors simply trying to maximize their returns. In fact, they represent but a fraction of the lives that were shattered by the depraved actions of the Debtor's priests. The State has a compelling interest in ensuring that this never happens again to the children.

## III.
## ARGUMENT

### A. There are No Material Disputed Facts

The truly material facts are few and undisputed. Title to every piece of real property is held in fee simple in the name of The Catholic Bishop of Spokane, a corporation sole. This irrefutable and uncontested fact does not stop the Diocese and the Parishes from insisting that the Disputed Real Property is held in trust.[8]

The question is whether the Debtor holds the legal and equitable titles. If it does, the plain language of Section 541 ends the inquiry. A fee simple includes all possible rights and privileges with respect to land. Bryant v. Palmer Coking Coal Co., 86 Wash.App. 204 (1997). By virtue thereof, the Debtor can exercise "absolute and exclusive control" over the real property. Wingard v. Copeland, 64 Wash. 214, 217 (1911) citing Adams v. Henderson, 168 U.S. 573, 580 (1897). In addition, none of the deeds restrict the fee simple estate acquired by the Diocese. Neither the Debtor nor the Parishes have introduced a shred of evidence which would suggest the record title of the subject property is vested in the Debtor in anything other than fee simple.

---

[8] The Debtor repeatedly contends that the Court should not grant the Motion because the Disputed Real Property could not be subject to execution by a creditor. The Debtor's argument harkens back to the Bankruptcy Act. In Section 541, the drafters of the Bankruptcy Code abandoned the Act's reliance on that particular aspect of state law. See 5 Collier on Bankruptcy, ¶ 541.LH[3][a] at 541-109 (15th ed.)

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 10

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 13 of 20

In addition, none of the deeds contain a restrictive use provision which would prevent the real property from being sold or used for any purpose whatsoever.

Given the undeniable state of record title, the Parishes claim that their members donated money to either purchase or fund the operations at the Disputed Real Property and, thus, the Disputed Real Property somehow "belongs" to the Parishes. Donations cannot create ownership rights. This sense or expectation of "belonging" does not create a legally cognizable ownership interest.

The Parishes also suggest that they operate in a semi-autonomous manner, with bank accounts, vendor relationships and individualized reporting of income and expenses. This is no different than the way divisions of a large corporate enterprise operate, and is not evidence of legal separateness.

**B. Summary Judgment Should be Granted on the First Claim for Relief Insofar as it Relates to the Disputed Real Property**

### 1. The Matters on Which Summary Judgment is Sought are "Core"

The Parishes assert that this lawsuit is not a core proceeding.[9] Actions to determine the nature and extent of the bankruptcy estate are fundamental functions of a bankruptcy court and fall squarely within the Bankruptcy Court's core jurisdiction.

Title 28 U.S.C. § 157(b)(1) provides that bankruptcy judges may hear and determine all cases and core proceedings arising under title 11 or arising in a case under title 11. Section 157(b)(2) of Title 28 enumerates a non-exhaustive list of "core matters" over which the Bankruptcy Court is granted core jurisdiction, including Subsection (A) "matters concerning the administration of the estate", Subsection (E) "orders to turn over property of the estate", and Subsection (O) "other proceedings affecting the liquidation of the assets of the estate".

The leading case illustrating the Ninth Circuit's broad view of the Bankruptcy Court's core jurisdiction in matters concerning property of the estate is <u>In re Kincaid</u>,

---

[9] <u>See</u>, Parishes' Opposition, Section III. Perhaps recognizing its futility, the Bishop did not elect to make this argument.

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 11

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

917 F.2d 1162 (9th Cir. 1990). In Kincaid, the Ninth Circuit distinguished non-core proceedings in which the debtor seeks property *owed* to the debtor from core proceedings in which the debtor seeks turn over of property *of* the debtor.

Kincaid provided a broad jurisdictional perspective which has been neither modified nor overruled. More recent Ninth Circuit decisions continue to adopt the Kincaid perspective. See e.g. In re Goodman, 991 F.2d 613 (9th Cir. 1993) (court noted that a proceeding is not removed from the jurisdiction of the bankruptcy court solely because the resolution may be affected by state law); In re Silva, 185 F.3d 992 (9th Cir. 1999) (holding that turnover action by chapter 7 trustee was core).

The Parishes cite no authority in the Ninth Circuit or otherwise in support of their claim that the Committee's Complaint is "non-core". Since the Complaint falls squarely within the statutory definition of a core proceeding, this unsupported argument must be rejected.

### 2. Parishes Are Not Separate Legal Entities Under Either Federal or Washington State Law

#### a. Parishes are not unincorporated associations but, rather, are unincorporated divisions of a corporation

The Diocese makes much of the Committee's statement that the Parishes are unincorporated associations although interestingly the Parishes themselves objected to the statement as a legal conclusion. The Committee's statement was intended to be factually descriptive of the congregation of Catholics in Spokane and not as a legal conclusion. It did not establish the Parishes as unincorporated associations for all purposes and it certainly did not grant the Parishes separate entity status.

