Church hierarchy but the corporation sole is regulated by Washington law when interacting with the rest of the world. Professor Conklin's uncontradicted account of the history of the corporation sole in the Catholic Church in the United States provides the very reasons why the Church's hierarchy has adopted its use in every State in which it is available. See County of San Luis Obispo v. Ashurst, 146 Cal.App.3d 380, 383, 194 Cal.Rptr. 5, 6 - 7 (Cal.App. 2d Dist. 1983) (one principal purpose of the corporation sole is to insure the continuation of ownership of property by officials and successors and not heirs).

Contrary to the Diocese's position that the corporation sole statute ensures the Parishes' interests in Church property, the Diocese's own cited authority confirms that the Holy See approved the use of a corporation sole as a device to guarantee that its bishops maintained control over Church property. See Anson Phelps Stokes, Church and State in the United States, Vol. III at 409 (1950) (Corporation sole confirmed bishops' jurisdiction over property, a "corner-stone of Catholic discipline" and solved problem associated with assertions of lay trusteeship over Church property). The corporation sole statutes do not pretend to ensure that civil society's interactions with the Church are dictated by the Church's internal governance system. See Id. at 409 (Religious corporations are regulated to safeguard interests of the State and its citizens). Thus, the Diocese's characterization of these statutes as "safeguarding" ecclesiastical laws and the Church's internal structure stands the legislative accommodation of the Church on its head.

      **b.   The Debtor misinterprets the corporation sole statute to bolster its sophistic trust argument**

The Diocese and the Parishes harp on the word "trust" in the statute and the Articles to argue that the term evidences a conventional trust relationship between the Debtor, the Parishes and the parishioners.[12] But, the historical context makes clear

---

[12] See, Debtor's Opposition, p. 6; Debtor's Cross-Motion, p. 44; Parish Opposition at Parishes' Opposition, VI.B.1.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 18

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 1 of 20

that the word "trust" means only that the bishops hold the property in a fiduciary and not personal capacity. Taking the Debtor's and Parishes' argument at face value would mean that the Washington legislature enacted the corporation sole statute for them and them only so that they could keep their assets within their hierarchy and not pay their debts.

The Diocese begins its analysis of the statutory trust with a mischaracterization of RCW 24.12.010. The Diocese contends that the statute, which simply allows a Catholic bishop to incorporate, addresses the ability to incorporate and the *substance* of his corporate powers by adopting all of canon law.[13] As the Diocese does not quote the entirety of the statute, its mischaracterization is not so obvious.[14] RCW 24.12.010 provides, in relevant part

> Any person, being the bishop...may, in conformity with the constitution, canons, rules, regulations or discipline of such church or denomination, become a corporation sole, *in the manner prescribed in this chapter, as nearly as may be....*

(emphasis added to show words omitted by Debtor). Without the italicized words, the Court might accept that the corporation sole statute incorporates all of the Church's doctrine, having all the attributes afforded by canon law but none of those imposed by Washington law which might be contrary to canon law. Upon consideration of the statute in its entirety, it provides that a religious official can incorporate if the concept of a religious corporation is authorized by the church's rules.[15] If church doctrine does not allow the religious official to incorporate, then the official cannot become a corporation sole. The obvious purpose of the statute is to address the capacity of the

---

[13] Cross-Motion, p. 47

[14] The Diocese also ignores the fact that RCW 24.12.030, and not RCW 24.12.010, is the section that gives the corporation its powers.

[15] Thus, Catholic bishops could use the corporation sole form of property ownership after 1911 when the Holy See authorized them to employ it. Anson Phelps Stokes, Church and State in the United States, Vol. III at 413 (1950). Corporations sole predating 1911 may have relied on the authority of the Third Plenary Council (1884). Id.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 19

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 2 of 20

official to become a corporation and not the scope of the official's powers once incorporated.[16] This procedural aspect of the statute is made more clear by its provision that the official may become a corporation sole *"in the manner prescribed in this chapter, as nearly as may be...."* See 1995 B.Y.U.L. Rev. 439, 458 ("In general, the presiding officer of any church or religious society is authorized by statute to form a corporation sole if it is done in conformance with the rules and canons of the religious entity....") The phrase *"as nearly as may be"* clearly relates to the manner of incorporation and any doctrinal limitations on the official's ability to conform to the incorporation procedure (i.e. the official might be doctrinally prohibited to sign a sworn affidavit as required by RCW 24.12.030). Thus, the ability to incorporate would not be prejudiced if the official's religious doctrine did not enable him to comply with the letter of law regarding the incorporation *procedure.*

The Diocese asserts that canon law's trust concepts have become Washington state law because the statute says that "the bishop . . . may in conformity with the constitution, canons, rules, regulations or discipline of such church or denomination, become a corporation sole . . ." Yet this provision only applies to how a corporation sole is formed and not the rules by which it must abide.

