The premise of a successful substantive consolidation motion is that the target non-debtor entity is inseparable from the debtor entity. As an inseparable entity, it need not be given the same protections afforded a truly independent entity. In re United Stairs Corp., 176 B.R. 359, 369-70 (Bankr. D. N.J. 1995). Thus, even if a target non-debtor might be ineligible as an involuntary debtor, because it is paying its debts as they come due, it might still be so inseparable from the debtor that it could be substantively consolidated.

If the Parishes are correct, a trustee, faced with a debtor who successfully moved assets to an inseparably related solvent affiliate, only has the remedy of a fraudulent conveyance action. It could not bring an involuntary petition because the target is solvent and the debtor may not even be a creditor of the target. It cannot bring a substantive consolidation motion because the target's solvency makes it ineligible to be an involuntary debtor. In light of Bonham's approval of debtor and non-debtor consolidations, the Parishes' argument simply is implausible.

The Parishes, in a grossly insensitive statement, argue that substantive consolidation cannot be granted because sex abuse survivors did not deal with the Parishes and Debtor as a single economic unit, and did not rely on the separate credit of the entities. In the manic effort to prove their independence, the Parishes seem to forget that the survivors are creditors because, as children, they were sexually abused by the priests of the Diocese. The Parishes are right. The children did not deal with them as a single economic unit.

On the other hand, the Parishes are so entangled with the Debtor that substantive consolidation is appropriate. The Parishes do not even attempt to deny that the all-encompassing Diocesan Policy Manual norms do not afford them or the pastors assigned to them by the Diocese any real independent existence.
18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 38

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 1 of 17

## C. Neutral Principles Of State Law Are Applicable To This Proceeding

The Diocese would turn the First Amendment on its head, by making canon law the sole arbiter of property ownership. It argues that this Court must defer to canon law on the legal question of the ownership of church property. Under its view, the Diocese exists beyond the bounds of settled property law and may itself independently determine what property is available to satisfy liabilities it has generated. The Diocese has the misguided notion that the United States Constitution permits, and the laws of the State of Washington command, complete and compulsory deference to its religious beliefs for the purpose of determining the ownership of real property. On its theory, this Court may not apply neutral principles of property law, because of the existence canon law.

The Diocese also mistakenly claims that the application of property principles violates the Religious Freedom Restoration Act ("RFRA").

The Diocese's remarkable position flies in the face of black letter First Amendment law. "To permit this [position] would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself." Reynolds v. United States, 98 U.S. 145, 167 (1879); Employment Div. v. Smith, 494 U.S. 872, 885 (1990). The Diocese would have this Court turn away from the rule of law and give arbitrary power to the Church to decide legal remedies are available to third parties.

The law, however, does not support the Diocese. While federal and state principles deprive this Court of jurisdiction to hear and decide cases involving solely ecclesiastical intrachurch disputes, it is required to apply neutral principles of law in all other circumstances, even when the dispute involves a religious institution. Adoption of a contrary rule – that disputes between the Roman Catholic Church and secular creditors over ownership of church property are governed by ecclesiastical law as decided by ecclesiastical authorities – would be a patent violation of the Establishment Clause. Nor can the Diocese circumvent this law by characterizing this

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 39

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 2 of 17

case as the functional equivalent of an intra-church ownership dispute. There is no authority for its position that issues of church property ownership are subject to compulsory deference regardless of the identity of the parties. The express rationale for compulsory deference is to avoid entanglement in religious disputes between parties inside an organization who have submitted themselves to the rules and authority of the organization. That is not the case here. Neutral principles of state property law must be applied to this dispute, and their application is fully compatible with – and mandated by – constitutional requirements.

Finally, the Diocese misapplies RFRA. The application of neutral principles of state property law in this case does not impose any substantial burden on religion. San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1031-32 (9th Cir. 2004) (an incidental burden on religion is not a "substantial burden" as that term is defined under the First Amendment, RFRA, and the Religious Land Use and Institutionalized Persons Act). Indeed, the alleged burden of applying neutral principles of law in this case is nothing more than an incidental burden coincident with the voluntary filing of a federal bankruptcy proceeding. In fact, what the Diocese posits as a substantial burden is not the application of the law but the prospect of an *adverse result*. Even if the negligible burden on religious exercise imposed by the laws of property ownership were found to be substantial, the burden is permissible in light of (1) the state's compelling interest in ensuring redress for the victims of the horrific child abuse perpetrated by its employees; (2) the compelling interest in ensuring that state property ownership rules are predictable and reliable; and (3) the federal government's compelling interest in making sure that its bankruptcy laws are applied in an evenhanded, predictable, and reliable manner. There is no less restrictive means of determining property ownership than the application of settled state property law.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 40

