> statutes are compelling as well. To be so, they must be so integral to the bankruptcy system that its ability to carry out its mission would be severely compromised by their absence.

In re Hodge, 220 B.R. 386, 392 (D. Idaho 1998); see also In re Newman, 203 B.R. at 477; In re Bloch, 207 B.R. at 951. A Section 541 determination is integral to the bankruptcy system. Accordingly, its application is supported by a compelling governmental interest.

There is another compelling governmental interest implicated by this case. This case was filed by the Diocese in order to address the claims brought against it by victims who were sexually abused as children by employees of the Diocese. The conduct at issue is, by all accounts, sickening, and has destroyed countless lives. (See Kosnoff Decl.) The Diocese's culpability drove it to seek bankruptcy protection of its assets. The outcome of this litigation may be the single most important factor in determining whether these victims are compensated for the grievous harms they have suffered. The state has a compelling interest in ensuring that they have a remedy, and that its tort laws are applied in a way that will deter future institutional tortfeasors facing childhood sexual abuse.

The Washington Supreme Court noted that when the Legislature amended the statute of limitations for child sexual abuse, it "made clear that its primary concern was to provide a broad avenue of redress for victims of childhood sexual abuse who too often were left without a remedy under previous statutes of limitation." C.J.C., 138 Wash. 2d at 712. There is, to put it mildly, a "strong public policy in favor of protecting children against acts of sexual abuse." Id. at 726. There can be no question that the protection of children from childhood sexual abuse, especially perpetrated by trusted adults, is an interest of the highest order. The Clergy Cases III, No. 4359, slip op. at 18 (Cal. Super. Ct. Sept. 15, 2004) ("The state has a strong interest in preventing childhood sexual abuse as defined in C.C.P. 340.1(e)."); Juarez v. Boy Scouts of America, Inc., 81 Cal. App. 4th 377, 407 (Cal. Ct. App. 2000), review

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT – 55

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 625-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 266    Filed 06/13/05    Entered 06/13/05 12:21:35    Pg 1 of 7

denied, No. S089411, 2000 Cal. LEXIS 6328 (Cal. Aug. 9, 2000) ("Our greatest responsibility as members of a civilized society is our common goal of safeguarding our children, our chief legacy, so they may grow to their full potential . . . this objective is gravely threatened by sexual predators who prey on young children"); Conley, 85 Cal. App. 4th at 1130 (no violation of First Amendment when priest sues church for retaliation for reporting child abuse due to state's compelling interest in protecting children); People v. Hodges, 10 Cal. App. 4th Supp. 20, 32-33 (Cal. Ct. App. 1992) (upholding the conviction of two priests for failing to report child abuse pursuant to California Child Abuse Reporting Law, and holding that state had compelling interest in protection of children); see also Sable Communications of California v. FCC, 492 U.S. 115, 126 (1989) ("there is a compelling interest in protecting the physical and psychological well-being of minors"); North Valley Baptist Church v. McMahon, 696 F. Supp. 518, 526 (E.D. Cal. 1988), cert. denied, 496 U.S. 937 (1990) (free exercise challenge failed where a California statute was designed to protect the health and safety of children receiving care outside their home because that was held "a compelling state interest of the highest order"); Fortin, 2005 ME at 67 ("In matters concerning the protection of children from physical and sexual abuse, societal interests are at their zenith."); Walker v. Superior Court, 763 P.2d 852, 871 (Cal. 1988) (Free Exercise not a bar to prosecution of faith healing mother for involuntary manslaughter and felony child endangerment because "an adequately effective and less restrictive alternative is not available to further the state's compelling interest in assuring the provision of medical care to gravely ill children whose parents refuse such treatment on religious grounds").

