# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii-iii |
| A. | STATEMENT OF THE CASE | 1 |
| B. | RESTATEMENT OF ISSUES PERTAINING TO APPELLANTS' ASSIGNMENTS OF ERROR | 1 |
| C. | ARGUMENT | 2 |
|   | 1. The burden is on THE MUNNS GROUP to demonstrate that their right to relief is clearly founded in or granted by law | 2 |
|   | 2. The CITY OF WALLA WALLA was correct in deciding that WWMC Chapter 20.146 and WAC 197-11-330(3)(e)(i) did not further a compelling state interest sufficient to infringe on the principles of freedom of religious expression in this case | 4 |
|   | 3. The CITY OF WALLA WALLA'S actions and the trial court's decision are based on sound constitutional grounds | 6 |
|   |    a. Strict Scrutiny Analysis | 6 |
|   |    b. Federal Constitution | 7 |
|   |    c. Washington State Constitution | 8 |
|   |    d. The Religious Freedoms Restoration Act | 10 |
|   | 4. THE MUNNS GROUP'S attempt at distinguishing the instant case from First Covenant II is misplaced and erroneous | 12 |
| D. | CONCLUSION | 16 |

A.  STATEMENT OF THE CASE.

Respondent CATHOLIC BISHOP OF SPOKANE agrees with, and adopts in its entirety, Respondents MARTIN and CITY OF WALLA WALLA'S Counter-Statement of Case, Brief of Respondents MARTIN and CITY OF WALLA WALLA at 1-4.

For purposes of this Brief, Appellant Petitioners FRANK MUNNS, JOSEPH DOETSCH, NADINE GERKY, DENISE O'BRYAN, BETTY MURRAY, MARGARET HEUMPHREUS and RUSSELL BERGEVIN will be referred to as "THE MUNNS GROUP". Respondents MARTIN and CITY OF WALLA WALLA will be referred to as "CITY OF WALLA WALLA". Respondent CATHOLIC BISHOP OF SPOKANE, together with the St. Patrick Parish pastor and administrator, its Parish Council and its Building Committee, will be referred to as "BISHOP OF SPOKANE".

B.  RESTATEMENT OF ISSUES PERTAINING TO APPELLANTS' ASSIGNMENTS OF ERROR.

1.  Whether a City of Walla Walla ordinance imposing up to a fourteen month delay on demolition of a Church school building and subjecting the Church to all the administrative burdens imposed by

-1-

the ordinance in order to review architectural and historic significance is an unconstitutional infringement on the free exercise of religion <u>as applied in this case</u>.

2. Whether an administrative regulation of the State of Washington promulgated pursuant to the State Environmental Policy Act requiring comment on the environmental impact presented by the demolition of a building of historic or cultural significance is an unconstitutional infringement on the free exercise of religion <u>as applied in this case</u>.

C. ARGUMENT

1. <u>The burden is on THE MUNNS GROUP to demonstrate that their right to relief is clearly founded in or granted by law</u>.

This case presents a unique circumstance in that it is not a case where the affected property owner, the BISHOP OF SPOKANE, is challenging the action taken by the CITY OF WALLA WALLA. Here, following St. Patrick Parish's Application for a Development Permit, including a permit to demolish the old parish school and following the CITY OF

WALLA WALLA'S decision not to enforce its ordinance WWMC Section 20.14.040 and WAC 197-11-330(3)(e)(i) because it did not want to impermissibly burden the freedom of religious expression of St. Patrick Parish and the BISHOP OF SPOKANE based on <u>First Covenant Church v. Seattle</u>, 120 Wn.2d 203, 840 P.2d 174 (1992) "<u>First Covenant II</u>", THE MUNNS GROUP filed a Petition for a Writ of Mandamus or Other Remedy. CP 46, ¶11, ¶12 and ¶13; CP 38-49.

The BISHOP OF SPOKANE, not THE MUNNS GROUP, owns the St. Patrick's school building in question. THE MUNNS GROUP have no proprietary interest, and are not in any way owners of the building in question. The BISHOP OF SPOKANE, as well as St. Patrick Parish Pastor, Pastoral Council, Building Committee and majority of St. Patrick Parish parishioners have not challenged and are in agreement with the CITY OF WALLA WALLA'S interpretation, decision and actions in reviewing the demolition application. They want the process to proceed as decided by the CITY OF WALLA WALLA.

