FILED

SEP 06 2006

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. EW-05-1273-NBS |
| | EW-05-1276-NBS |
| THE CATHOLIC BISHOP OF SPOKANE, a/k/a The Catholic Diocese of Spokane, | Bk. No. 04-08822 |
| | Adv. Nos. 04-00291 |
| Debtor. | 05-80038 |
| TORT CLAIMANTS' COMMITTEE, | |
| Appellant, | |
| v. | M E M O R A N D U M[1] |
| THE CATHOLIC DIOCESE OF SPOKANE; TORT LITIGANTS' COMMITTEE; MICHAEL SHEA, et al., | |
| Appellees. | |

Argued and Submitted on July 20, 2006
at Spokane, Washington

Filed - September 6, 2006

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington

Honorable Patricia C. Williams, Chief Bankruptcy Judge, Presiding

---

Before: NAUGLE,[2] BRANDT and SMITH, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication and may not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel. See 9th Cir. BAP Rule 8013-1.

[2] Hon. David N. Naugle, Bankruptcy Judge for the Central District of California, sitting by designation.

Appellant and proposed intervenor, the Torts Claimants' Committee (the "TCC") appeals from the bankruptcy court's orders denying intervention pursuant to Fed.R.Civ.P. 24(a)(1) and (2)[3] (made applicable in bankruptcy adversary proceedings by Fed.R. Bankr.P. 7024). We REVERSE and REMAND.

**FACTS**

The Catholic Bishop of Spokane, a/k/a The Catholic Diocese of Spokane, (the "Debtor") filed a voluntary petition for relief under Chapter 11 on December 6, 2004. The United States Trustee appointed a five-member official creditors' committee, the TCC, pursuant to § 1102[4], to represent the interests of all holders of sexual abuse claims against the Debtor. Initially, the TCC was comprised of three members who had not filed lawsuits against the Debtor prior to the petition date (the "Claimants") and two members who had filed lawsuits against the Debtor prior to the petition date (the "Litigants").

Subsequently, Michael Shea ("Shea"), a Litigant member of the TCC, filed an adversary proceeding in his individual

---

[3] The bankruptcy court also denied permissive intervention pursuant to Fed.R.Civ.P. 24(b). The TCC has not raised the denial of permissive intervention on appeal.

[4] Unless otherwise indicated, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, as the case from which these adversary proceedings and these appeals arise was filed before its effective date (generally 17 October 2005). All Rule references are to the Federal Rules of Bankruptcy Procedure, and all "FRCP" references are to the Federal Rules of Civil Procedure.

05-80038-PCW    Doc 466    Filed 09/11/06    Entered 09/11/06 11:15:42    Pg 2 of 16

capacity against the Debtor seeking a declaratory judgment that the Debtor, and therefore, the estate owned certain property (the "Disputed Property"), which the Debtor contended was owned by its parishes, schools and related entities (the "Shea Adversary").

On February 2, 2005, the United States Trustee reconstituted the TCC by removing the two Litigant members, including Shea, and appointing a second official creditors' committee, the Tort Litigants' Committee (the "TLC"), pursuant to § 1102, to represent the interests of the Litigants. The TCC contends that counsel for the TLC have represented that the Litigants are a separate class of creditors with unique interests. Shea was appointed to the TLC.

Subsequently, the TLC filed an adversary proceeding against the Debtor and related parish entities seeking declaratory relief regarding ownership of the Disputed Property (the "TLC Adversary")[5]. The TCC filed Motions to Intervene in the Shea Adversary and the TLC Adversary (collectively, the "Related Adversaries"). The TCC contends that it has an unconditional right to intervene in the Related Adversaries pursuant to § 1109(b), and therefore, satisfies the requirement for intervention under FRCP 24(a)(1) and (a)(2) because the TCC's exclusion from the Related Adversaries impairs its ability to protect its interests; and such interests are not adequately represented by the TLC and Shea. The TCC also sought permissive intervention under FRCP 24(b).

---

[5] A copy of the complaint in the TLC Adversary has not been included as part of the appendix as required by Rule 8009(b)(1). We may and do take judicial notice. <u>In re E.R. Fegert, Inc.</u>, 887 F.2d 955, 957-58 (9th Cir. 1989).

3

05-80038-PCW    Doc 466    Filed 09/11/06    Entered 09/11/06 11:15:42    Pg 3 of 16

The bankruptcy court denied intervention concluding that: (1) § 1109(b) does not create an absolute right to intervene in an adversary proceeding; (2) the TCC has not established a right under FRCP 24(a)(2); and (3) permissive intervention under 24(b) is not permitted. The TCC filed motions for reconsideration, which were denied. The TCC appeals only the denial of intervention of right pursuant to FRCP 24(a)(1) and (a)(2). The Debtor and Shea filed appellee briefs. The TLC filed a joinder in the Debtor's responsive brief.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2). This panel has jurisdiction under 28 U.S.C. § 158 (a)(1) and (b).