The Debtor and Parishes have not cited one case that counters the Committee's overwhelming authority that unincorporated parishes have no legal existence separate from the Diocese in which they are located. Rather, they attempted to distinguish these cases on the basis that unincorporated associations are not recognized in Illinois but are recognized in Washington. The cases cited by the Committee do not turn on

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 12

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 15 of 20

whether a given state recognizes an unincorporated association. The cases turn on the rule that in a corporation sole structure, parishes, schools, and other associations are unincorporated divisions of the corporation sole.

In <u>EEOC v. St. Francis Xavier Parochial School</u>, 77 F.Supp. 2d 71 (D.D.C. 1999), the court directly addressed the issue. In <u>EEOC</u>, the Archdiocese of the District of Columbia had incorporated as a corporation sole. St. Francis Xavier Parish and its parochial school were named as defendants by the <u>EEOC</u> for violations of the Americans With Disabilities Act. Specifically addressing the relationship between the defendants and Archdiocese, the court stated:

> Because neither defendant is separately incorporated, defendants are in fact unincorporated divisions of a corporation. As such, their presence in this case triggers a line of precedent holding that unincorporated divisions of a corporation lack legal capacity to be sued.

<u>Id.</u> at 75, citing <u>United States v. ITT Blackburn Co., a Div. of ITT</u>, 824 F.2d 628, 631 (8th Cir. 1987) ("unincorporated division cannot be sued or indicted, as it is not a legal entity"); <u>Griffith v. Keystone Steel and Wire, a Div. of Keystone Consol. Indus., Inc.</u>, 887 F. Supp. 1133, 1138 (C.D. Ill. 1995) (unincorporated division of a parent corporation cannot be sued); <u>Salzstein v. Bekins Van Lines, Inc.</u>, 747 F.Supp. 1281, 1282 n. 1 (N.D. Ill. 1990) ("by definition a corporate division is not a separate legal entity and hence is not suable"). Similarly, in <u>FEL Publications, Ltd. v. Catholic Bishop of Chicago</u>, 754 F.2d 216 (7th Cir. 1985), the conclusion that the parishes were not separate entities was based upon the fact that:

> "As a 'corporation sole', the Catholic Bishop owns all the real and personal property in the Chicago Archdiocese. The parishes themselves have no individual capacity to sue or be sued."

<u>Id.</u> at 221, citing <u>Catholic Bishop of Chicago v. Village Palos Park</u>, 286 Ill. 400, 401, 121 N.E. 561 (1919). Finally, the ruling in <u>Employment Div. v. Archdiocese of Portland</u>, 600 P.2d 926 (Or. App. 1979) turned on the finding by the lower court that the schools within the Archdiocese were "operated, supervised, controlled or

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 13

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 16 of 20

principally supported by the Catholic Church." Id. at 927. Thus, EEOC and the other cases do not turn on whether a state recognizes unincorporated associations. Rather, those cases turn on the legal ramification of a church's corporation sole status and its hierarchical structure wherein parishes are unincorporated.

### b. The Parishes are not unincorporated associations under federal law

The Debtor and the Parishes argue that their legal standing as an unincorporated association is supported by Bankruptcy Rule 7017 (which incorporates Fed. R. Civ. P. 17(b)).[10] This same argument was raised by the plaintiff in EEOC. The court rejected the argument, stating "implicit in plaintiff's argument is the assumption that defendants are in fact 'unincorporated associations' under Rule 17(b)(1)". EEOC, 77 F.Supp. 2d at 76. After citing a survey of federal case law respecting the definition of an unincorporated association, the court found that the federal law definition of an unincorporated association does not encompass an unincorporated division of a corporation.
Id.

As in EEOC, this Debtor would have the identity of the Parishes be defined simply by citing Rule 17(b)(1). However, in a vacuum, the language of Rule 17(b) does not define what the Parishes actually are in relationship to the corporation sole. The fact that the Debtor is a corporation sole and that the Parishes operate under that corporate umbrella means that they are unincorporated divisions rather than unincorporated associations.

### c. The Parishes, or any association thereof, are not separate legal entities under Washington law

As indicated above, cases addressing the question squarely conclude that the Parishes are nothing more than a division of the corporation sole. However, assuming

---

[10] Debtor's Opposition, p. 23, l. 26; Parishes' Opposition, VI.A.1.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 14

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

that Parishes would be considered unincorporated associations, they are not separate legal entities under Washington law.

"An unincorporated association or club. . . is not ordinarily a legal entity distinct from its component individuals." Schroeder v. Meridian, 36 Wash.2d 925, 930 (1950). Schroeder is consistent with the well established rule that

> in the absence of an enabling or permissive statute or rule of practice, an unincorporated association, society or club cannot sue or be sued in the organization's own name. The reason is that such an association, society, or club, in the absence of statutes recognizing it, is not a legal entity distinct from its members.