The word "trust" does not appear in RCW 24.12.010. This is a significant omission when considering that the Diocese's entire trust argument hinges on finding a conventional trust concept to justify its disclaimer of valuable property interests. The word "trust" first appears in RCW 24.012.020 where the statute refers to "the trust," even though the preceding statute made no reference to a trust. The only plausible explanation for the use of the term is that it underscores that the corporation sole's powers could be utilized only for the benefit of the religion, denomination, society or church and not for the religious official's personal benefit. County of San Luis Obispo v. Ashurst, 146 Cal.App.3d 380, 194 Cal.Rptr. 5 (Cal.App. 2d Dist. 1983) (based on statutory language substantially identical to the Washington statute,

---

[16] The incorporated official's powers are addressed at RCW 24.12.020.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 20

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 3 of 20

the Court held that "[t]he powers of the corporation sole to administer the property are extensive and almost unfettered except for the qualification that the property must be used for the purposes of the office.").[17]

The corporation sole statue is neutral as to any particular religion. Thus, RCW 24.12.020's reference to "the trust" could not be referring to the alleged Diocese-parish-parishioner trust as such alleged relationships do not exist in all religions. Additionally, any special civil protection for the Church's "trusts" would be an obvious violation of the Establishment Clause.

The Diocese's misconstruction of the corporation sole statute becomes obvious in the discussion of RCW 24.12.030 ("...[A]ll property held in such official capacity by such bishop, overseer or presiding elder, as the case may be, shall *be in trust for* the use, purpose, benefit and behoof of his religious denomination, society or church.") (emphasis added). The plain meaning of the statute is that the incorporated official can only use the property for religious and not personal purposes. The Diocese's interpretation requires a virtual amendment of the statute which replaces the phrase "religious denomination, society or church" with the words "parish" and "parishioner". Until the legislature deigns to make this change, the law will maintain its religious neutrality.

      **c.    The articles of incorporation do not create an express trust**

The Diocese and Parishes contend that its Articles create an express trust.[18] The Diocese quotes Articles III and V and consistently puts the word "trust" in bold typeface. But, it neglects to highlight the beneficiary of this trust as identified in the Articles. *The beneficiary of this trust is not the Parishes or the parishioners.* The stated beneficiary is "that certain religious denomination or society known as the

---

[17] Under California's corporation sole statute (just as in Washington's statute), "the trust" is an undefined term. Cal. Corp. Code § 10002.

[18] Cross-Motion, p.45; Debtor's Opposition, p.8 et seq.; Parishes' Opposition, Section VI.B.2.

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 21

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 4 of 20

Roman Catholic Church." (Article III). The express purpose of the trust is to use the property for the "Roman Catholic Church of the Diocese of Spokane."(Article V).

Curiously, the Diocese's own articulation of the trust is without any reference to the parishes of Spokane or, more importantly, any limitation of the trust property to the "*use, purpose, benefit or behoof*" of those parishes. The payment of damages to the survivors of this abuse, who once were the children of this Diocese, is an appropriate *use* of the corporation's property and is part of fulfilling the Diocese's self-professed *purpose* to compensate the survivors. In purely legalistic terms, reduction of the Diocese's liability is for the *benefit and behoof* of the Diocese and the Roman Catholic Church in the Diocese of Spokane. In moral terms, it is a necessity.

### d. Self-settled trusts are not immune from the claims of the settlor's creditors

If the corporation sole statute makes the Catholic Church the beneficiary of an actual trust, it would be a self-settled trust and void as to creditors. See RCW 19.36.020 ("That all deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the existing and subsequent creditors of such person."). See also Wiswall v. Wallaert (In re Wallaert), 149 B.R. 665, 668 (Bankr. W.D. Wash. 1992) (noting that under RCW 19.36.020 the assets in a self-settled trust "are not immune from the claims of creditors"); Restatement (Third) of Trusts § 58(2) (2003) ("A restraint on the voluntary and involuntary alienation of a beneficial interest retained by the settlor of a trust is invalid."). Cf. Prater v. Houston, 212 P. 1064, 1065 (Wash. 1923) (assuming, without deciding, that an identically-worded predecessor statute to RCW 19.36.020 worked to void a conveyance as to a creditor). See Herrin v. Jordan (In re Jordan), 914 F.2d 197, 200 (9th Cir. 1990) (Self-settled trusts are not excludable from the bankruptcy estate).