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone : (509) 624-9219 Fax (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 3 of 17

**D. This Court Is Not Deprived Of Jurisdiction Over The Issue Of Property Ownership In This Case, But Must Apply Neutral Principles Of Law**

**1. This is not a case involving a solely ecclesiastical, intrachurch dispute**

There is no dispute that the First Amendment prevents courts from resolving internal church disputes that would require judicial determination of questions of religious doctrine. See Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 708-09 (1976). Reading the cases well beyond their holdings, the Diocese asserts that the Court's jurisdiction in this matter is "severely circumscribed" by federal and state free exercise principles. Presbyterian Church v. Hull Church, 393 U.S. 440, 449 (1969) (civil courts are "severely circumscribed" where a property dispute involves purely ecclesiastical matters. "It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded."); Presbytery of Seattle, Inc. v. Rohrbaugh, 79 Wash.2d 367, 373 (1971) ("in the absence of fraud, where a right of property in an action before a civil court depends upon a question of doctrine, ecclesiastical law, rule or custom, or church government, and the question has been decided by the highest tribunal within the organization to which it has been carried, the civil court will accept that decision as conclusive."); Southside Tabernacle v. Church of God, 32 Wash. App.814, 818-20, 825 (1982) (reviewing the applicable Supreme Court and Washington precedent and holding that summary judgment was improper because whether a church was hierarchical was a question of fact. But warning that if making such a decision "is impossible without immersion in doctrinal issues or extensive inquiry into church polity, a civil court would have to find another ground for its decision such as the neutral principles of law approach."); The Clergy Cases III, No. 4359, slip op. at 17 (Cal. Super. Ct. Sept. 15,

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 41

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9218 Fax (509) 624-9231

2004) ("The claims do not concern whether the Church Defendants or their agents or employees failed to follow church doctrine or were negligent in administering to the spiritual needs of the plaintiffs. . . .The Church Defendants have not advanced any religious purpose for childhood sexual abuse and the Court does not expect them to advance any such purpose.").

While conceding the Court's jurisdiction to hear and decide its voluntarily filed bankruptcy proceeding, it argues that within that proceeding, legal conclusions regarding property ownership are beyond this Court's consideration and must be derived from its canon law.

The insuperable barrier to the Diocese's interpretation of the law is that <u>every</u> decision in which courts have been foreclosed from reaching a dispute involving religious entities and property has involved an *intrachurch* dispute. No dispute between a church and third parties, and certainly not, secular creditors, has ever been decided by deference to the decision-making judicatory body of any church. And this is no intrachurch dispute, to put it mildly.

The Diocese fails to take into account the express rejection of its theory in <u>Gen. Council on Fin. and Admin. of the United Methodist Church v. Superior Court</u>, 439 U.S. 1355 (1978):

> There are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes. But this Court never has suggested that those constraints similarly apply outside the context of such intraorganization disputes. Thus, *Serbian Eastern Orthodox Diocese* and the other cases cited by applicant are not on point. Those cases are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization ....

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 42

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 5 of 17

Gen. Council, 439 U.S. at 1372-73 **(1972)** (emphasis added) (citations omitted). See also Jones v. Wolf, 443 U.S. 595 (1979**)**; C.J.C. v. Corporation of the Catholic Bishop of Yakima, 138 Wash.2d 699 (1999).

As in the property context, if there is a dispute solely between a religious employee and its religious employer, i.e., limited to co-religionists, the courts have been constrained from interfering. In a number of cases involving the relationship between a religious institution and its clergy, most courts have crafted a so-called "ministerial exception" that counsels in favor of a court declining jurisdiction over employment decisions driven by religious belief, because the clergy have knowingly and willingly subjected themselves to the rule of the religious institution. See, e.g., McClure v. Salvation Army, 460 F.2d 553 (5th Cir. 1972), cert. denied, 409 U.S. 896 (1972); Gellington v. Christian Methodist Episcopal Church, 203 F.3d 1299, 1304 (11th Cir. 2000). Yet in case after case involving the effect of church hiring decisions on third parties, such as the victims of child sexual abuse in this case, courts have applied neutral principles of otherwise applicable law to secular disputes arising from such hiring decisions. In C.J.C. v. Corporation of the Catholic Bishop of Yakima, 138 Wash.2d 699 (1999), the Washington Supreme Court stated:

> Finally, we reject the Church's argument that the First Amendment or article I, section 11 of the state constitution prevent this court from imposing a duty on the Church. The First Amendment does not provide churches with absolute immunity to engage in tortious conduct. <u>So long as liability is predicated on secular conduct and does not involve the interpretation of church doctrine or religious beliefs, it does not offend constitutional principles</u>.