Children's protection from childhood sexual abuse is an interest of the highest order, therefore, and no institution should be permitted to use the federal bankruptcy laws, or RFRA, to undermine the purposes of tort liability. Even the General Counsel for the United States Conference of Bishops has acknowledged that liability awards are a substantial instrument of deterrence *for religious institutions*:

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 56

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 266    Filed 06/13/05    Entered 06/13/05 12:21:35    Pg 2 of 7

> Given the dominance of social policy arguments in the cases discussed above, it is not surprising that liability theory is often used as a means through which social change is either encouraged or regulated. To the extent that substantial liabilities can occur to religious organizations for actions of their members or their ministers, even when they are acting in complete accord with religious doctrine, litigation has a substantial educative effect on the organization. The effect litigation has on the organization is illustrated in both extraordinary and ordinary ways.

Mark E. Chopko, <u>Ascending Liability of Religious Entities for the Actions of Others</u>, 17 Am. J. Trial Advoc. 289, 334 (1993).

A compelling interest exists in ensuring that the victims of this case are not deprived of remedies against the Diocese through the expediency of a federal bankruptcy proceeding. Their interests certainly should not be sacrificed according to Diocesean *fiat*. If this Court were to find that the Diocese can unilaterally dictate the scope of its property through canon law, and thereby reduce the likelihood victims will be compensated for their injuries fairly, it would have turned the Bankruptcy Code in to a haven for criminals.

There should be no genuine issue that applying generally applicable state property law to determine property ownership is the least restrictive means of further the government's compelling interest in applying the Bankruptcy Code and ensuring just compensation. As previously noted, the Supreme Court has opined specifically that

> Through appropriate reversionary clauses and trust provisions, religious societies can specify what is to happen to church property in the event of a particular contingency, or what religious body will determine the ownership in the event of a schism or doctrinal controversy. In this manner, a religious organization can ensure that a dispute over the ownership of church property will be resolved in accord with the desires of the members.

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 57

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

Wolf, 443 U.S. at 603-04.

### 4. As Interpreted by the Diocese, RFRA Violates the Establishment Clause

At bottom, the Diocese's is really arguing that the application of neutral principles of property law impose a substantial burden, because it will result in an *adverse ruling* under such law. That analysis is logically flawed. The Diocese first assumes its desired conclusion, that the property at issue is held in trust, then posits the hypothetical burden that will be presented if the Court issues a contrary ruling. Cases decided under RFRA do not support this manner of analysis. Financial cost cannot be adequate by itself to constitute a "substantial burden" on free exercise. If it were, then every tax imposed by government would constitute a substantial burden. The cases say the opposite. See, e.g., Jimmy Swaggart Ministries v. Board of Equalization, 493 U.S. 378, 386-87 (1990); Tony & Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 303-04 (1985); United States v. Lee, 455 U.S. 252, 257-58 (1982); Grosz, 721 F.2d at 739. Under the Debtor's argument in this case, RFRA is not a law imposing strict scrutiny on federal law, but rather an outright, blanket grant of statutory immunity for religious organizations. Given the large number of cases in which the "substantial burden" burden of proof has not been met by claimants, it is quite clear that RFRA is anything but mandatory accommodation of any religious conduct. See Ira C. Lupu, The Failure of RFRA, 20 U. Ark. Little Rock L.J. 575 (1998).

In any event, the Debtor's interpretation would clearly violate the Establishment Clause. Churches are not above the law. See, e.g., Malicki, 814 So.2d at 351; Moses v. Diocese of Colorado, 863 P.2d 310, 320-21 (Colo. 1993), cert. denied, 511 U.S. 1137 (1994) ("Application of a secular standard to secular conduct that is tortious is not prohibited by the Constitution"); McKelvey, 800 A.2d at 852 ("Of course churches are not--and should not be--above the law. Like any other person or organization, they may be held liable for their torts and upon their valid contracts.")

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 58

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 266    Filed 06/13/05    Entered 06/13/05 12:21:55    Pg 4 of 7

(quoting Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164, 1171 (4th Cir. 1985)). Congress specified that RFRA shall not be construed to affect in any way the Establishment Clause. 42 U.S.C. § 2000bb-4 (2005). The interpretation that the Diocese urges the Court to adopt would clearly violate the Establishment Clause, which prohibits the government from enforcing any law that will "aid one religion, aid all religions, or prefer one religion over another." Everson, 330 U.S. at 15.