It is axiomatic in this state that a Writ of Mandate can only be issued to enforce a right clearly founded in or granted by law. <u>State Ex Rel</u>

Todd v. Yelle, 7 Wn.2d 443, 449, 110 P.2d 162 (1941). Presumably the same can be said for a Writ of Certiorari, or a request for declaratory judgment in a case such as this.

As argued by the CITY OF WALLA WALLA in Brief of Respondents MARTIN and CITY OF WALLA WALLA at 4-7, because the CITY OF WALLA WALLA declined to enforce the ordinance and Administrative Code provision at issue here based on First Covenant II, the burden is on THE MUNNS GROUP to demonstrate or prove that the authority relied upon by the CITY OF WALLA WALLA was not the law.

Because THE MUNNS GROUP cannot so demonstrate, the trial court's decision to dismiss THE MUNNS GROUP'S Petition and to enter the Order Setting Aside the previous Order Prohibiting a Demolition Permit should be affirmed.

2. <u>The CITY OF WALLA WALLA was correct in deciding that WWMC Chapter 20.146 and WAC 197-11-330(3)(e)(i) did not further a compelling state interest sufficient to infringe on the principles of freedom of religious expression in this case</u>.

The CITY OF WALLA WALLA lifted its 60 day stay initially imposed under WWMC 20.146.040 because it

-4-

Exhibit 3 Page 125
05-80038-PCW    Doc 268    Filed 06/13/05    Entered 06/13/05 12:27:38    Pg 5 of 19

decided that imposition of the stay in order to allow for review under the Walla Walla ordinance and the SEPA regulation at issue here did not further a compelling state interest sufficient to infringe on the principles of freedom of religious expression as provided in the First Amendment to the U.S. Constitution and Article I, Section 11 of the Washington State Constitution. CP 48-49.

The BISHOP OF SPOKANE believes the CITY OF WALLA WALLA'S decision was correctly based on the CITY'S review and application of state law as embodied in <u>First Covenant II</u> (the principles of which have now been reaffirmed by this Court in <u>First United Methodist Church of Seattle v. Hearing Examiner for the Seattle Landmarks Preservation Board</u>, No. 62805-0 Wash. S.Ct. (May 9, 1996) "<u>United Methodist</u>").

While the instant case does not involve a landmark designation, or a landmark designation ordinance, but an ordinance and regulation requiring review for historical and cultural significance, the principles enunciated in both <u>First Covenant II</u> and in <u>United Methodist</u> still apply.

-5-

3. <u>The CITY OF WALLA WALLA'S actions and the trial court's decision are based on sound constitutional grounds.</u>

a. <u>Strict Scrutiny Analysis</u>.

In <u>United Methodist</u>, this Court one more time reaffirmed that the strict scrutiny test of <u>Sherbert v. Verner</u>, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed 2d 965 (1963) is to be applied in these type of cases. Under this test, the complaining party must first prove the government action has a coercive effect on the practice of religion. Once a coercive effect is established, the burden of proof shifts to the government to show the restrictions serve a compelling state interest and are the least restrictive means for achieving the government objective. If no compelling state interest exists, the restrictions are unconstitutional.

Because it decided based on <u>First Covenant II</u> that no compelling state interest existed in this case, the CITY OF WALLA WALLA on its own declined to enforce its ordinance and the SEPA regulation. Had the CITY not done so, the BISHOP OF SPOKANE

Exhibit 3 Page 27

05-80038-PCW   Doc 268   Filed 06/13/05   Entered 06/13/05 12:27:38   Pg 7 of 19

would have complained, as should be evident from the prior objection of the BISHOP OF SPOKANE with respect to putting the St. Patrick School building on the Washington State Register of Historic Places and objection to the recommendation for placement on the National Register of Historic places. CP 108, Findings of Fact No. 6.

b. <u>Federal Constitution</u>.