## ISSUES

1. Whether the bankruptcy court erred in finding that the TCC did not establish a right to intervene under FRCP 24(a)(2).
2. Whether the bankruptcy court erred in finding that § 1109(b) is not a statute which confers an unconditional right to intervene in an adversary proceeding.

## THE PARTIES' REQUESTS FOR JUDICIAL NOTICE

The TCC, Shea and the Debtor filed respective Motions for Requests for Judicial Notice after entry of the order on appeal as follows: (a) The TCC requests that the panel take judicial notice of the: (1) Motion to Approve Settlement Offer and Authorize Debtor to [Enter] Into Proposed Stipulation of

4

Settlement; and (2) Agenda for Case Management Status Conference; (b) Shea requests that the panel take judicial notice of the Plan of Reorganization filed by the TCC; and (c) the Debtor requests that the panel take judicial notice of the bankruptcy court's Order Denying Motion to (1) Approve Settlement Offer and (2) Authorize Debtor to [Enter] Into Proposed Stipulation of Settlement; and (3) the oral decision in which the bankruptcy court stated its decision on the Settlement Motion (collectively, the "Requests for Judicial Notice").

In support of the Requests for Judicial Notice, all parties rely upon Nugent v. Betacom of Phoenix, Inc. (In re Betacom of Phoenix, Inc.), 250 B.R. 376, 377-78 n.3 (9th Cir. BAP 2000). In Nugent, the court lacked information on which to make a determination as to the effect of the district court's rulings on a motion for summary judgment. Id. In determining whether the appeal was moot, the court was required to take judicial notice of the memorandum and order on the motion for summary judgment to determine its effect on the appeal. Here, the Requests for Judicial Notice are distinguished from the requests in Nugent as the parties are not requesting that the panel take judicial notice of the district court's order reversing the bankruptcy court's decision on the substantive issue regarding property of the estate to determine whether the instant appeal is moot.

Papers not filed with the court or admitted into evidence are not part of the record and cannot be part of the record on appeal. Kirshner v. Uniden Corp. of America, 842 F.2d 1074, 1077 (9th Cir. 1988). In this matter, the documents were filed with the bankruptcy court in early 2006, and the orders on appeal were

5

entered in June 2005. The documents were not considered by the bankruptcy court in ruling on the motions and will not be considered by this panel.

Additionally, the documents are offered for the truth of the contents therein and not merely to demonstrate that the documents have been filed with the court. A court may take judicial notice of documents contained within court records, "but this does not mean that a court may take judicial notice of the truth of all documents within such records." Credit Alliance Corporation v. Idaho Asphalt Supply, Inc. (In re Blumer), 95 B.R. 143, 146-47 (9th Cir. BAP 1988). Moreover, the issues before this panel are narrow procedural issues. Even if the Requests for Judicial Notice were proper requests, the substantive contents of the documents would not aid the panel in its determination regarding the procedural issues presently on appeal. Accordingly, the Requests for Judicial Notice are denied.

### STANDARD OF REVIEW

The bankruptcy court's interpretation of the Bankruptcy Code and Rules are questions of law reviewed de novo. Temecula v. LPM Corp. (In re LPM Corp.), 300 F.3d 1134, 1136 (9th Cir. 2002). Denial of a motion to intervene as of right is reviewed de novo, with the exception of timeliness, which is reviewed for abuse of discretion. SW. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 817 (9th Cir. 2001). Findings of fact shall not be set aside unless clearly erroneous. Rule 8013.

05-80038-PCW    Doc 466    Filed 09/11/06    Entered 09/11/06 11:15:42    Pg 6 of 16

## DISCUSSION

1. **The TCC Established A Right To Intervene Pursuant To FRCP 24(a)(2)**

FRCP 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action:…;
>
> (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the parties.

FRCP 24(a).

FRCP 24(a) is construed "liberally in favor of potential intervenors." State ex.rel.Lockyer v. Chao, 450 F.3d 436, 440 (9th Cir. 2006). An applicant seeking intervention of right must demonstrate that:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action;(2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.

Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998).

No party challenges the bankruptcy court's determination that the TCC's motion was timely, and that it has a protectable interest in the determination of the extent of the property of the estate, the subject matter of the Related Adversaries.