6 Am.Jur.2d, Associations and Clubs, § 51, p. 438.

The majority of the cases cited favorably by the Debtor and Parishes in fact support the general principle of Schroeder and do not treat the unincorporated association as independent of the individuals or entities that make up that association. One reason is that the association frequently is a nominal party to litigation along with a member or representative. For instance, when citing Hispanic Taco Vendors, Washington v. City of Pasco, 994 F.2d 676 (9th Cir. 1993), for the proposition that an unincorporated association has the legal capacity to sue and be sued, the Debtor conveniently fails to point out that the five individuals that made up the unincorporated association were named individually as plaintiffs. In citing Bacon v. Gardner, 38 Wash.2d 299 (1951), both the Debtor and Parishes gloss over the fact that the only issue respecting a religious association resulted from the fact that the main plaintiff, J. M. Bacon, amended the complaint to name herself, in a representative capacity, "as trustee for Christ Temple Church, a religious association." There was no real dispute respecting the religious association's separateness and the court never addressed that issue. In Hairston v. Pac-10 Conference, 101 F.3d 1315 (9th Cir. 1996), the Pac-10 Conference was named, but that representation was contractual based upon the "Pac-10's constitution, bylaws and articles. . ." Id. at 1320. Finally, in Church of Christ at Centerville v. Carder, 105 Wash.2d 204 (1986), while the

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 15

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 18 of 20

complaint identified the plaintiff as "Church of Christ of Centerville, an unincorporated association," the court did not have to address the separate entity question since the Church of Christ subsequently incorporated and amended the pleadings to reflect the new corporation. Thus, not one of the cases cited by the Debtor or Parishes in any way alters the general rule set forth in Schroeder that an unincorporated association is not a distinct legal entity.

To the extent there are exceptions to the general rule set forth in Schroeder; those exceptions do not apply to the Parishes. The principal exception is where an unincorporated association is given legal status by statute. For instance, RCW 64 et seq. grants homeowners associations separate legal status with the power to sue and be sued and RCW 33 et seq. grants savings and loan associations similar status. Finally, RCW 7.24.110-130 grants unincorporated associations the limited capability to appear and represent their interest in declaratory judgment actions. (This is the very reason the Committee named the Parishes as defendants despite the Committee's denial that the Parishes are separate legal entities.)

The other cases cited by the Diocese present unique situations that do not justify departure from the general rule articulated in Schroeder.[11] For instance, Int'l Assoc. of Firefighters v. Spokane Air, 146 Wash.2d 207 (2002), is a trade union case which stands for the proposition that an organization has standing to bring an action on behalf of its members if (1) its members would have standing to sue in their own right, (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of the individual members of the organization in the lawsuit. Id. at 214. Similarly, Labonite v. Cannery Workers and Farm Laborers Union, et al., 197 Wash. 543 (1938), is one of a line of union cases wherein union representatives can be held to bind the entire union. Finally, Save v. Bothell, 89 Wash.2d 862 (1978), narrowly stands for the proposition that a not for profit corporation or association which shows that one or

---

[11] Debtor's Opposition, p. 23.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 16

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 19 of 20

more of its members are specifically injured by government action may represent those members in a proceeding for judicial review.

The Parishes are not entities that have been given separate status by statutory enactment. The Parishes have neither alleged nor demonstrated trade union status, the elements of Int'l Assoc. of Firefighters, or that they have been injured by governmental action as required by Save v. Bothell. The Parishes have not demonstrated any unique circumstances that would justify any deviation from the general rule in Schroeder. Accordingly, under the application of Schroeder, the Parishes are not separate entities under Washington law.

### 3. The Real Property is Not Subject to Any Trust

The Committee stated in the Motion that "[t]he Committee cannot find a single, modern case in Washington or in any other state that even suggests that the corporation sole structure (or the nonprofit corporation structure) protects a corporation sole from its just debts". As the Debtor fails to cite to a single case that so holds, the Committee submits that the "trust" described in the corporation sole statute does not provide the Parishes a beneficial interest in the Disputed Real Property.

#### a. The Debtor ignores the historical purposes of a corporation sole

The Diocese and the Parishes contend that the corporation sole statute creates a statutory trust for the benefit of parishes and parishioners and that the Diocese's its Articles of Incorporation (the "Articles") create an express trust for their benefit as well. The Diocese's argument relies on unsubstantiated interpretations of the plain language of the statute and the Articles. This reliance is at odds with the historical context for the creation of corporations sole in the United States.

The corporation sole is a specialized legal entity that is meant to accommodate the ability of organized religion (in this case, the Roman Catholic Church in the Diocese of Spokane) to function in the civil world. The Diocese may operate the corporation sole in accordance with canon law when it deals with those within the

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 17

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 263    Filed 06/13/05    Entered 06/13/05 12:14:30    Pg 20 of 20