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 22

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 5 of 20

### 4. The "Part Performance" Exception to the Statute of Frauds Should Not Apply Here

Since every deed to the Diocese amounts to an absolute transfer, the Debtor cannot prove up a trust relationship with parol evidence. Zioncheck v. Nadeau, 196 Wash. 33, 36 (1938) (Express trust in real estate can not be established by parol evidence).

As the Committee detailed in the Motion, the Statute of Frauds invalidates the alleged express trust between the Diocese, the Parishes and the parishioners. Here, the doctrine of partial performance does not excuse non-compliance with the Statute of Frauds.[19] Under the doctrine, the beneficiary is required to take certain acts which have not been taken here. The Diocese does not clearly articulate who is the supposed beneficiary of the express trust. Regardless, the elements of the doctrine of partial performance are not satisfied and the express trust must fail for non-compliance with the Statute of Frauds.

The starting point of any analysis of the partial performance doctrine is the existence of an agreement to transfer the property into a trust. Berg v. Ting, 125 Wash.2d 544, 556 (1995) (Purpose of partial performance doctrine is to ensure performance of oral agreement). If there is no agreement, then there is no reason to examine the other elements of the doctrine. In this case, there is no evidence of an oral agreement to transfer the property into a trust. Bishop Skylstad submitted a 66 paragraph declaration devoid of any reference to an oral agreement to create a trust. Likewise, not one parishioner or parish priest references an oral promise to hold the Disputed Real Property in trust uttered by anyone from the Diocese. In the absence of an oral promise to create a trust, the partial performance doctrine has no application.

The purpose of the partial performance doctrine is to prevent the perpetration of a fraud. Granquist v. McKean, 29 Wash.2d 440 (1947). There is no fraud alleged

---

[19] Debtor's Opposition, p.4; Parishes' Opposition, VI.B.3. (misnumbered as 1).

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 23

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 6 of 20

anywhere in the pleadings. The very worst that can be said is that a few parishioners will be disappointed if the Diocese is required to pay its debts.

Another reason the partial performance doctrine does not apply is that there are no traditional beneficiaries. As explained earlier, in a corporation sole the trust concept simply differentiates between the bishop's personal and official capacities. It does not entail trustors, trustees and beneficiaries. If the Court did apply these concepts to these facts, the beneficiary of the express trust as identified in the Articles would be the Roman Catholic Church in the Diocese of Spokane; not its parishes or the parishioners.

Even though the doctrine clearly does not apply, the Diocese, Parishes and parishioners fail to satisfy the test for the partial performance doctrine. The test requires that the beneficiary: (1) enter into possession, (2) make improvements, (3) pay consideration, and (4) change position in reliance on the trust. In evaluating these elements, the factors must point to the existence of the oral agreement and not be within the context of some other relationship. Diel v. Beekman, 7 Wash.App. 139, 144 (1972)("[T]he acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship, such as that of landlord and tenant, or may be accounted for on some other hypothesis, they are not sufficient.") The Diocese, Parishes and parishioners fail the test for the following reasons:

(1) The express trust beneficiary must enter into possession of the property: While the Committee does not dispute that members of the Catholic community visit the Disputed Real Property for worship services and other functions, the pastor is the person who is actually the representative of the occupant of the property. The pastor is an employee of the Diocese according to the terms of his employment agreement, which also designates him as the Bishop's agent.

(2) The beneficiary must make improvements to the property: The Committee does not dispute that parishioners make contributions that may be used for

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 24

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9210 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 7 of 20

maintenance or improvements of the Disputed Real Property. However, the Committee does dispute that any expenditure by the parishioners was intended by them to create a property interest in the Disputed Real Property. In <u>Canovaro v. Brothers of Order of Hermits of St. Augustine</u>, 326 Pa. 76, 78, 191 A. 140, 142-43 (1937), the Pennsylvania Supreme Court considered a petition by members of a parish to impress the Church property with a trust for them because they had purchased and maintained the property with their contributions, donations, and collections. The Court declined to do so and made the following characterization of the parishioners' funding:

> The impulse or motive of the donors in giving was the spirit and love of the church generally, to promote the Catholic faith under its protection, not because of any so-called independent association or any of the members who composed it. It was given for the purpose of advancing the worship of God according to the faith and discipline of the Roman Catholic Church and for no other purpose.

<u>Id.</u> at 82.

Just as in <u>Diel v. Beekman</u>, 7 Wash.App. 139, 144 (1972), the parishioners' contributions in this case "point to some other relationship . . . or may be accounted for on some other hypothesis". Accordingly, "they are not sufficient" and the partial performance doctrine argument fails.

(3) <u>The beneficiary pays consideration</u>: As noted above, none of the parties even suggests that the Parishes or the parishioners were intending to acquire a property interest in the Disputed Real Property.