C.J.C., 138 Wash.2d at 727-28 (emphasis added); see also Bell v. Presbyterian Church, 126 F.3d 328, 331 (4th Cir. 1997) (First Amendment no bar to applying neutral principles of law to "purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization."); EEOC v. Roman

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 43

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 6 of 17

Catholic Diocese, 213 F.3d 795, 801 (4th Cir. 2000) ("Where no spiritual function is involved, the First Amendment does not stay the application of a generally applicable law such as Title VII to the religious employer unless Congress so provides."); Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 657 (10th Cir. 2002) (quoting Bell, supra, 126 F.3d at 331); Smith v. Raleigh Dist. of N.C. Conference of United Methodist Church, 63 F.Supp.2d 694, 714 (E.D.N.C. 1999) (quoting General Council, supra, 439 U.S. at 1372-73).

The validity of this distinction between intrachurch disputes and disputes involving third parties is beyond dispute. "[I]t is acknowledged that churches and their congregations and hierarchy 'are as amenable as other societal entities to rules governing property rights, torts and criminal conduct.'" Conley v. Roman Catholic Archbishop of San Francisco, 85 Cal. App. 4th 1126, 1130 (Cal. App. Ct. 2000) (quoting Higgins v. Maher, 210 Cal. App. 3d 1170, 1173 (Cal. App. Ct. 1989)). "For '[u]nder the banner of the First Amendment provisions, a clergyman may not with impunity defame a person, intentionally inflict serious emotional harm on a parishioner, or commit other torts.'" Snyder v. Evangelical Orthodox Church, 216 Cal. App. 3d 297, 305 (Cal. App. Ct. 1989) (quoting Madsen v. Erwin, 481 N.E.2d 1160, 1167 (Mass. 1985)); see also Bollard v. California Province of the Society of Jesus, 196 F.3d 940, 947 (9th Cir. 1999) (applying sexual harassment law to religious entity); Molko v. Holy Spirit Ass'n for the Unification of World Christianity, 762 P.2d 46, 59 (Cal. 1988) (rejecting religious entity's free exercise defense to fraud claim). This is a principle that has been repeatedly applied in the context of disputes between clergy abuse victims and their religious tortfeasors. Malicki v. Doe, 814 So.2d 347, 357 (Fla. 2002) (quoting Bell, supra, 126 F.3d at 331); McKelvey v. Pierce, 800 A.2d 840, 851 (N.J. 2002) (citing Bell, supra, 126 F.3d at 331). In Malicki v. Doe, the Supreme Court of Florida cites dozens of federal and state sexual abuse cases finding that First Amendment principles did not deprive civil courts of jurisdiction in a secular dispute involving a religious organization as defendant. Since

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 44

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219, Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 7 of 17

Malicki was decided, even more courts have established that religious organizations are subject to neutral principles of law in cases involving third parties. See Fortin v. Roman Catholic Bishop of Portland, 871 A.2d 1208 (Me. 2005) (Diocese could be liable for negligently supervising a priest that sexually abused an altar boy); Roman Catholic Diocese v. Morrison, No. 2003-IA-00743-SCT, 2005 Miss. LEXIS 295 (Miss. May 5, 2005) (same); John Doe 1 ex rel. Jane Doe 1 v. Roman Catholic Diocese, 154 S.W.3d 22 (Tenn. 2005) (construing state tort law as applied to diocese); Roman Catholic Bishop of Oakland v. Superior Court, 128 Cal. App. 4th 1155 (Cal. Ct. App. 2005) (holding punitive damages are constitutional in clergy sexual abuse cases against Archdiocese).