Moreover, courts may not unilaterally carve out exemptions for religious entities from neutral, generally applicable laws. Rather, that role is left to the legislature. Smith, 494 U.S. at 890.

By ruling in favor of the Defendant on this theory, this Court would be elevating Defendant—solely based on religious status—above all other entities that negligently permitted pedophiles to prey on children repeatedly.

> "Such an endorsement is not consistent with the established principle that the government must pursue a course of complete neutrality toward religion."

Wallace v. Jaffree, 472 U.S. 38, 60 (1985). It would be declaring that religious institutions are immune from laws intended to protect children from childhood sexual abuse and creditors in bankruptcy, simply because they are religious. That treats religious identity as a privileged class, and that is completely contrary to the First Amendment's devotion to neutrality and ordered liberty.

5. **The Washington State Constitution Does Not Impose Any Higher Standard than RFRA**

Washington courts have applied the following standard to evaluate government action alleged to impose a burden on the free exercise of religion:

> To show an unconstitutional burden on freedom of religion, [the plaintiff] must show a coercive effect in the practice of her religion. After that showing, the court subjects the statute to strict scrutiny: there must be a compelling State interest, enabled by the least restrictive means.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 59

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 266    Filed 06/13/05    Entered 06/13/05 12:21:55    Pg 5 of 7

Niemann v. Vaughn Community Church, 118 Wash. App. 824, 831 (2003), review denied, 151 Wash.2d 1031 (2003).

This standard is virtually identical to the requirements of RFRA. See 42 U.S.C. § 2000bb-1 (a)-(b). Accordingly, the Diocese is entitled to no greater protection under the Washington state constitution that it would receive under RFRA.

### F. The Debtor's Cross-Motion Should be Denied

The Cross-Motion seeks an order that "the property of the parishes, schools and other separate Catholic-related entities are not part of the Diocese's estate as a matter of law." Because the Debtor has made no showing whatsoever regarding property of the schools or "other separate Catholic-related entities" the Court cannot grant the Cross-Motion.

The bulk of the Cross-Motion is a re-hashing of the Debtor's Opposition with an emphasis on the Debtor's constitutional arguments. As discussed above, the Committee seeks only to see that victims of sexual abuse by clergy are made whole. Since the satisfaction of court-imposed judgments can never be an infringement on one's practice of religion, those arguments must fail and the Cross-Motion must be denied.

18477-002\DOCS_LA:141124.1
COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 60

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

## IV.
## CONCLUSION

In the Motion, the Committee compared the Bishop's litigation strategies to a shell game. But for the members of the Committee and their fellow abuse survivors, this is not a game. All of them suffered unspeakable abuse by the priests, employees and others in his Diocese. The time has come for the Bishop and his parishes to put aside their canon law stratagems regarding ownership of the Disputed Real Property and address themselves to resolving the claims of the survivors. While no one will be able to restore the lives that were taken from survivors, the hard tasks that will address their suffering must be undertaken.

**WHEREFORE,** the Committee respectfully requests that the Court enter an order granting the Motion and ruling that as a matter of law the Disputed Real Property is property of the estate, dismissing the Diocese's affirmative defenses. denying the Cross-Motion, and granting such other and further relief as this Court deems just and proper.

Dated: June 13, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

By /s/
JAMES I. STANG
Counsel for the Committee of Tort Litigants

-and-

ESPOSITO, GEORGE & CAMPBELL, P.L.L.C.

By /s/
JOHN W. CAMPBELL
Counsel for the Committee of Tort Litigants

18477-002\DOCS_LA:141124.1

COMMITTEE'S RESPONSIVE MEMO RE
MOTION FOR SUMMARY JUDGMENT - 61

ESPOSITO, GEORGE, & CAMPBELL, P.L.L.C.
421 W. Riverside Avenue, Suite 960
Spokane, WA 99201-0407
Phone: (509) 624-9219 Fax: (509) 624-9231

05-80038-PCW    Doc 266    Filed 06/13/05    Entered 06/13/05 12:21:35    Pg 7 of 7