After a lengthy analysis of United States Constitution First Amendment free exercise issues, this Court concluded in <u>First Covenant II</u>, 120 Wn.2d at 219:

> "The City's ordinances, as this court held earlier, impermissibly burden First Covenant's right to free exercise in two ways. The ordinances burden free exercise "administratively" because they require that First Covenant seek the approval of a government body before it alters the exterior of its house of worship, whether or not the alteration is for a religious reason. *Cf. Church of St. Paul & St. Andrew v. Barwick*, 67 N.Y.2d 510, 527, 537-38, 496 N.E.2d 183, 194, 200-01, *cert. denied*, 479 U.S. 985 (1986). Further, they burden First Covenant financially, because they reduce the value of the church's property by almost half."

Additionally, this Court noted that landmark preservation ordinances further cultural and aesthetic interests, but they do not protect public

-7-

Exhibit 3 Page 28

health and safety. As a result, this Court held in First Covenant II, 120 Wn.2d at 223:

> "We hold that the City's interest in preservation of aesthetic and historic structures is not compelling and it does not justify the infringement of First Covenant's right to freely exercise religion. The possible loss of significant architectural elements is a price we must accept to guarantee the paramount right of religious freedom."

In the instant case, the trial court found and concluded that the administrative restrictions had the Walla Walla ordinance and SEPA regulation been applied, would have been a "burden on free exercise" since the changes desired by controlling church authority are for use in religious activities primarily. CP 105. The review process contemplated by both the Walla Walla ordinance and SEPA regulation address only historic and cultural preservation issues, issues in which the government has no compelling interest in cases where they burden free exercise of religion.

c. <u>Washington State Constitution</u>

In First Covenant II, this Court independently analyzed our state constitution, concluding that it provides even broader protection to religious

-8-

Exhibit 3 Page 28

freedom in the landmark designation arena than the federal constitution does.

This Court stated in <u>First Covenant II</u>, 120 Wn.2d at 224:

> "Article 1, section 11, of the Washington State Constitution provides that:
>
> Absolute freedom of conscience in all matters of religious sentiment, belief, and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state.
>
> The first amendment to the United States Constitution provides in part:
>
> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . [.]
>
> The test of the state constitution focuses both on belief and on conduct, as evidenced in the terms "worship", "acts", and "practices". Article 1 clearly protects both belief and conduct.
>
> <u>The language of our state constitution is significantly different and stronger than the federal constitution.</u> The First Amendment limits government action that "prohibits" free exercise. <u>Our state provision "absolutely" protects freedom of worship and bars conduct that merely "disturbs" another on the basis of religion. Any action that is not licentious or inconsistent with the "peace and safety" of the state is "guaranteed" protection.</u>"
> (Emphasis added)

Exhibit 3 Page 30

05-80038-PCW   Doc 268   Filed 06/13/05   Entered 06/13/05 12:27:38   Pg 10 of 19

And in 120 Wn.2d at 226:

> "Article 1, section 11 of the state constitution absolutely protects "freedom of conscience in all matters of religious sentiment, belief, and worship" and guarantees that "no one shall be molested or disturbed in person or property on account of religion". This constitutional guaranty of free exercise is "of vital importance." *Bolling*, 16 Wn.2d at 381. If the "coercive effect of [an] enactment" operates against a party "in the practice of his religion", it unduly burdens the free exercise of religion. *Witters v. Comm'n for the Blind*, 112 Wn.2d 363, 371, 771 P.2d 1119, cert. denied, 493 U.S. 850 (1989); *Sumner*, 97 Wn.2d at 5. A facially neutral, even-handedly enforced statute that does not directly burden free exercise may, nonetheless, violate article 1, section 11, if it indirectly burdens the exercise of religion." *Sumner*, at 7-8; *Bolling*, at 385-86.

Had the CITY OF WALLA WALLA decided to enforce the ordinance and regulation in question, the BISHOP OF SPOKANE would not have been afforded the absolute protection guaranteed by Article I, Section 11 of the Washington State Constitution.

    d. <u>The Religious Freedoms Restoration Act (RFRA)</u>

In 1993, in response to <u>Employment Div., Dep't of Human Resources of Or. v. Smith</u>, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed. 2d, 876 (1990), Congress passed the Religious Freedoms Restoration Act

-10-

(RFRA). 42 U.S.C. §2000(b)-2000(4). As this Court noted in <u>United Methodist</u>, at 12 n. 5, RFRA basically codifies the strict scrutiny test of <u>Sherbert</u> and as a result effectively overrules <u>Smith</u>.