7

### A. The Disposition Of The Action Will Impair Or Impede The TCC's Ability To Protect Its Interest

The TCC argues that the bankruptcy court erred when it determined that the TCC's ability to protect its interest was satisfied because individual claimants could file and seek allowance of claims, and the TCC could object to any potential settlement in the Related Adversaries. The TCC contends that if the Related Adversaries are settled, it will have no role in the determination regarding the Disputed Property, i.e., whether it is property of the estate, and its only remedy will be to object to a discriminatory settlement.

In support of its position, the TCC relies upon FDIC v. Engle, 524 F.2d 1339, 1340-41 (9th Cir. 1975). In Engle, the FDIC brought suit against Bennett, alleging receipt of fraudulent transfer of certain real property. A lis pendens was filed as to the property. While the action was pending, the Stones, who obtained a state court judgment against Bennett, sought to enforce it against his interest in the property, buying the property at a sheriff's sale. The Stones moved to intervene as successors to Bennett. The court denied intervention as the FDIC and Bennett were prepared to stipulate to judgment in favor of the FDIC. Judgment in favor of the FDIC was subsequently entered. On appeal, because the FDIC took the position that the lis pendens would be binding on the Stones in any other forum, the court determined that the judgment would "impede them as a practical matter in their ability to protect their interests in the property in question." Id. at 1341.

05-80038-PCW    Doc 466    Filed 09/11/06    Entered 09/11/06 11:15:42    Pg 8 of 16

Here, the outcome of the Related Adversaries will determine the extent to which the Disputed Property is available for satisfaction of allowed claims. TCC's exclusion from that determination may very well adversely affect its ability to maximize the recovery for its constituency.

In <u>Sierra Club v. EPA</u>, 995 F.2d 1478, 1483, 1485-86 (9th Cir. 1993), relief was sought in the form of a declaratory judgment and an injunction, which "would necessarily result in practical impairment of the City's interests."(citations omitted). <u>Id</u> at 1486. "The issue is participation in the lawsuit, not the outcome." <u>Id</u>. at 1481. "Participation in the lawsuit" includes participation in potential settlement discussions. <u>Id</u>. If the outcome is that some of the Disputed Property is not property of the estate, the TCC's interests will be practically impaired as in <u>Sierra Club</u>.

Proposed intervenors' interests "might not be impaired if they have 'other means' to protect them." <u>State ex.rel.Lockyer v. Chao</u>, 450 F.3d 436, 442 (9th Cir. 2006)(quoting <u>United States v. Alisal Water Corp.</u>, 370 F.3d 915, 921 (9th Cir. 2004)). The bankruptcy court concluded that the TCC's ability to protect its interest was satisfied because individual claimants could seek allowance of claims and the TCC could object to any potential settlement. A potential settlement may include a proposed treatment and disposition of the Litigants' claims, a determination of what property of the estate is made available to satisfy such claims, and an allocation of such property, all of which may be incorporated in a proposed plan of reorganization. Additionally, if a potential settlement were to

9

include a provision regarding the proposed treatment of the TLC and Shea as a class of creditors, apart from the TCC, to be incorporated in any proposed plan of reorganization, such provision may allow for different treatment under the Code, and the TCC may not have a valid basis for objection to the settlement under the circumstances.

The claims process and the ability to object to any settlement may not provide the TCC with sufficient means to protect its interest. Thus, disposition of this action, by settlement or otherwise, may impair the TCC's ability to protect its interest, and provides no mechanism for it to be heard on the subject matter of the Related Adversaries, the extent of the property of the estate.

B. Shea And The TLC Do Not Adequately Represent The TCC's Interest

In this Circuit, "in determining whether an applicant's interest is adequately represented by existing parties, we consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." Northwest Forest Resource Council v Glickman, 82 F.3d 825, 838 (9th Cir. 1996). The burden is on the proposed intervenor to demonstrate that its interest is not adequately protected. Id.

A presumption of adequacy of representation arises where the proposed intervenor and the existing party have the same

10

ultimate objective. <u>Sw. Ctr. for Biological Diversity v. Berg</u>, 268 F.3d 810, 823 (9th Cir. 2001). The proposed intervenor need only show that the representation "may be" inadequate. <u>Id</u>. In <u>Berg</u>, the court questioned whether the presumption of inadequacy applied "because complexity makes the determination of the ultimate objective more difficult." <u>Id</u>. at 823. Ultimately, the court did not need to answer the question raised as the presumption was rebutted where the parties did not have "sufficiently congruent interests." <u>Id</u>.

In <u>Berg</u>, the City contended that it shared the same ultimate objective as the proposed intervenors. However, the City admitted that its interests may diverge in that its range of considerations were broader than that of the developer motivated by profit, and the developers had different duties under the plan related to mitigation. The City's responsive motion indicated that it would not represent the proposed intervenor's congruent interests. <u>Id</u>.