(4) <u>The beneficiary changes position in reliance on the trust</u>: Nothing in the parishioners' affidavits suggests that the Catholic community in Spokane expected a beneficial interest in the Disputed Real Property. They did not contribute money with the same expectation as an investor in a public company. If someone moved away from the parish, they did not expect a return of their money and their membership in the parish was not conditioned upon a capital contribution. See <u>Local No. 2508,</u>

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 25

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9210, Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 8 of 20

Lumber & Sawmill Workers v. Cairns, 197 Wash. 476, 487 (1938) ("[U]pon dissolution of unincorporated associations the property of the association is distributed per capita among it members."). Obviously, the Parishes themselves had no change of position because they had no alternative but to operate within the Church's hierarchical structure.

### a. The Uniform Management of Institutional Funds Act does not apply to the facts in this case

The Committee cited In re Crossroad Health Ministry, Inc., 319 B.R. 778 (Bankr. D.D.C. 2005), for that court's holding that a donor's restricted gift of property was, for purposes of resolving the competing claims of creditors and the donor, unrestricted property of a chapter 7 estate. The Parishes ignore the import of the case and dismiss its applicability to chapter 11. However, the scope of Section 541 does not vary according to the chapters of the Bankruptcy Code.

The Parishes argue that the Uniform Management of Institutional Funds Act, RCW Chapter 24.44 (the "Funds Act") impinges upon the general distribution priorities applicable in a bankruptcy proceeding.[20] The Funds Act, however, does not restrict the Diocese's ability to pay the claims of sex abuse survivors for four reasons. First, the Disputed Real Property is not an "institutional fund", which is the subject of the Funds Act. An "institutional fund" does not include a fund in which a beneficiary has an interest. RCW 24.44.010. According to the Parishes, they are unincorporated associations with trust claims against the Disputed Real Property. If this were true, both the Parishes and each parishioner would have a property interest in the Disputed Real Property.[21] These interests would disqualify the Disputed Real Property as an "institutional fund." Second, none of the parishioners state that they expressed their restricted intent to any third party when making general donations. Additionally, none of the deeds reflects any restriction that would qualify them as gift instruments under

---

[20] Parishes' Opposition, Section VI.e.

[21] Each parishioner also would have personal liability for the claims of the sex abuse survivors.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 26

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 9 of 20

the Funds Act. Third, the parishioners do not have standing to enforce the Funds Act. See Carl J. Herzog Foundation, Inc. v. University of Bridgeport, 243 Conn. 1, 699 A.2d 995 (Conn. 1997) (examining Connecticut version of this uniform law). Finally, nowhere in the Funds Act is there any indication that the legislature was reversing the abrogation of the charitable immunity doctrine.

Citing the Funds Act has no application to, and is a diversion from, the principal question posed to this Court: Does the Disputed Real Property belong to the Debtor? The answer is a resounding, "yes" because the Debtor is a corporation sole which has ownership and ultimate authority over the Disputed Real Property.

### 5. No Resulting Trust Can Arise on These Facts

Having failed to demonstrate an express or statutory trust, the Parishes and the Debtor twist the doctrine of resulting trusts in an effort to claim the property of the bankruptcy estate.[22] In so twisting, they misconstrue undisputed facts and misapply the law.

#### a. The applicable law

A resulting trust arises when a transfer of legal title occurs under circumstances indicating the absence of an intention that the person acquiring title should have the beneficial interest. Thor v. McDearmid, 63 Wash.App. 193, 201, (1991) (citing Diel v. Beekman, 7 Wash.App. 139 (1972), review denied, 81 Wash.2d 1007 (1972), overruled on other grounds by Chaplin v. Sanders, 100 Wash.2d 853 (1984)). The most typical circumstance suggesting such an intention is found "where one person pays the consideration for a purchase and the title is taken in the name of another, although they may result from other kinds of transactions." Farrell v. Mentzer, 102 Wash. 629, 633, (1918).

In Engel v. Breske, 37 Wash.App. 526, 528 (1984), review denied, 102 Wash.2d 1025 (1984), the court held there is no presumption of an intent to create a

---

[22] Parishes' Opposition, Section VI.D.; Debtor's Oposition, pp. 18-20.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 27

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 10 of 20

resulting trust in favor of the beneficiary who provides only a portion of the consideration for the purchase of property. If there is no presumption, the beneficiary has the burden of proving the existence of the resulting trust by clear, cogent and convincing evidence. Id. at 530. See also Omer v. Omer, 11 Wash.App. 386, 391 (1974).