2. **This is not an internal church dispute**

The second and more prominent theme in the Diocese's argument is that this case presents the functional equivalent of an intrachurch dispute, and therefore it should obtain the benefit of the intrachurch, ecclesiastical cases. The Diocese attempts to revise First Amendment doctrine by arguing that since the Diocese and the Parishes are implicated in its bankruptcy proceeding (even though they are not in an adverse relationship, the rules that would apply to a dispute solely between them governs the third party creditors in this case. This is patent nonsense. The creditors are not asking this Court to determine religious doctrine in any way, but rather to apply state property law on the basis of objective facts and existing conduct.

Courts are precluded from rendering decisions on religious doctrine precisely because the parties to such disputes submitted themselves to the authority of the church, a principle that cannot fairly or reasonably be extended to third parties. As the Supreme Court stated in Watson v. Jones, 80 U.S. (13 Wall.) 679 (1872):

> The right to organize voluntary religious associations to
> assist in the expression and dissemination of any
> religious doctrine, and to create tribunals for the decision
> of controverted questions of faith within the association,
> and for the ecclesiastical government of all the individual
> members, congregations, and officers within the general

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 45

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219, Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 8 of 17

> association, is unquestioned. <u>All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it.</u>

80 U.S. (13 Wall.) at 728-29 (emphasis added). And again: "[T]he decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive, <u>because the parties in interest made them so by contract or otherwise.</u>" <u>Gonzalez v. Roman Catholic Archbishop of Manila</u>, 280 U.S. 1, 16 (1929) (emphasis added); <u>Kedroff v. St. Nicholas Cathedral</u>, 344 U.S. 94, 116 n.23 (same). The same principle is at work in the cases cited above involving church hiring practices: Deference is accorded church employment decisions concerning persons who have submitted themselves to its authority, see, e.g., <u>McClure</u>, 460 F.2d 553; <u>Gellington</u>, 203 F.3d 1299, but neutral principles of generally applicable law are applied when those decisions are not religiously mandated or when they affect third parties. <u>Elvig v. Calvin Presbyterian Church</u>, 397 F.3d 790, 792 (9th Cir. 2005) (Fletcher, J. concurring in denial of petition for rehearing en banc); <u>Elvig v. Calvin Presbyterian Church</u>, 375 F.3d 951, 964 (9th Cir. 2004); <u>Bollard</u>, 196 F.3d at 947; <u>Dolquist v. Heartland Presbytery</u>, 342 F. Supp. 2d 996, 1007 (D. Kan. 2004). In short, church disputes with secular parties are decided by secular law, not by a religious entity's imposition of its religious doctrine to determine the legal outcome.

3. **There is no dispute over religious doctrine for this court to avoid in this case**

The Diocese's creative reading of the First Amendment cases fails for another reason. The Diocese and the Parishes have identified no dispute over doctrine or religious belief that is raised by the property ownership issues raised in this case. "[N]ot every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment." <u>Presbyterian Church</u>, 393 U.S. at 449. The First Amendment requires only that courts "decide church property

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 46

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 9 of 17

disputes without resolving underlying controversies over religious doctrine." Id.; Wolf, 443 U.S. at 602 ("the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice."); Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar, 179 F.3d 1244, 1248 (9th Cir. 1999). As the Supreme Court states in Presbyterian Church, "[c]ivil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." Presbyterian Church, 393 U.S. at 449. Thus in Maktab, supra, the Ninth Circuit stated:

> [A] court may resolve property disputes by applying secular principles of property, trust and corporate law when the instruments upon which those principles operate are at hand. Thus <u>no First Amendment issue arises when a court resolves a church property dispute by relying on state statutes concerning the holding of religious property, the language in the relevant deeds, and the terms of corporate charters of religious organizations</u>.

Id. at 1249 (emphasis added). While the Diocese seeks to distinguish Maktab as a Ninth Circuit case arising from a "neutral principles" state, rather than a "compulsory deference" state such as Washington, it misses the point: There is no controversy over religious doctrine in this case. The creditors respect the Diocese's right to believe whatever it chooses, but have no need nor interest to debate church doctrine when the question is the Diocese's conduct with respect to its property, which is governed by neutral, generally applicable laws. City of Boerne v. Flores, 521 U.S. 507, 535 (1987); Smith, 494 U.S. at 878-79.