RFRA provides in pertinent part that government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability unless it (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. The CITY OF WALLA WALLA took the action it did precisely because it determined, based on <u>First Covenant II</u>, that its ordinance and the SEPA regulation did not further a compelling state interest sufficient to infringe on the constitutionally protected principles of freedom of religious expression. RFRA, then, gives further support for the CITY OF WALLA WALLA'S actions and the trial court's decision to dismiss THE MUNNS GROUP'S Petition.

4. THE MUNNS GROUP'S attempt at distinguishing the instant case from First Covenant II is misplaced and erroneous.

While acknowledging that the essential questions presented by this case are addressed in First Covenant II, THE MUNNS GROUP argues that "several important features distinguish the instant case from that of First Covenant II." Brief of Appellants at 7.

First, THE MUNNS GROUP argues "the instant case does not involve a Church." Brief of Appellants at 7. To the contrary, this case does involve Church property used for religious purposes. The focus in the First Covenant cases as well as in United Methodist is not on whether the building at issue is the primary house of worship (which is apparently THE MUNNS GROUP'S definition of "Church"), but whether the government action contemplated by the ordinance or regulation burdens the exercise of religion without the state demonstrating that it has a compelling interest in enforcing the ordinance and regulation.

-12-

Exhibit 3 Page 33

05-80038-PCW    Doc 268    Filed 06/13/05    Entered 06/13/05 12:27:38    Pg 13 of 19

The trial court in his letter opinion of February 22, 1996 said it well:

> "The fact that the Building at issue is not the primary house of worship is not material. The renovated Building, or the Pastoral Center, both are to be used for church purposes. What if the issue were demolition of the church building? Clearly, that could not be prohibited under First Covenant II.
>
> What if the reason for demolition of the Church was to build a larger edifice that would accommodate worship as well as the uses planned for the Pastoral Center? Again, under First Covenant II it clearly could be done. If the Building/Pastoral Center is to be used for primarily church purposes, (whether it be called adjunct, adjacent, auxiliary or secondary house of worship), the law is a burden on free exercise where the law although "neutral" is not one of "general application." First Covenant II, Smith II.
>
> This is not a primarily commercial enterprise as in St. Bartholomew's. The conduct here is for a "religious purpose" without this Court precisely defining that term. The ordinance has a coercive effect on the free exercise by placing a limitation on the style of building used, at least for fourteen months.
>
> The Court concludes that the administrative restrictions in this case are a "burden on free exercise" as the facts are that the changes are desired by controlling church authority for use in religious activities, primarily."

CP 105.

Second, THE MUNNS GROUP argues "the instant case does not involve a liturgical exception." The

-13-

Exhibit 3 Page 34

05-80038-PCW    Doc 268    Filed 06/13/05    Entered 06/13/05 12:27:38    Pg 14 of 19

BISHOP OF SPOKANE is not sure what THE MUNNS GROUP means by this. If what they mean is that neither the Walla Walla ordinance nor SEPA regulation at issue have a "liturgy exemption" as did the landmark designation ordinance at issue in the <u>First Covenant</u> cases, it is immaterial. In fact, this Court in <u>First Covenant II</u> held that "the liturgy-focused exemption in this case is constitutionally infirm because it allows the City to control any nonliturgical elements of religious conduct that require architectural change." <u>First Covenant II</u>, 120 Wn.2d at 220. Again, the focus is on whether the ordinance and regulation at issue, if applied in this case, would burden the free exercise of religion, not whether the ordinance or regulation contain specific liturgy-based language.

Third, THE MUNNS GROUP argues "the instant case presents no issue of economic consequence". Although the trial court noted in its letter opinion:

> "In the case before this Court, the financial burden, if any, has not been established factually. There are differing contentions."