Here, the TCC argues that the presumption of adequacy was improperly applied by the bankruptcy court. The TCC contends that the ultimate objective of Shea and the TLC is to maximize the Disputed Property available to the Litigants and minimize the Disputed Property available to the Claimants. It further contends that the complexity of this case renders the ultimate objective of the parties different, and therefore, the presumption of adequacy of representation should not apply.

In its Motions to Intervene, the TCC represented to the bankruptcy court that both the TCC and the TLC had the same goal of establishing that the Disputed Property is property of

11

the estate. However, appellant TCC claimed that its interests were not adequately represented because the TCC and the TLC represent distinct constituencies, and the TCC's arguments are not identical.

The TCC further argues that the presumption is rebutted because Shea, the TLC and the TCC have conflicting interests. It contends that the bankruptcy court agreed that the interests of the TCC and the TLC are "diametrically opposed" on the division of property and ignored that the division of the "Disputed Property can be shaped and potentially determined by how the Adversary Proceedings are litigated and settled." TCC Brief at 29.

As the bankruptcy court noted, beyond the determination of whether the Disputed Property is property of the estate, the TCC, the TLC and Shea have conflicting interests, as the record reflects that the two committees disagree on many issues, including the "ultimate results and reorganization process." Transcript of Oral Decision, April 28, 2005.

We construe FRCP 24(a)(2) liberally in favor of the TCC. Chao, 450 F.3d at 440. The TCC need only show that the representation "may be" inadequate. Berg, 268 F.3d at 823. The record reflects that there is animosity, mistrust and ill will among certain members of the TCC and the TLC. The bankruptcy court determined that the "level of distrust [is] extreme." Transcript of Oral Decision, April 28, 2005. The U.S. Trustee reconstituted the TCC and formed the TCC and the TLC. The TCC is comprised of representatives who had not filed pre-petition suits

12

for damages, and the TLC is comprised of representatives who had filed pre-petition suits for damages.

In analyzing whether the TLC and Shea adequately represent the TCC's interest, the bankruptcy court concluded that the TLC's and the TCC's interests are identical. The bankruptcy court further concluded that "[t]heir interest is to--it's in their best interest to increase the number and amount in value of assets of the bankruptcy estate so that they can recover a greater return on their claim." Transcript of Oral Decision, April 28, 2005.

While it may be in the best interest of the TCC, the TLC and Shea to have as much of the Disputed Property as possible determined to be property of the estate in order to recover a greater return on their claims, the TLC and Shea have the ability to affect the outcome of the Related Adversaries and the determination of whether the Disputed Property, or some portion of the Disputed Property, is property of the estate. The TLC and Shea also have the ability to negotiate a settlement, and have apparently attempted to do so, whereby their individual claims may be afforded advantages over the individual claims of the representatives of the TCC. The TCC's Motion and Memorandum re Appointment of Additional Committee Members, or Alternatively, For Removal of Certain Tort Claimant's Committee Members and Shea's Declaration in Support Thereof demonstrates a divisiveness between those who have filed state court claims and those who "hold minimal or nonexistent claims." E.R. at 7-29. Accordingly, as in Berg, this circumstance shows the TLC's inability to adequately represent the TCC's interests. Berg, 268 F.3d at 823.

Thus, the TCC and the existing parties do not have the same ultimate objective, and the presumption of adequacy does not apply. The TCC has established that: (1) the TLC and Shea may not make all of the TCC's arguments with respect to determination of ownership of the Disputed Property because the TCC, the TLC and Shea do not have sufficiently congruent interests with respect to the division of property of the estate and treatment of their respective claims; (2) Shea and the TLC may not be capable and willing to make such arguments on this issue on behalf of the TCC; and (3) the TCC's interests in negotiating a settlement may differ from the TLC's and Shea's.

2. **Section 1109**

Having concluded that TCC has a right to intervene pursuant to FRCP 24 (a)(2), we need not determine whether, under FRCP 24(a)(1), § 1109(b) confers an unconditional right to intervene in an adversary proceeding.

**CONCLUSION**

The orders of the bankruptcy court denying the motions to intervene on the basis of FRCP 24(a)(2) are REVERSED and REMANDED with directions to permit the TCC's intervention.

14

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California   (626) 229-7220
Appeals from all other Districts (626) 229-7225

NOTICE OF ENTRY OF JUDGMENT

BAP Nos. EW-05-1273-NBS and EW-05-1276-NBS

RE: THE CATHOLIC BISHOP OF SPOKANE

A separate Judgment was entered in this case on ___9/6/06_____.

BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1

ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $255 filing fee (effective November 1, 2003) and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

CERTIFICATE OF MAILING
-------------------------------------
The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was mailed this date to all parties of record to this appeal.

By: Elaine Lewis

Deputy Clerk: September 6, 2006