### b. Examination of the facts

Here, not one of the declarations put forward by the Parishioners is executed by a grantor under any of the deeds at issue in the Motion. Moreover, none of the declarations is made by a parishioner who claims to have given all the funds necessary to facilitate the Diocese's purchase of any parcel of real property. Finally, none of the parishioner's declarations say that the parishioner gave money for the purchase of any of the Disputed Real Property intending to retain a beneficial interest in the money or the Disputed Real Property. Changing the focus to the intent of the Diocese, nowhere in the papers submitted by the Debtor is there a recitation of a promise to parishioners who donated property (whether cash or Disputed Real Property) would be held in trust for the donor or her parish.

It is undisputed that none of the Parishes hold legal title to the Disputed Real Property. Instead, with very minor variations which do not change the analysis, all of the Disputed Real Property is titled in the name of the "The Catholic Bishop of Spokane, a corporation sole."

### c. Focus on the Debtor's argument

Because the Debtor wants to keep the Disputed Real Property from the survivors of sexual abuse perpetrated by clergy, the Diocese contends that a resulting (or implied) trust governs the beneficial interest in the Disputed Real Property. Specifically, the Debtor argues:

> [A] resulting trust may arise if a parishioner donates property to a specific Parish, and intends to convey the interest in the property to the Parish. Due to

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 28

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 11 of 20

> Washington's corporation sole statute, legal title is placed in the name of the Diocese, which is under legal and ecclesiastical obligation to hold the property "in trust" for the benefit of the Parish. If the purpose of the grant fails, and the donor gave no indication of a greater charitable intent, the property will revert back to the granting parishioner. In no event could the property be diverted to another use – such as paying diocesan creditors.[23]

Not one case is cited in support of this sweeping generalization.

### d. Examination of Church trust cases

The Committee has undertaken an extensive search of the case law nationwide in an effort to determine what showing a parishioner/donor must make in order to prevail on a resulting or constructive trust theory against the Church. Apparently, there are no modern decisions upholding a parishioner's assertions of constructive or implied trusts against a Catholic diocese or order where title is vested in the name of the official representative.

In <u>Fortier v. Hartford Roman Catholic Diocesan Corp.</u>, 2005 WL 758113 *3 (Conn. Super. 2005) and <u>Collins v. Hartford Roman Catholic Diocesan Corp.</u>, 2004 WL 2668255 *1 (Conn. Super. 2004) (both unpublished decisions), the court denied parishioners the right to intervene in sex abuse litigation. Specifically, the parishioners claimed that their contributions could be used solely for worship and education purposes, but not for payment of claims arising from sex abuse by a priest. In each case, the court denied the intervention motion because one's interest as a contributor to a parish or archdiocese was not a "significantly protectible interest" in the assets of the parish and archdiocese.

In <u>Akoury v. Roman Catholic Archbishop of Boston</u>, 2004 WL 2341333 *3 (Mass. Super. 2004), the court refused to enter a preliminary injunction sought by a parish council, finance committee and individual parishioners to prevent the closure of

---
[23] See Debtor's Opposition, pp. 19-20.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 29

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

a parish even though the parishioners had been self supporting and had a bank account with over $200,000, the court rejected all claims of implied trust.

In <u>In re Carmel of St. Joseph of Santa Ynez</u>, 237 B.R. 155 (BAP 9th Cir. 1999), the Ninth Circuit Bankruptcy Appellate Panel sustained the denial of constructive and resulting trust claims in an action by a donor of funds who expressly intended for the purchase of specific real property for a Carmelite monastery. In so holding, the BAP explained that "[the donor's] interest, if any, was only in the money. He did not obtain a beneficial interest in the Property. [The donor] has not presented any evidence to support the proposition that the Debtor agreed to give [the donor] the Property if the Debtor failed to build a new monastery on it. [The donor] has no right to the Property and there is no basis for the imposition of a constructive trust or a resulting trust." <u>Id.</u> at 160.

In <u>Fortin v. Roman Catholic Bishop of Worcester</u>, 416 Mass. 781, 625 N.E.2d 1352 (1994), the court held that the bishop (as a corporation sole) was both the legal and beneficial owner of school property. Thus, a resulting trust did not arise from a parish school corporation's conveyance of all its interest in church property to the bishop; and no evidence supported the parishioners' contention that there was no intention to make a gift. The court went on to reject the donor's constructive trust argument for lack of evidence of wrongdoing by the bishop.

In <u>Save Immaculata/Dunblane, Inc. v. Immaculata Preparatory School, Inc.</u>, 514 A.2d 1152, 1157 (D.C. App. 1986), alumnae joined with parents of several students and a nonprofit school corporation formed to perpetuate two private schools and brought an action against the schools and the religious order that owned the schools' property seeking to impose a resulting or constructive trust. The religious order had record title to the properties. The school corporations had reimbursed the order for initial expenditures in founding the schools, and since then had financed building improvements. The plaintiffs also claimed a beneficial interest based on their and others' donations to the schools which, they contended, were made solely with

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 30

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 13 of 20

educational purposes in mind. The court, expressly applying "neutral principles of law," rejected the asserted trusts, and noted the absence of any authority or evidence supporting a constructive or resulting trust.