The reason that religious conduct must be capable of being regulated is because actions have the capacity to harm others. As Thomas Jefferson famously explained it, "the legitimate powers of government extend to such acts only as are injurious to others. But it does me no injury for my neighbour to say there are twenty gods, or no

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 47

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:36    Pg 10 of 17

God. It neither picks my pocket nor breaks my leg." Thomas Jefferson, <u>Notes on the State of Virginia</u>, in 2 <u>The Writings of Thomas Jefferson</u> 221 (Albert Ellery Bergh ed., 1905). In the words of the Supreme Court, "the [First] Amendment embraces two concepts, -- freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." <u>Cantwell</u>, 310 U.S. at 303-04; <u>see also</u> <u>Boerne</u>, 521 U.S. at 539 (Scalia, J. concurring) ("the most plausible reading of the 'free exercise' enactments…is a virtual restatement of <u>Smith</u>: Religious exercise shall be permitted *so long as it does not violate general laws governing conduct*") (emphasis in original); <u>Smith</u>, 494 U.S. at 877 ("The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires").

  **4. Were this court to decline to apply neutral principles of law to determine property ownership in this case, it would violate the Establishment Clause**

Permitting the Diocese's religious beliefs to determine property ownership in a dispute involving secular third parties would be a resounding violation of the Establishment Clause. The First Amendment's Establishment Clause prohibits the government from enforcing any law that will "aid one religion, aid all religions, or prefer one religion over another." <u>Everson v. Bd. of Educ.</u>, 330 U.S. 1, 15 (1947). In the United States, a dispute between a church and a secular creditor cannot be decided by compulsory deference to church law and decision-making processes. To articulate the proposition is to reject it.

The Diocese mistakenly relies on <u>Serbian Eastern Orthodox Diocese v. Milivojevich</u>, 426 U.S. 696 (1976). In <u>Serbian Eastern Orthodox Diocese</u>, the Supreme Court held that the Illinois courts violated the First Amendment by conducting a detailed review of church proceedings that resulted in the removal and defrockment of the bishop of a hierarchical church. Like every other case in which courts have been precluded from considering ecclesiastical law and church decisions,

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 48

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW Doc 265 Filed 06/13/05 Entered 06/13/05 12:19:56 Pg 11 of 17

the dispute was a strictly internal matter: "It suffices to note that the reorganization of the Diocese involves a matter of internal church government, an issue at the core of ecclesiastical affairs." Serbian E. Orthodox Diocese, 426 U.S. at 721. At bottom, this argument suffers the same fatal defect as most of the Diocese's other legal arguments: it depends entirely on the characterization of this dispute as an internal church matter – and that characterization cannot stand. This is a dispute between the Diocese and child sexual abuse victims over what property will be available to satisfy their claims in a case initiated by the Diocese. It cannot be treated as an internal church dispute, much less decided by agreement between the Diocese and the Parishes. Otherwise, the Diocese would be "a law unto itself," in violation of the First Amendment and the rule of law. See Smith, 494 U.S. at 885; Reynolds, 98 U.S. at 167.

E. **Neutral Principles Of Generally Applicable Property Law Must Be Applied To The Debtor's Property**

This matter must be and should be decided under Section 541 of the Bankruptcy Code and the property laws of the State of Washington. The First Amendment does not prohibit the application of "objective, well-established concepts of trust and property law familiar to lawyers and judges" in the resolution of church property disputes, where the dispute is not an intrachurch doctrinal dispute. Wolf, 443 U.S. at 604-05. There can be no dispute that the Bankruptcy Code and Washington state property laws are generally applicable and facially neutral.[34] For that reason, the First Amendment is not violated by the application of these laws to the Debtor. The Diocese argues, further, that their application violates RFRA and the state constitution. According to the Diocese, it is entitled to avail itself of the benefits of

---

[34] A law is "neutral" if it does not target religiously motivated conduct on its face and is not based on animus or hostility toward a religious entity or religion in general. Locke v. Davey, 540 U.S. 712, 719-21 (2004); Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532-33 (1993). It is "generally applicable" unless it "burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated." Blackhawk v. Pennsylvania, 381 F.3d 202, 209 (3d Cir. 2004); see also Knights of Columbus v. Town of Lexington, 272 F.3d 25, 31-32, 35 (1st Cir. 2001).

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 49

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

title 11 <u>and</u> determine for itself what property may be available for creditors – in a filing, no less, that centers around the Diocese's tort liability involving childhood sexual abuse by its clergy. These arguments misapply the law and must fail.