(CP 104), the BISHOP OF SPOKANE disagrees with THE MUNNS GROUP that there is no issue of economic

-14-

Exhibit 3 Page 35

05-80038-PCW    Doc 268    Filed 06/13/05    Entered 06/13/05 12:27:38    Pg 15 of 19

consequence. The BISHOP OF SPOKANE contends that the cost of renovation would exceed three million dollars while the cost of demolition and construction of a new facility would be less than half of that. CP 43, ¶7. While Petitioners contend otherwise, the BISHOP OF SPOKANE, as the property owner is the better judge of the economic consequence of the project, and, more importantly, is the better judge of what is needed to further the Catholic mission of St. Patrick Parish, and how best to further that mission from an economic standpoint. See, CP 44, ¶8.

In any event, the trial court deemed it not necessary to address the "financial burden" issue further because the trial court concluded that the administrative restrictions in this case are in and of themselves of such sufficient consequence to burden the free exercise of religion. CP 104-106.

Fourth, THE MUNNS GROUP argues "the instant case contains no initial resistance to the ordinance and regulations in question on constitutional grounds." The fact is that the BISHOP OF SPOKANE did not need to raise a

constitutional challenge to the ordinance and regulation in question because the CITY OF WALLA WALLA on its own recognized the burden on free exercise and declined to enforce the ordinance and the regulation.

Once the MUNNS GROUP filed their Petition, and the BISHOP OF SPOKANE was made aware of the Petition, the BISHOP OF SPOKANE moved, and was granted leave, to intervene. CP 25-26. The BISHOP OF SPOKANE, as the affected property owner, intervened because he agreed that, if applied, the ordinance and regulation would impermissibly infringe on his religious freedom. Since intervention, the BISHOP OF SPOKANE has fully supported the CITY OF WALLA WALLA'S decision.

D. CONCLUSION.

The BISHOP OF SPOKANE, as Intervenor in this action, agrees that the CITY OF WALLA WALLA has acted correctly and properly in determining on the basis of First Covenant II, that WWMC Chapter 20.146 and WAC 197-11-330(3)(e)(i) should not be applied in processing the Church's Application for a Demolition Permit for the St. Patrick Parish

school building in that the ordinance and SEPA regulation would impermissibly burden the BISHOP OF SPOKANE'S right to free exercise of religion in this case. This Court should, therefore, affirm the trial court's Order of Dismissal, CP 107-110, and the Order Setting Aside Order Prohibiting Issuance of a Demolition Permit, CP 111-112.

Respectfully submitted this 24th day of June, 1996.

TURNER, STOEVE & GAGLIARDI, P.S.

By: _____
Michael C. Geraghty
WSBA #5152
Attorney for Respondent
CATHOLIC BISHOP OF SPOKANE



## Statutory Warranty Deed
(CORPORATE FORM)

VOL. 1039 PAGE 1176

THE GRANTOR  FEDERAL NATIONAL MORTGAGE ASSOCIATION, A UNITED STATES CORPORATION,

for and in consideration of  FIFTY FIVE THOUSAND AND NO/100 DOLLARS ($55,000.00)

in hand paid, conveys and warrants to  ROMAN CATHOLIC DIOCESE OF SPOKANE

the following described real estate, situated in the County of  SPOKANE , State of Washington:

Lot 8, Block 2, SIMPSON'S ADDITION TO GREENACRES, according to plat recorded in Volume 14 of Plats, Page 22, in Spokane County, Washington.

SUBJECT TO: Covenants, Conditions, Reservations, Restrictions, and Easements of Record.

IN WITNESS WHEREOF, said corporation has caused this instrument to be executed by its proper officers and its corporate seal to be hereunto affixed this 25th day of May, 1989.

FEDERAL NATIONAL MORTGAGE ASSOCIATION

By Erlinda C. Weaver

STATE OF CALIFORNIA
County of Los Angeles

On this 1st day of June, 1989, before me, the undersigned, a Notary Public in and for the State of CALIF., duly commissioned and sworn, personally appeared Erlinda C. Weaver ... to me known to be the A.V. President and ——— Secretary, respectively, of FEDERAL NATIONAL MORTGAGE ASSOCIATION, A UNITED STATES CORPORATION, the corporation that executed the foregoing instrument...

Nancy Gray
Notary Public in and for the State of CALIFORNIA