In <u>Struemph v. McAuliffe</u>, 661 S.W.2d 559 (Mo.App. 1983), the appellate court applied neutral principles of law in determining that the trial court erred in finding that a deed to church property given to the archbishop or his lawful successor created a trust giving parishioners control over church property. Specifically, the appellate court found that scrutiny of the documents in purely secular terms provided no basis for finding any control over the property to be vested in the parishioners and scrutiny of the canons offered in evidence clearly revealed that property was held subject to control of the church hierarchy.

In <u>Reid v. Barry</u>, 112 So. 846, 93 Fla. 849 (1927), a quiet title action was filed by the bishop against the heirs of a grantor of real property to a predecessor bishop. In 1888, Robert Reid conveyed by a deed real property to Bishop Moore. The deed omitted the word "heirs" from the vesting language. As a result, Reid's heirs claimed an interest in the property. The court rejected arguments that such a deed to the bishop as a corporation sole created an express trust or an implied trust, stating:

> "Absolute control and power of disposition," which we think this deed by its terms vested in the grantee and its successors, "are inconsistent with the idea of a trust."

Id. at 875-879 (citation omitted).

In <u>Heiss v. Vosburg</u> 18 N.W. 463, 464 (Wis. 1884), the court held that congregants who funded the operations of a church were liable for trespassing against the Bishop when they attempted to raze an old church because the congregants had no equitable interest in the real property on account of their contributions.

In <u>Hennessey v. Walsh</u> 1875 WL 4791 *13 (N.H. 1875), the court denied a petition by certain parishioners to replace a bishop. The court held that the

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 31

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:33    Pg 14 of 20

parishioners did not have a resulting trust interest in church property by virtue of their contributions to the construction and maintenance of the church.

Finally, the Parishes' citation to Matter of Torrez, 63 B.R. 751, 754-55 (9th Cir. BAP 1986), is not on point. In Torrez, the claimants purchased real property with their own funds and with the intent to own it, but they put the title in the name of their adult children in order to have the property qualify for a federal water program. The children filed for bankruptcy and brought an action to quiet title so they could sell the property. The Panel held that the imposition of a resulting trust was appropriate since title was only put in the children's names to avoid certain restrictions in the government program. In other words, the parties never intended for the children to actually own the property. Here, no parishioner has claimed to have participated in such a transaction and the Debtor has not acknowledged participating in such a transaction. Thus, the outcome in Torrez does not control the result here.

### 6. The Facts Do Not Justify the Imposition of a Constructive Trust

Not satisfied with claiming the existence of an express trust, a statutory trust and a resulting trust, the Debtor and the Parishes alternatively claim that a constructive trust should be imposed.[24]

"A constructive trust may arise if consideration for the acquisition of property is furnished by one party and title is taken in the name of another so that retention of the property would result in an unjust enrichment. 5 A. Scott & W. Fratcher, Trusts § 462, at 304 (4th ed. 1989); Scymanski v. Dufault, 80 Wash.2d 77, 89 (1971); Aebig v. Commercial Bank of Seattle, 36 Wash.App. 477, 479 (1984). The deciding factor is whether the party who possesses the property has been unjustly enriched. Betchard-Clayton, Inc. v. King, 41 Wash.App. 887 (1985), review denied, 104 Wash.2d 1027 (1985); Mehelich v. Mehelich, 7 Wash.App. 545 (1972). Yates v. Taylor, 58 Wash.App. 187, 190-91 (1990).

---

[24] Debtor's Opposition, p. 17; Parishes' Opposition, Section VI.D.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 32

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

Although a constructive trust usually is based on findings of fraud (not alleged in this case), a constructive trust can be premised on a quasi-contractual obligation. There are two elements necessary for the imposition of a quasi-contractual obligation: (1) the enrichment of the defendant must be unjust and (2) the plaintiff cannot be a mere volunteer. Trane Co. v. Randolph Plumbing & Heating, 44 Wash.App. 438 (1986); Yates v. Taylor, 58 Wash.App. 187, 192 (1990).