1.  **Application of Washington's Neutral, Generally Applicable Property Laws in this Case Does Not Violate RFRA**

RFRA provides that a religious entity bears the burden of proving that a law imposes a substantial burden on its religious conduct, and, further, if it does, the "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (2005). RFRA is unconstitutional. <u>Boerne</u>, 521 U.S. 507; Marci A. Hamilton, <u>The Religious Freedom Restoration Act Is Unconstitutional, Period</u>, 1 U. Pa. J. Const. L. 1 (1998). While there is no dispute that it is unconstitutional as applied to state law, those federal courts to address the issue have upheld it as applied to federal law. Despite express language in <u>Boerne</u> stating that RFRA violates the separation of powers because its dictates the interpretation of the First Amendment's Free Exercise Clause across all federal laws, <u>Boerne</u>, 521 U.S. at 515-16; <u>cf.</u> <u>Cutter v. Wilkinson</u>, No. 03-9877, 2005 U.S. LEXIS 4346, at 11-13 (U.S. May 31, 2005), the federal courts of appeal thus far have upheld its constitutionality as a valid exercise of Congress' power to modify federal law, including the Bankruptcy Code. <u>Guam v. Guerrero</u>, 290 F.3d 1210, 1221 (9th Cir. 2002); <u>Christians v. Crystal Evangelical Free Church (In re Young)</u>, 82 F.3d 1407 (8th Cir. 1996), <u>vacated</u>, 521 U.S. 1114 (1997), <u>on remand</u>, 141 F.3d 854, 860-861 (8th Cir. 1998), <u>cert. denied</u>, 525 U.S. 811 (1998) ("<u>Young</u>").[35]

---

[35] While the holding in <u>Boerne</u> was limited to RFRA's application to the state law at issue, the Supreme Court suggested its defects ran deeper:

> When the Court has interpreted the Constitution, it has acted within the province of the Judicial Branch, which embraces the duty to say what the law is. <u>Marbury v. Madison</u>, 1 Cranch, at 177, 2 L.Ed. 60. When the political branches of the Government act against the background of a judicial interpretation of the Constitution already issued, it must be

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 50

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219  Fax: (509) 624-9231

Relying heavily on Young, the Diocese contends that the application of Section 541 and Washington property law would impose a substantial burden on the exercise of religion. In that case, the trustee's effort to recover $13,000 in tithes from a church was held to violate RFRA. The analysis of the two-member majority of the panel was curious at best. First, it eviscerated the "substantial burden" standard, stating: "It is sufficient that the governmental action in question meaningfully curtails, albeit retroactively, a religious practice of more than minimal significance in a way that is not merely incidental." 82 F.3d at 1419. Second, it found no compelling governmental interest, by denigrating the importance of a predictable and stable bankruptcy system and stating that "bankruptcy is not comparable to national security or public safety." Id. at 1420. The Eighth Circuit concluded that "we cannot see how the recognition of what is in effect a free exercise exception to the avoidance of fraudulent transfers can undermine the integrity of the bankruptcy system as a whole." Id. at 1420. Other courts have disagreed. See In re Newman, 203 B.R. 468, 477 (D. Kan.1996) ("In comparison to this modest burden on the debtors' practice of religion, the government's significant interests in maintaining an equitable system for protecting creditors, for permitting debtors to obtain a 'fresh start' from overwhelming debt, and in avoiding excessive entanglement with religious matters are compelling."); In re Bloch, 207 B.R. 944, 951 (D. Colo. 1997) (quoting Newman for the same proposition). By comparison to Young, the Diocese argues,

> [t]he interpretation of §541 or the application of strong-arm or avoidance powers to ignore or avoid the existence of a trust in order to convert parish property is vastly more onerous on the free exercise of religion than is the application of avoidance powers to recover tithes. If the

---

understood that in later cases and controversies the Court will treat its precedents with the respect due them under settled principles, including *stare decisis*, and contrary expectations must be disappointed. RFRA was designed to control cases and controversies, such as the one before us; but as the provisions of the federal statute here invoked are beyond congressional authority, it is this Court's precedent, not RFRA, which must control. Boerne, 521 U.S. at 536.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 51

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

> recovery of $13,000 in tithes substantially burdens the exercise of religion, surely, depriving the Catholic community and the people of Eastern Washington of entire parishes, schools and charitable institutions would likewise substantially burden the practice of religion. This would not only curtail the ability to engage in religious activity, but would prevent it altogether.

Cross-Motion, p. 30.

Even under this faulty analysis of Young, the Diocese's analysis is specious. As set forth below, it grossly distorts both the burden and the compelling interest supporting the application of Section 541 and state property law.