Thus, the Court must examine two essential questions: (1) is the enrichment of the defendant unjust, and (2) were the parishioners volunteers? With respect to the first question, the Parishes presumably would contend that the Diocese would be unjustly enriched by using assets titled in the corporation sole to meet the obligations of the Diocese. With regard to the second question, the parishioners clearly were volunteers. The declarations of the parishioners use words like "pledge," "bequeath," "donation," "gift" and "contribution."[25] These are the words of one under no compunction to make a transfer; they evidence of the actions of a volunteer.[26] Since neither condition is met, no constructive trust can be imposed.

### 7. The Parishes are not eligible to be beneficiaries of a trust

The Debtor cites Leslie v. MidGate Center, Inc., 72 Wash.2d 977 (1967)("Leslie") for the proposition that an unincorporated association can be the beneficiary of a trust.[27] Leslie is distinguishable and is not applicable to the facts in this case for three reasons. First, as in EEOC v. St. Francis and other cases cited by

---

[25] According to Bishop Skylstad, "[t]he acquisition of church property comes about almost exclusively through donations, gifts and bequests of the Christian faithful." See Skylstad Decl., ¶59.

[26] Indeed, in a 1912 letter from the Bishop of Seattle to the priest who founded St Mary's – Spokane Valley parish, the Bishop wrote: "If I did not inform you of the necessity and custom of only receiving absolute and unconditional deeds to all church property I overlooked this important instruction. I would now advise you to impress upon the Catholics of Vera the necessity of obtaining without delay a quitclaim deed to the corporation of the diocese that we may have title that will warrant us to proceed without further delay." See Declaration of Rev. Msgnr. John Steiner -- Exh. B, pages 3 and 4. (Docket No. 199) Clearly, the Church was only interested in gifts from volunteers.

[27] Debtor's Opposition, p. 25; Parishes' Opposition, Section VI.A.1.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 33

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 16 of 20

the Committee, a parish within a corporation sole structure is merely an unincorporated division of the corporation sole. On this basis alone, the Debtor's argument fails. Second, the Debtor's own Articles identify the beneficiary of the alleged trust as the "Roman Catholic Church of the Diocese of Spokane". See Affidavit of William S. Skylstad, Exh. B, Article IV. To the extent traditional trust principles even apply, the beneficiary of the trust clearly is not the Parishes. Third, the ruling in Leslie should not be extended to justify the Parishes' eligibility as a trust beneficiary. Leslie stands for the narrow proposition that:

> [T]he unincorporated association is capable of being a beneficiary of a private trust, either because it is considered a de facto legal entity, or on the theory that the gift is to the association until incorporation and then to a corporation to be formed.

Id. at 982 (citing Bogert, The Law of Trusts and Trustees, § 167 (2d ed. 1965)).

The present dispute does not involve a private trust, the Parishes' are not considered de facto legal entities and there is no indication that the Parishes' alleged beneficial interests would be transferred to another corporation. Leslie was a ruling based in equity which justified an unincorporated association's ability to be a temporary beneficiary of a trust only because the parties so intended by agreement and because the subject property was to be transferred to a corporation to be formed. Fundamentally, Leslie has no application to the facts in this case.

### 8. Judicial Estoppel Applies Here

The Diocese is estopped from contending that it holds the Disputed Real Property in trust for the parishioners in the Diocese.[28] The parties agree that the purpose of judicial estoppel is to maintain the integrity of the judicial system and that the application of the doctrine requires consideration of a non-exclusive non-mandatory list of factors. New Hampshire v. Maine, 532 U.S. 742, 751 (2001). The parties disagree, however, on whether the circumstances of this case and the Diocese's

---

[28] Debtor's Opposition, p. 27; Parishes' Opposition, Section VI.A.4.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 34

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 17 of 20

litigation position in Munns v. Martin, 131 Wash. 2d 192 (1997) (en banc) ("Munns") and Miller v. Catholic Bishop of Spokane, 2004 WL 2074328 (Wash. App. 2004) ("Miller") warrant application of judicial estoppel to prevent the Diocese from asserting that it holds the Disputed Real Property in trust for parishioners.

The Diocese contends that Munns does not implicate judicial estoppel because its interests were not adverse to the parish while ignoring whether its litigation position was adverse to its parishioners. In fact, the Diocese's brief to the Washington Supreme Court makes that adversity clear. In that brief, the Diocese defines the term "Bishop of Spokane" to include the Catholic Bishop of Spokane, the pastor, the parish council and the parish building committee. See Brief of Respondent Catholic Bishop of Spokane at 1, attached to the Supp. Stang. Aff. as Exh. 3. According to the opinion, the Diocese was "acting through the building committee". This made the parish building committee the Diocese's agent. In addressing which party had the burden to demonstrate entitlement to relief, the Diocese argued that the parishioners participating in the Munns Group had no interest in the property.[29] Brief of Respondent Catholic Bishop of Spokane at 3 ("The Bishop of Spokane, not the Munns Group, owns the St. Patrick's school building in question. The Munns Group have no proprietary interest and are not in any way owners of the building in question."). In addition, the definition of "Bishop of Spokane" notably left out the parish itself but included only the pastor, an agent of the Diocese and committees of parishioners who, like the Munns Group, had no interest in the property.