### 2. Applying Section 541 and State Property Law Does Not Impose a Substantial Burden on the Exercise of Religion

> To show a free exercise violation, the religious adherent . . . has the obligation to prove that a governmental regulatory mechanism burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir.1987), aff'd sub nom. Hernandez v. Commissioner, 490 U.S. 680 (1989) (emphasis added) (citations omitted); Midrash Sephardi v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004); San Jose Christian College, 360 F.3d 1024, 1034-35 (9th Cir. 2004); Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 760-61 (7th Cir. 2003); Grosz v. Miami Beach, 721 F.2d 729, 739 (11th Cir. 1983) (substantial burden cannot be shown merely by expense). Debtor must show that the burden the law imposes is substantial, and not merely incidental to a generally applicable, neutral law. See, e.g., Hernandez, 490 U.S. at 699-700. Debtor cannot satisfy either prong of the substantial burden test.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 52

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

The application of Section 541 and state property law does not impose a substantial burden. Section 541 simply defines what constitutes property of a bankruptcy estate, as determined under applicable state law. RFRA cannot be a defense to the application of state law, having been declared unconstitutional in that context. Regardless (even if the application of state property law were to be characterized as an application of *federal* law because it is being applied by a bankruptcy court under Section 541), the Supreme Court has already held that applying such neutral principles of law to the ownership of ecclesiastical property is not burdensome:

> The method relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges. It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice. Furthermore, the neutral-principles analysis shares the peculiar genius of private-law systems in general--flexibility in ordering private rights and obligations to reflect the intentions of the parties. Through appropriate reversionary clauses and trust provisions, religious societies can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a schism or doctrinal controversy. In this manner, a religious organization can ensure that a dispute over the ownership of church property will be resolved in accord with the desires of the members.

Wolf, 443 U.S. at 603-04.

The Diocese mischaracterizes the nature of the possible burden. Nothing about the application of Section 541 and state property law to the manner in which religious organizations hold property substantially interferes with a tenet or belief that is central to religious doctrine. These are issues of property ownership, not belief. "[O]wning a church is a desirable accessory of worship, not a fundamental tenet of [a congregation's] religious beliefs." Open Door Baptist Church v. Clark County, 140 Wash.2d 143, 165 (2000) (quoting Lakewood, Ohio Congregation of Jehovah's

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 53

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 265    Filed 06/13/05    Entered 06/13/05 12:19:56    Pg 16 of 17

Witnesses, Inc. v. City of Lakewood, Ohio, 699 F.2d 303, 307 (6th Cir.1983)). In Fortin v. Roman Catholic Bishop of Portland, 871 A.2d 1208 (Me. 2005), the Maine Supreme Court rejected a diocese's defenses founded in the Maine Constitution, which (like the Washington Constitution) affords stronger protection to religious liberty than the First Amendment. Fortin, 871 A.2d at 1227; see also First Covenant Church of Seattle v. Seattle, 120 Wash.2d 203, 224 (1993). The court stated that the diocese had "fail[ed] to identify a specific religious doctrine or practice that will be burdened if [the plaintiff's] claim is not dismissed." Fortin, 871 A.2d at 1226. Analyzing U.S. Supreme Court precedents, the court stated, "[t]heological beliefs only become relevant to the First Amendment analysis . . . if the Diocese demonstrates that its ability to practice specific beliefs will be interfered with in some real and substantial way." Id. (citing Church of the Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 565 (1993)). Nothing in either federal bankruptcy law or state property law prohibits the practice of the Debtor's religion.

### 3. The Application of Section 541 and State Property Law in this Case is Supported by a Compelling Governmental Interest, and is the Least Restrictive Means of Furthering that Interest

There is a compelling governmental interest in applying Section 541 and state property law to determine what constitutes property of the estate. The property of the estate concept is at the very core of the entire system of bankruptcy. Without it as a starting point, and without determining it according to neutral, predictable, and stable property laws, the fair and equitable treatment of creditors is impossible. The concept is so central, in fact, that the Bankruptcy Code quite literally cannot be administered without it. The centrality of Section 541 makes its application a compelling governmental interest, which is a distinction that has been recognized even by those courts that have declined to enforce avoidance powers to recover tithes:

> The federal government's interest in maintaining the bankruptcy system is one of the highest order and must, therefore, be regarded as compelling. That is not to say, however, that the interests served by the avoidance

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 54

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231