In Miller, the Diocese's interest in the property was a critical issue.[30] The existence of a duty of care and the standard of care to the injured employee turned on whether the Diocese was a landlord or a licensor. While the Court analyzed the

---

[29] The Diocese's brief defines seven people (all parishioners save one) as the "Munns Group". Supp. Stang. Aff., Exh. 3, p.1.

[30] The Committee cited to Miller v. Catholic Bishop of Spokane, 2004 WL 2074328 (Wash.App. 2004) to illustrate the Diocese's inconsistent posturing on who has interests in the Disputed Real Property, not as legal precedent.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 35

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 18 of 20

Diocese's liability from both perspectives, the Diocese advocated and the Court held that it was a licensor. As a licensor, the Diocese was the possessor of the property. As such, the parish could not satisfy the first element in the partial performance exception to the Statute of Frauds, namely that the beneficiary is in possession of the trust res. The relationship between the parish in <u>Miller</u> and the Diocese is no different than the relationship between the parishes in this case and the Diocese.

Both cases establish the Diocese's property ownership in contexts that should judicially estop the Diocese. First, the Diocese contended in both cases that it was the owner of the properties. This inconsistency is especially apparent because the Parishes now claim to be both owners and possessors of the Disputed Real Property. Second, the opinions clearly establish that the courts determined the property issue and nothing in the Diocese's or Parishes' Oppositions suggests that the courts erred.

Judicial estoppel is rooted in equity and fairness. Such inconsistencies must be brought to the court's attention. These inconsistencies are deliberate and dissembling. Accordingly, the Parishes and Diocese should be judicially estopped from arguing that they, or the parishioners, have an ownership interest in the Disputed Real Property.

### 9. The Motion Does Not Create an Intrachurch Dispute

In the Diocese's attempt to scare the Court away from applying civil law to the rights of creditors, the Diocese has claimed that "the essence of the [Committee's] Complaint pits the Diocese against the parishes."[31] The Diocese's contention ignores the reason for this case.

This has never been an intrachurch dispute. It has always been a dispute between the Diocese's creditors, on the one hand, and the Diocese and its divisions, on the other hand. The Diocese filed bankruptcy to avoid the collection actions of survivors who inevitably would have obtained judgments against it. If the Diocese had not filed bankruptcy, one of two things would have occurred: (1) the Diocese

---

[31] Debtor's Opposition, p. 40.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 36

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 19 of 20

would have willingly sold off so-called "parish property" to pay creditors as have other bishops around the country, or (2) the judgment creditor/survivors would have levied on the Disputed Real Property. In the first instance, there would have been no dispute. In the second, the dispute regarding ownership of the real property would have arisen in the context of a judgment enforcement proceeding. Under Washington law, a third party claiming an interest or right in levied property has statutory and common law rights to assert its interest. See RCW 6.19.010 et seq. Indeed, a third party claimant can post a bond and immediately recover the levied property or file a motion, without a bond, to recover the levied property after hearing. The responding parties to the motion are the judgment creditor and the sheriff, and the third-party claimant is entitled to a trial on its claim.[32] Under the common law remedies, the third party claimant can file a quiet title action for the real property. Finley v. Finley, 43 Wash.2d 755 (1953). Under any of these remedies, the dispute would be between the judgment creditor/survivor and any of the entities now claiming an interest in the Disputed Real Property.

### 10. A Parish's Ineligibility to be an Involuntary Debtor Does Not Preclude Substantive Consolidation

The Parishes incorrectly contend that the Court cannot substantively consolidate them with the Diocese because they cannot be involuntary debtors (i.e., they are not moneyed corporations).[33] The Parishes obviously misunderstand the basis for substantive consolidation which is conceptually different from an involuntary bankruptcy. In re Bonham, 229 F.3d 750, 765 (9th Cir. 2000) (substantive consolidation is based on equitable goals). In Matter of Munford, Inc., 115 B.R. 390, 397-98 (Bankr. N.D. Ga. 1990), cited favorably in In re Bonham, supra, the Court stated that substantive consolidation of a nondebtor's assets with those of a debtor is substantially different from and did not circumvent an involuntary petition.

---

[32] In this case, the Parishes would not have the right to sue.

[33] Parishes' Opposition, Section VI.F.1.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 37

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 264    Filed 06/13/05    Entered 06/13/05 12:17:53    Pg 20 of 20